**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------- X

HC2, INC.,                                      :
                                                :     Civil Action No.: 1:20-cv-3178
            Plaintiff,                          :
                                                :
                                                :
            -v-                                 :
                                                :
                                                :
ANDREW DELANEY,                                 :
                                                :
            Defendant.                          :

---------------------------------------------- X

## DECLARATION OF RONALD R. ROSSI

I, Ronald R. Rossi, declare:

1.      I am a partner of the law firm of Kasowitz Benson Torres LLP, attorneys for

plaintiff HC2, Inc. ("HC2").  I am fully familiar with the pleadings in this matter and, unless

otherwise indicated, I have personal knowledge of the facts herein.

2.      I submit this declaration in support of HC2's Application for a Temporary

Restraining Order and Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil

Procedure (the "Application").  HC2's verified complaint is annexed hereto as Exhibit A.[1]

3.      HC2's Verified Complaint alleges that Delaney, an attorney licensed in New York

State, has disseminated confidential, attorney-client privileged, attorney work-product and other

information (the "Privileged Information") learned while employed at HC2 in violation of his

Employment Agreement with HC2 and the Rules of Professional Conduct.  HC2 seeks the issuance

---

[1]  Capitalized terms not otherwise defined in this Declaration shall have the meaning ascribed to them in the verified complaint ("Verified Complaint").

of a temporary restraining order without prior notice to Delaney because there is a significant likelihood that, if given notice, he would retaliate by immediately disseminating the Privileged Information, partially mooting HC2's request and causing further damage before HC2 can be heard.

4.     Delaney's recent conduct, described in the Verified Complaint, raises a credible and imminent concern that providing notice will trigger him to publicly disseminate Privileged Information.  Delaney has already flouted his professional obligations and demonstrated disdain for the rights and privileges of his clients whose information he was responsible to safeguard.  The Verified Complaint speaks for itself inasmuch as it demonstrates that Delaney is willing to disclose Privileged Information to advance his own interests without authorization or any valid justification and with no regard to his contractual obligations to HC2 or his ethical duties to former clients.

5.     HC2 also has reason to believe that Delaney disseminated Privileged Information as recently as yesterday, April 21, in retaliation for HC2 and the Corporate Counsel writing to his attorney on April 20 to demand that Delaney and his counsel cease disseminating Privileged Information.  I was advised that, on April 21, a national media outlet contacted the Corporate Client purporting to have a copy of the State Court Complaint, even though the complaint was sealed earlier in the day, as well as knowledge of certain other facts that suggest Delaney provided it to them.

6.     In short, Delaney appears to have disseminated the Privileged Information, by distributing it to or speaking about it with the national press, even after HC2 demanded that Delaney cease and desist and abide by his ethical and contractual obligations.  There is a substantial

likelihood that, with notice, Delaney will immediately take steps to publicly disseminate the

Privileged Information.[2]

       7.     No previous application for the relief requested herein has been made to this, or any

other, Court.

       8.     I declare under penalty of perjury that the above is true and correct.

Executed this 21st day of April 2020 in Bedford, New York

                             */s/ Ronald R. Rossi*
                             RONALD R. ROSSI

---

[2] Although the circumstances of the Application do not require notice as described herein, the Court should be aware that Plaintiff's has attempted to contact Defendant's counsel, by letter and email, dated April 20, 2020, concerning the withdrawal and sealing of the State Court Complaint, but he did not answer.  Instead, on information and belief, it appears that he alerted the press the next day.

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------   X
HC2, INC.,                                             :
                                                       :     Civil Action No.:
                                                       :
                                                       :
                    Plaintiff,                         :
                                                       :     VERIFIED COMPLAINT
                                                       :
                      -v-                              :
                                                       :
                                                       :
    ANDREW DELANEY,                                    :
                                                       :
                                                       :
                   Defendant.                          :
                                                       :
----------------------------------------------------   X
```

Plaintiff HC2, Inc. ("HC2" or the "Company"), for its verified complaint against defendant Andrew Delaney ("Delaney"), alleges as follows:

## INTRODUCTION

1.      This action for injunctive relief and damages arises from Delaney's unlawful and unscrupulous scheme -- in a shocking violation of his duties as a member of the New York bar and of his contractual obligations to his employer, HC2, a legal staffing company -- to try to coerce HC2, HC2's law firm customer (the "Law Firm Customer") and the Law Firm Customer's corporate client (the "Corporate Client") to pay him hundreds of thousands of dollars by threatening to and publicly disclosing confidential and privileged information he obtained during his employment with HC2 as a contract attorney.  Delaney's scheme has caused and, unless enjoined, will continue to cause, irreparable harm to HC2.

2.      On September 30, 2019, Delaney was selected from HC2's roster of contract attorneys by HC2's Law Firm Customer to work on a temporary document review project (the "Project") for the Corporate Client.  The Project entailed the review of confidential documents,

attorney-client privileged materials, and attorney work-product.  Delaney, along with two other HC2 employees, began working on the Project at HC2's facility in New York City.

3.      On March 17, 2020, the Law Firm Customer suspended the Project as the number of COVID-19 infections in New York City was increasing at an alarming rate, while it considered whether, given the highly confidential subject matter of the Project, it wished to continue the Project remotely.

4.      When the Project was suspended, HC2 informed Delaney and the other two lawyers assigned to the Project that the Law Firm Customer was considering moving to a remote review and, in the meantime, they remained eligible for further assignments.   Under Delaney's employment agreement, he was entitled to be paid only for the hours he worked on assignments.

5.      Apparently disgruntled that the Project was suspended, Delaney set out to manufacture a false claim that HC2, the Law Firm Customer and the Corporate Client had conspired to suspend the Project and terminate his employment in retaliation for his having raised concerns about the potential for exposure to COVID-19.  Delaney emailed senior management of the Law Firm Customer hours after HC2 informed him that the Project was suspended, alleging retaliatory termination, threatening litigation, and demanding payment.  Delaney also emailed the Corporate Client directly on March 17 and 18, without authorization from HC2 or the Law Firm Customer and in breach of his employment agreement, and again aired his unfounded accusations and demands.  On March 18, Delaney emailed the Law Firm Customer and the Corporate Client, accusing them of orchestrating his termination.

6.      Delaney then engaged counsel to demand $450,000 from the Corporate Client. Delaney's counsel ceased representing him a few days after making this entirely unjustified demand.  Delaney immediately engaged new counsel to write a letter to the Corporate Client's

Chief Executive Officer and its Board of Directors alleging that Delaney had been wrongfully terminated, accusing Corporate Client of all manner of unsubstantiated offenses, and reciting information belonging to the Corporate Client which is confidential and subject to the attorney-client privilege.  In the letter, emailed on April 13, Delaney's lawyer threatened to commence legal action and publicly disclose such confidential and privileged information about the Corporate Client that Delaney had obtained during the Project if Delaney's demand was not met by the next day.

7.      The Corporate Client did not pay Delaney's $450,000 demand.  On April 14, the Law Firm Customer sent an email to Delaney's counsel warning him not to contact the Corporate Client again and objecting to Delaney's threat to disclose the Corporate Client's privileged and confidential information.  The email cautioned that "in light of Delaney's ethical obligations as a member of the bar, and his contractual non-disclosure obligations, he is not permitted to disclose information obtained during the course of the review to anyone, including you."

8.      On April 15, 2020, Delaney's lawyer carried out Delaney's threat by publicly filing a frivolous complaint in a state court against the Corporate Client, alleging unlawful business practices and retaliatory termination (the "State Court Complaint").  Not only are the allegations in the State Court Complaint false, they disclose the Corporate Client's confidential and privileged information and the Law Firm Customer's attorney work-product.  Delaney obtained that information only by virtue of his work as an attorney performing document review on the Project.

9.      The State Court Complaint names the plaintiff as "John Doe," but the allegations in that complaint -- including allegations quoting HC2's emails to Delaney regarding suspension of the Project -- leave no doubt whatsoever that Delaney is the unnamed plaintiff.  Presumably,

Delaney filed anonymously to try to conceal his outrageous violation of his ethical duties to the Corporate Client and his flagrant breaches of his obligations to HC2.

10.     As set out in detail below, the terms of Delaney's employment agreement with HC2 prohibited him from using for personal purposes confidential information obtained on the Project; disclosing confidential information about HC2, the Law Firm Customer or the Corporate Client to third parties; discussing his assignments with unauthorized or inappropriate personnel; engaging in dishonesty; contacting HC2's customers or its customers' clients; and taking any other action against HC2's interests.

11.     Delaney has violated all of these contractual obligations, as well as the most sacrosanct duties lawyers owe to their clients, resulting in, and threatening further, irreparable harm to HC2.

12.     Accordingly, HC2 brings this action seeking injunctive relief preventing Delaney from continuing to cause irreparable harm to HC2, as well as for monetary damages arising from his breaches of his employment agreement with HC2 and other legal obligations.

## PARTIES

13.     Plaintiff HC2, Inc., is incorporated in the District of Columbia with its principal place of business in Chicago, Illinois.  HC2 is a legal staffing company, which provides attorneys, paralegals, and other legal professionals, as well as associated workspace, IT infrastructure, project management, and related services to satisfy the short-term and long-term staffing needs of its clients, including law firms, corporations and government agencies.

14.     Defendant Andrew Delaney is a natural person who is a resident of the State of New York and is an attorney licensed to practice law in the State of New York.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, inasmuch as it is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     This Court has personal jurisdiction over Delaney because the claims asserted herein arise from his wrongful conduct and tortious acts within New York.

17.     Venue in this District is appropriate under 28 U.S.C. § 1391, inasmuch as defendant resides, and a substantial part of the actions giving rise to the claims herein occurred, in this District.

## FACTS

### A.     Delaney's Work on The Project

18.     On December 28, 2016, Delaney executed HC2's employment contract (the "Employment Agreement"), which incorporated a Confidentiality and Non-Disclosure Agreement (the "NDA"), as well as HC2's conduct rules (the "Conduct Rules") and employee handbook (the "Employee Handbook"), and an acknowledgement in which he agreed to adhere to the Conduct Rules and Employee Handbook (the "Policies Acknowledgment").[1]

19.     On September 30, 2019, HC2 assigned Delaney to the Project, which was expected to be completed in mid-May 2020.

20.     On March 17, 2020, the Law Firm Customer decided to suspend the Project in view of the COVID-19 pandemic while it considered the possibility of moving to a remote review. The Law Firm Customer and its Corporate Client decided not to conduct the remainder of the review

---

[1] In order to avoid further unnecessary harm to HC2, counsel has not submitted copies of the relevant employment agreements as exhibits, but those documents are of course available if the Court requests them.

remotely and to suspend it temporarily while waiting to learn of developments with respect to the virus.

21.     In a March 17, 2020 email, HC2's senior managing director informed Delaney and the other two attorneys working on the Project of this decision as follows:

> We understand and appreciate everyone's concerns regarding the work environment and well-being of those around you.  Most importantly, we understand the need for an immediate response regarding remote work.  At this time, the client is electing to suspend work on the case in NYC effective immediately.  Please note that remote work has not been authorized for this project, as of now. . . . You will be compensated for your time today.  We will continue to monitor the efforts of Congress in helping to off-set the impact of lost work.

22.     Under the Employment Agreement, the Company was obligated to pay Delaney only for hours he worked on an assignment.  When the project was suspended, HC2 did not terminate the Employment Agreement, but rather told Delaney and the other attorneys in the March 17 email, that "[i]f a decision to re-start the project in NYC is made, we will contact you – directly."

23.     HC2 never terminated the Employment Agreement or took any other action to terminate Delaney's employment by HC2.  Nonetheless, Delaney sent multiple emails on March 17 and 18 to the Law Firm Customer and the Corporate Client falsely claiming that he had been wrongfully terminated for expressing concerns about COVID-19.

24.     For example, on March 17, Delaney emailed the Law Firm Customer -- including its managing partners -- falsely claiming that he was wrongfully terminated by HC2 in retaliation for raising work environment concerns and threatening to "pursue all legal avenues against all persons involved," unless he was paid to stay home.  He sent a similar email to the Corporate Client that same day.  HC2 had not authorized Delaney to contact either directly.  The Law Firm

Customer emailed Delaney back to inform him that the Law Firm Customer had not requested Delaney's termination but had merely suspended the Project.

25.     On March 18, Delaney responded to the Law Firm Customer's email, this time accusing its attorneys of colluding with the Corporate Client to terminate him in retaliation for raising concerns about workplace safety.  He forwarded his email to the Corporate Client immediately thereafter.

26.     Delaney did not send these complaints to HC2 -- his actual employer.  In fact, HC2's general counsel and vice president of human resources ("VP of HR") called Delaney on March 18 to discuss the concerns he had raised, but Delaney refused to speak with them, and Delaney demanded that HC2 communicate with him only in writing.

27.     On March 19, HC2's VP of HR emailed Delaney reminding him that maintaining confidentiality and attorney-client privilege was of the utmost importance.  Delaney did not respond to this message either.

28.     On March 27, Delaney emailed the Corporate Client and the Law Firm Customer managing partners falsely stating that he had not been paid for his last week of work.  The same day, Delaney sent a second email to the Law Firm Customer's managing partners stating that HC2 continued to contact him against his wishes and a third email falsely claiming that lawyers from their firm sent him "threatening" emails and indicating that he intended to pursue "damages."

29.     Delaney then engaged counsel to demand $450,000 from the Corporate Client, but the attorney ceased representing him a few days after making this demand and Delaney immediately engaged new counsel.  On April 13, Delaney's new counsel emailed a letter to the Corporate Client's Chief Executive Officer and Board of Directors, reiterating his demand for a

payment and threatening litigation and disclosure of the Corporate Client's privileged and confidential information if his demand was not met by April 14.

30.     The Corporate Client did not capitulate to Delaney's demands or threats.  On April 15, a day after Delaney's deadline passed, Delaney's lawyer signed and filed the State Court Complaint, which alleges and acknowledges that the John Doe plaintiff gained the confidential and privileged knowledge and information disclosed therein during the course of a document review project for the Corporate Client.

31.     The allegations in the State Court Complaint leave no doubt that Delaney is the plaintiff.  The plaintiff alleges that he was engaged by the same Corporate Client to participate in a document review on September 30, 2019 -- the same day that HC2 assigned Delaney to the Law Firm Customer.  The State Court Complaint describes a document review project that took place in New York City, consistent with Delaney's employment by HC2 and his assignment to the Project, and it raises the same false retaliatory termination allegations that Delaney raised in March.  In conjunction with the wrongful termination claim, the plaintiff even quotes an email from HC2 informing Delaney that the project had been suspended.  Finally, the lawyer who was assisting Delaney in carrying out his scheme to extort a significant payment from the Corporate Client, is the same lawyer who signed and caused to be filed the State Court Complaint.

**B.     Delaney's Violations of His Ethical Obligations**

32.     As an attorney licensed to practice in New York State, Delaney has a professional duty, under Rules 1.6 and 1.9(c) of the New York Rules of Professional Conduct, not to make any unauthorized use or disclosures of the privileged or confidential information of a client or former client, and is prohibited from using such information to their disadvantage.

33.     Delaney's conduct, including his filing of the State Court Complaint, violated these ethical rules, by revealing the Corporate Client's confidential and attorney-client privileged

8

information and irreparably harming the Corporate Client and impairing HC2's goodwill in an effort to secure a personal financial gain.

**C.**     **Relevant Contract Provisions and Delaney's Breaches**

**1.**     **Delaney was an At-Will Employee of HC2 at All Times**

34.     Among other things, the Employment Agreement expressly provides that Delaney was at all relevant times an at-will employee, that any assignment with a client company would be "on an interim/temporary basis," and that when "[Delaney] is placed by [HC2] with a[] [HC2] client, [Delaney] remains a[n] [employee] of [HC2] during the period of such temporary placement."

**2.**     **Delaney Was Obligated to Maintain Confidentiality**

35.     Confidentiality is the core of HC2's business.  HC2's clients must be able to trust that HC2 employees -- particularly a contract attorney assigned to review confidential documents and identify privileged information to protect it from improper disclosure -- will abide by their contractual and professional obligations to maintain client confidences.  For that reason, HC2 requires every employee to sign the NDA, which strictly forbids disclosure of any confidential and privileged information or communications.  Reflecting the supremacy of client confidentiality to HC2's business model, the Employee Handbook and Conduct Rules provide additional guidance with respect to employees' obligation to preserve client confidences and privileges.

36.     The NDA defines "Confidential Information" as "confidential and proprietary information, ideas, data and/or materials belonging to the Clients or their clients, including but not limited to information concerning their respective existing and future businesses which are secret and not generally known and/or available to third parties . . . ."  The Employee Handbook adds that Confidential Information also includes but is not limited to, "[c]ompensation data," "[f]inancial data," and "[i]ndividual client data[.]"

37.     Pursuant to the Employment Agreement, Delaney unequivocally agreed "not to divulge any confidential information … obtained in the course of any assignment with an HC client to which Attorney has provided temporary services under this Agreement as described in Exhibit A, attached hereto and made a part hereof."

38.     Pursuant to the NDA, Delaney further agreed "to keep, hold, [] maintain in confidence, … and not [] disclose, directly or indirectly, to any third party" all Confidential Information "of every kind and character" that he "obtained in the course of any assignment . . . ." Delaney also agreed not to "exploit such Confidential Information for personal or other purposes under any circumstances . . . ."   The NDA also required Delaney to, "upon termination of [his] temporary assignment," return all Confidential Information "in [his] possession or under [his] control" to the Law Firm Customer.  By the NDA's express terms, Delaney agreed that his duties thereunder were binding and remained in full force and effect "indefinitely" even after his "relationship with [HC2] or any of its Clients terminates."

39.     Thus, Delaney affirmatively acknowledged that information he had obtained about the Corporate Client was confidential under the NDA, and that he was prohibited from disclosing it to any third party.  As Delaney freely admits, he disclosed in the State Court Complaint, the confidential and attorney-client privileged information, notwithstanding his contractual and ethical obligations.

### 3.     Delaney Agreed to Abide by HC2's Employment Rules and Policies

40.     As referenced above, as part of his employment at HC2, Delaney acknowledged and agreed to be bound by HC's code of conduct -- the Conduct Rules, which provide in part, that "concerns regarding your employment [should be] voiced directly [to] your HC2 recruiter."  The Conduct Rules are also clear that Delaney was not HC's client: … " [c]ontacting anyone from the client … is against [HC2] policy."

10

41.     Delaney thus agreed to raise any employment-related concerns about his participation on the Project with HC2 only.  Instead, he raised his complaints directly to the Law Firm Customer and the Corporate Client.  He also ignored -- indeed, he rebuffed -- HC2's attempts to discuss his concerns about COVID-19.  Furthermore, Delaney had agreed not to contact the Law Firm Customer and Corporate Client directly once the Project was suspended.  But he did so anyway by sending false, threatening emails on March 17, March 18 and March 27, in violation of his Employment Agreement.  There is no legal justification for his actions.

### 4.     Delaney's Duty of Loyalty to HC2 as an Employee

42.     Delaney was bound by a duty of loyalty to HC2, arising from the employer-employee relationship and memorialized in the Employee Handbook incorporated into the Employment Agreement.  The Employee Handbook expressly prohibited Delaney from "tak[ing] any action that is contrary to [HC2's] business interests or incompatible with the loyalty and obligation inherent in [his] employment."

43.     Delaney has breached this obligation repeatedly since March 17 by, among other things, sending unsolicited and unauthorized emails to the Law Firm Customer and Corporate Client leveling threats and demands and by publicly disclosing the Corporate Client's confidential and attorney-client privileged information and the Law Firm Customer's attorney work-product.

### 5.     Delaney is Bound to Indemnify HC2

44.     Delaney's Employment Agreement requires him to indemnify and hold HC2 harmless for any economic loss HC2 suffers because of Delaney's conduct pursuant to his Employment Agreement.  The Employment Agreement states that, "[Delaney] shall indemnify [] [HC2] [] from any and all claims, liabilities, judgments, settlements or costs and expenses (including reasonable attorney's fees) incurred by [HC2] associated with or resulting from any act or failure to act by [Delaney] in providing services to a client pursuant to this Agreement."

11

45.     HC2 has incurred fees and costs, and will continue to do so, as a direct result of Delaney's conduct, all of which Delaney is obligated to pay.

## COUNT I
## Breach of Contract

46.     HC2 repeats and realleges the allegations contained in paragraphs 1-45 above as if fully set forth herein.

47.     Delaney entered into the Employment Agreement with HC2.

48.     HC2 performed all of its obligations under the Employment Agreement.

49.     Delaney breached and continues to breach the Employment Agreement by, among other things: (i) using and disclosing Confidential Information he obtained during the Project to a third party and the public; (ii) attempting to exploit Confidential Information he obtained during the Project for his personal financial gain; (iii) acting contrary to HC2's interests in violation of his duty of loyalty to HC2 by threatening the Law Firm Customer and Corporate Client and demanding payment from them; and contacting the Law Firm Customer and Corporate Client without authorization concerning his employment with HC2.

50.     As a result of Delaney's breaches of his Employment Agreement, HC2 has suffered and, if further breaches are not enjoined, will suffer continuing and irreparable injury, as well as monetary damages.

## COUNT II
## Faithless Servant

51.     HC2 repeats and realleges the allegations contained in paragraphs 1-50 above as if fully set forth herein.

52.     Delaney owed HC2 a duty of loyalty and good faith by virtue of the parties' employer-employee relationship.

12

53.     Delaney violated this duty by, as alleged, acting contrary to HC2's interests, and in a manner detrimental to its business interests, Delaney's shocking violation of his duties as a member of the New York bar and of his contractual obligations to HC2 requires him, under the faithless servant doctrine, to disgorge to HC2 all compensation it paid to him.

**COUNT III**
**Preliminary and Permanent Injunction**

54.     HC2 repeats and realleges the allegations contained in paragraphs 1-53 above as if fully set forth herein.

55.     Delaney materially breached and threatens to continue to breach the Employment Agreement.

56.     Delaney's misconduct has caused and will cause irreparable harm to HC2, for which HC2 has no adequate remedy at law.

57.     By reason of the foregoing, HC2 is entitled to injunctive relief (a) enjoining Delaney and anyone acting on his behalf from:

  (i)     Continuing to possess and not return any and all documents in any form he acquired during and as a result of his employment with HC2; and

  (ii)    In any way disclosing, disseminating or revealing or continuing to disclose, disseminate or reveal any information he acquired during and as a result of his employment with HC2; and

  (iii)   Filing, or causing to be filed, on this Court's public docket any document that discloses, disseminates, or reveals information he acquired during and as a result of his employment with HC2; and

  (b) ordering Delaney:

(i)      To provide an accounting of any and all documents or other Confidential Information, or copies thereof, that he acquired during and as a result of his employment with HC2, including but not limited to any and all emails or text messages containing Confidential Information in form or substance, photographs or screenshots of Confidential Information, and any notes or other records he may have made; and

(ii)     To return, within 24 hours, any and all documents, files, property, and/or data he acquired from HC2, or any HC2 client.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, HC2 demands judgment against Delaney and that this Court enter an Order:

1)      (a) Preliminarily enjoining and restraining the Defendant from:

(i)      Continuing to possess and not return any and all documents he acquired during and as a result of his employment with HC2; and

(ii)     In any way disclosing, disseminating revealing or continuing to disclose, disseminate or reveal any information he acquired during and as a result of his employment with HC2;

(iii)    Filing, or causing to be filed, on this Court's public docket any document that discloses, disseminates, or reveals information he acquired during and as a result of his employment with HC2; and

(b) ordering Delaney:

(i)      To provide an accounting of all documents, material or other confidential information, or copies thereof, that he has retained from his employment with HC2, including but not limited to any and all

14

emails or text messages containing confidential information in form or substance, photographs or screenshots of confidential information, and any notes or other records he may have made; and

(ii)     To return, within 24 hours, any and all documents, files, property, and/or data he acquired from his employment with HC2, or otherwise belonging to HC2 or any client of HC2.

2)     Granting such other relief as the Court deems equitable and just; and

3)     Pending further hearing on this Order to Show Cause, Plaintiff requests an Order against Delaney temporarily restraining him, or anyone working on his behalf, from:

(a)     In any way disclosing, disseminating, revealing or continuing to disclose, disseminate, or reveal any information he acquired during and as a result of his employment with HC2; and

(b)     Filing, or causing to be filed, on this Court's public docket, any document that in any way, directly or indirectly, discloses, disseminates, or reveals information acquired during and as a result of his employment with HC2.

4)     Disgorgement of all compensation HC2 paid to Delaney in an amount to be determined at trial;

5)     Granting, interest, costs and attorneys' fees;

6)     Permitting Service of the Court's Show Cause Order, the pleadings and supporting documents via email upon Defendant's counsel constitutes sufficient service; and,

7)     Awarding such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        April 22, 2020

Respectfully submitted,

KASOWITZ BENSON TORRES LLP


By:   */s/ Ronald R. Rossi*
       Marc E. Kasowitz
       Ronald R. Rossi
       Kalitamara L. Moody

       1633 Broadway
       New York, NY 10019
       Telephone:  (212) 506-1700
       Facsimile:  (212) 506-1800

*Attorneys for Plaintiff HC2, Inc.*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746 and Rule 1.9 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I, Stephanos Zannikos, General Counsel of plaintiff HC2, Inc., hereby declare under penalty of perjury that I have read the foregoing complaint, and that the allegations contained therein are true and correct to the best of my knowledge.

Executed on April 21, 2020, in New York.

Stephanos Zannikos

16