**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X

HC2, INC.,                                            :

                                                      :      Civil Action No.: 1:20-cv-3178

                        Plaintiff,                    :
                                                      :
                                                      :
            -v-                                       :
                                                      :
ANDREW DELANEY,                                       :
                                                      :
                                                      :
                        Defendant.                    :
                                                      :

------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE***
**MOTION BY ORDER TO SHOW CAUSE FOR A TEMPORARY**
**RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**


KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiff HC2, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 4

     A.    The Parties ............................................................................ 4

     B.    Delaney's Employment by HC2 ....................................................... 4

     C.    Delaney's Breaches of the Relevant Contract Provisions...................... 6

          1.    Delaney Was Obligated to Maintain Confidentiality................... 6

          2.    Delaney Agreed to Abide by HC2's Employment Rules and
Policies.......................................................................... 8

          3.    Delaney's Duty of Loyalty to HC2 as an Employee.................... 8

ARGUMENT ...................................................................................................... 9

I.    THE TEMPORARY RESTRAINING ORDER SHOULD BE GRANTED .................. 9

II.    HC2 MEETS THE STANDARD APPLICABLE TO A PRELIMINARY
INJUNCTION AND A TEMPORARY RESTRAINING ORDER .............................. 10

     A.    HC2 WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE
RELIEF .......................................................................... 11

     B.    HC2 IS LIKELY TO SUCCEED ON THE MERITS  OF ITS CLAIMS .......... 12

     C.    THE EQUITIES WEIGH STRONGLY IN FAVOR OF INJUNCTIVE
RELIEF .......................................................................... 13

CONCLUSION.................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airbnb, Inc. v. City of New York*
   373 F. Supp. 3d 467 (S.D.N.Y. 2019)......................................................................11

*Am. Civil Liberties Union v. Clapper*
   785 F.3d 787 (2d Cir. 2015)..................................................................................10

*Carey v. Klutznick*
   637 F.2d 834 (2d Cir. 1980)..................................................................................13

*Clayton v. Whitton*
   233 A.D.2d 828 (3d Dep't 1996)..........................................................................13

*Data Track Account Servs., Inc. v. Lee*
   291 A.D.2d 827 (4th Dep't 2002).........................................................................11

*Hirschfeld v. Stone*
   193 F.R.D. 175 (S.D.N.Y. 2000) .........................................................................11

*Kelly v. Evolution Markets, Inc.*
   626 F. Supp. 2d 364 (S.D.N.Y. 2009).............................................................10, 11

*Lagermann v. Spence*
   No. 1:18-CV-12218-GBD, 2019 WL 4014846 (S.D.N.Y. Jan. 24, 2019) ................9

*Lim Tung v. Consol. Edison of New York*
   No. 19-CV-5444-RRMSJB, 2019 WL 4805080 (E.D.N.Y. Oct. 1, 2019) ............10

*Little Tor Auto Ctr. v. Exxon Co., USA*
   822 F. Supp. 141 (S.D.N.Y. 1993) .......................................................................10

*Payment Alliance Int'l, Inc. v. Ferreira*
   530 F. Supp. 2d 477 (S.D.N.Y. 2007)...................................................................12

*Reuschenberg v. Town of Huntington*
   16 A.D.3d 568 (2d Dep't 2005).............................................................................12

*Roswell Capital Partners LLC v. Alternative Const. Techs*
   No. 08 Civ. 10647 (DLC), 2009 WL 222348 (S.D.N.Y. Jan. 30, 2009) ................12

**Other Authorities**

Federal Rules of Civil Procedure Rule 65 ........................................................................1

New York Rules of Professional Conduct Rule 1.6 ........................................................7

New York Rules of Professional Conduct Rule 1.9(c) ...................................................7

Plaintiff HC2, Inc. ("HC2" or the "Company") respectfully submits this memorandum of law in support of its *ex parte* motion, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a temporary restraining order ("TRO") and a preliminary injunction, enjoining defendant Andrew Delaney ("Delaney") from continuing to use or disclose confidential and privileged information he obtained during his employment with HC2.[1]

## PRELIMINARY STATEMENT

This motion for a temporary restraining order and preliminary injunction is necessary to prevent Delaney, an attorney, from continuing to unlawfully use and disclose confidential, attorney-client privileged, attorney work-product and other information (the "Privileged Information") he obtained while employed by HC2, a legal staffing company, on a document review project (the "Project") for HC2's law firm customer (the "Law Firm Customer") and the Law Firm Customer's corporate client (the "Corporate Client").  HC2 seeks the temporary restraining order on an *ex parte* basis.

In contravention of his duties as an attorney and of his contractual obligations to HC2, Delaney, in a scheme to coerce HC2, the Law Firm Customer and Corporate Client to pay him hundreds of thousands of dollars, threatened to publicly disclose the Privileged Information.  When Delaney's extortionate demand went unmet by the deadline he set, he made good on his threat by publicly filing in a state court a baseless complaint against the Corporate Client (the "State Court Complaint") disclosing Privileged Information which is entirely irrelevant to his frivolous claims.

Absent immediate injunctive relief, Delaney remains a clear and present threat to continue to reveal the Privileged Information entrusted to him during the course of his HC2 employment

---

[1]   Submitted herewith in support of the Motion is the declaration of Ronald R. Rossi, dated April 21, 2020 ("Rossi Aff.").  A copy of HC2's Verified Complaint is annexed to the Rossi Aff. as Exhibit "A".

and in his capacity as an attorney, because of the acute risk that Delaney will make further unauthorized disclosures once he receives this Motion -- disclosures for which there is no conceivable justification.

On September 30, 2019, and continuing through mid-March 2020, Delaney was selected from a roster of HC2 contract attorneys by the Law Firm Customer to work on the Project at an HC2 facility in New York City (the "NYC Worksite"). On March 17, 2020, as COVID-19 infections in New York City rapidly increased, the Law Firm Customer decided to suspend the Project, while it determined whether to continue the Project with the document reviewers working remotely.

Within hours of the suspension of the Project, and apparently displeased at the turn of events, Delaney implemented his scheme. In multiple unauthorized communications with the Law Firm Customer and Corporate Client, Delaney made patently false allegations that HC2, the Law Firm Customer and Corporate Client had conspired to suspend the Project and terminate his employment in retaliation for his having raised concerns -- on the same day the Project was suspended -- about potential exposure to COVID-19 at the NYC Worksite. In a series of escalating threats leveled directly against the Corporate Client, Delaney and his counsel claimed retaliatory termination, demanded payment, and threatened to disclose the Privileged Information unless it acceded to his payment demand. The Corporate Client did not pay Delaney's $450,000 demand.

On April 15, 2020, the day after Delaney's payment demand deadline had passed, Delaney's lawyer made good on Delaney's prior threat by publicly filing the State Court Complaint against the Corporate Client. The State Court Complaint publicly discloses other Privileged Information and makes detailed allegations about the subject matter of the Project,

including related legal strategy and numerous other factual details, all of which Delaney harvested from the Corporate Client's privileged and confidential documents during the Project.

Although the State Court Complaint is a "John Doe" complaint, there is no doubt that Delaney is the "plaintiff" because, among other things, it is signed by the same lawyer who aided Delaney in demanding payment out of the Corporate Client, it includes references to the Project, and it contains allegations quoting HC2's emails to Delaney regarding the suspension of the Project.   Delaney has ignored written demands from the Corporate Client and HC2 that he immediately withdraw the State Court Complaint, cease disseminating Privileged Information, and account for and return Privileged Information in his and his attorneys' possession or control.  While the Corporate Client has now managed to have the State Court Complaint provisionally sealed, Delaney's actions make it clear that he has and continues to improperly use the Privileged Information he obtained during the Project in violation of his ethical and contractual duties.

All of the elements are met for the issuance of a TRO and preliminary injunction.  Unless Delaney is enjoined, HC2 will continue to suffer because of, among other things, the damage Delaney's actions and threatened actions have caused and will continue to cause to HC2's goodwill and reputation, which cannot be adequately quantified by monetary damages.  Indeed, under New York law, the mere unauthorized disclosure of confidential information like the Privileged Information constitutes irreparable harm.  HC2 is also likely, if not certain, to succeed on the merits of its breach of contract claims given that Delaney's breaches of the plain language of his contract with HC2 prohibiting him from using or disclosing any information, including the Privileged Information, that he learned during his employment by HC2.

Accordingly, HC2's request for a temporary restraining order and preliminary injunction enjoining him from disclosing the Privileged Information, or for that matter, any information learned during the course of his employment with HC2, should be granted.

## STATEMENT OF FACTS

### A.     The Parties

HC2 is a legal staffing company that provides attorneys, paralegals, and other legal professionals, as well as associated workspace, IT infrastructure, and related services for the short-term and long-term legal staffing needs of its customers, including law firms, corporations and government agencies.  HC2 requires its employees who have access to confidential information to agree to and abide by non-disclosure covenants, which strictly prohibit the unauthorized use and disclosure of confidential information.  Ver. Compl. ¶¶ 13, 35.

### B.     Delaney's Employment by HC2

HC2 employed Delaney as an attorney to work on temporary legal assignments for HC2's customers.   On December 28, 2016, Delaney executed HC2's employment contract (the "Employment Agreement"), which incorporated a Confidentiality and Non-Disclosure Agreement (the "NDA"), HC2's conduct rules and policies (the "Conduct Rules"), and HC2's employee handbook (the "Employee Handbook"), and an acknowledgment in which he agreed to adhere to the Conduct Rules and Employee Handbook.[2]  Ver. Compl. ¶ 18.

On September 30, 2019, HC2 assigned Delaney to the Project, which was expected to be completed in mid-May 2020.  On March 17, 2020, the Law Firm Customer suspended the Project at the New York Worksite, because of the COVID-19 pandemic while it determined if the Project

---

[2]  In order to avoid further unnecessary harm to HC2, counsel has not submitted copies of the relevant employment agreements as exhibits, but those documents are of course available if the Court requests them.

could continue remotely.  In a March 17, 2020 email, HC2's senior managing director informed Delaney and the other two attorneys working on the Project that it was suspended.  Ultimately, the Law Firm Customer and Corporate Client decided not to conduct the remainder of the Project remotely.  *Id.* ¶¶ 19-21.

Delaney sent emails on March 17 and 18, 2020 to the Law Firm Customer and the Corporate Client falsely claiming that he had been wrongfully terminated for expressing concerns about COVID-19.  On March 17, Delaney emailed the Law Firm Customer -- including its managing partners -- falsely accusing its attorneys of colluding with the Corporate Client to terminate him in retaliation for raising concerns about workplace safety.  Delaney threatened to "pursue all legal avenues against all persons involved," unless he was paid to stay home.  He then sent a similar email to the Corporate Client, again without authorization from HC2.  Delaney did not raise these complaints with his employer, HC2.  *Id.* ¶¶ 24-26.

Later on March 27, Delaney emailed the Corporate Client falsely stating that he had not been paid for his last week of work on the Project.  Delaney sent the same message to the Law Firm Customer's managing partners.  Delaney sent two other emails to the Law Firm Customer's managing partners, again without HC2's authorization which, among other things, falsely claimed that lawyers associated with the Law Firm Customer were sending him threatening emails and that he intended to pursue damages.  *Id.* ¶ 28.

On April 13, 2020 Delaney engaged counsel to send a letter to the Corporate Client's Chief Executive Officer and Board of Directors.  His new counsel reiterated Delaney's demand for a payment, and threats of litigation and disclosure of the Corporate Client's Privileged Information if his demand was not met by April 14.  *Id.* ¶ 29.

The Corporate Client did not accede to Delaney's demands.  On April 15, the day after Delaney's demand deadline passed, the same lawyer who had been aiding Delaney in his scheme to extort payment from the Corporate Client publicly filed the "John Doe" State Court Complaint, which discloses extensive portions of the Privileged Information in numerous averments Delaney learned on the Project.  *Id.* ¶ 30.[3]

The allegations in the State Court Complaint reveal that Delaney is its sole plaintiff.  The plaintiff alleges that he was engaged by the Corporate Client to participate in a document review on September 30, 2019 -- the very same day that HC2 assigned Delaney to the Project.  The plaintiff describes a document review project that took place in New York City and is substantively identical to the Project.  The plaintiff raises the same purported safety concerns and retaliatory termination allegations that Delaney raised following the suspension of the Project.  The plaintiff quotes from the HC2 email sent to the Project team, which informed Delaney and the two other attorneys working on the Project of its suspension.  *Id.* ¶ 31.

**C.**    **Delaney's Breaches of the Relevant Contract Provisions**

Delaney's actions after the suspension of the Project violate his Employment Agreement, the NDA, the Conduct Rules, and the Employee Handbook.

**1.**    **Delaney Was Obligated to Maintain Confidentiality**

HC2 requires every employee to sign the NDA, which strictly forbids disclosure of any confidential and privileged information or communications gained from their employment with

---

[3]  While Delaney's State Court Complaint reveals such information, HC2 understands that the State Court Complaint's allegations themselves are incomplete information and largely inaccurate.  Notwithstanding, he still filed in a state court outside of New York without notice to HC2, or the Corporate Client, and without a jurisdictional nexus.  By so doing, he accomplished, in part, his apparent goal of making the Privileged Information public while at the same time making detection of his unethical actions and public disclosure more difficult to discover and police.

6

HC2.  The Employee Handbook and Conduct Rules set forth an additional obligation to preserve customer confidences and privileges.  Ver. Compl. ¶ 35.

The NDA defines "Confidential Information" as "confidential and proprietary information, ideas, data and/or materials belonging to the Clients or their clients, including but not limited to information concerning their respective existing and future businesses which are secret and not generally known and/or available to third parties . . . ."  The Employee Handbook adds that Confidential Information also includes, but is not limited to, "[c]ompensation data," "[f]inancial data," and "[i]ndividual client data[.]"  *Id.* ¶ 36.

Pursuant to the Employment Agreement and the NDA, Delaney was obligated:

- "[N]ot to divulge any confidential information … obtained in the course of any assignment with an [HC2] client to which Attorney has provided temporary services under this Agreement as described in Exhibit A, attached hereto and made a part hereof'";

- "To keep, hold, [] maintain in confidence, … and not [] disclose, directly or indirectly, to any third party" all Confidential Information "of every kind and character" that he "obtained in the course of any assignment . . . .";

- To not "exploit such Confidential Information for personal or other purposes under any circumstances . . . ."; and

- By the NDA's express terms, Delaney agreed that his duties thereunder were binding and remained in full force and effect "indefinitely" even after his "relationship with [HC2] or any of its Clients terminates."

*Id.* ¶¶ 37-38.

As an attorney licensed to practice in New York State, Delaney has a professional duty, under Rules 1.6 and 1.9(c) of the New York Rules of Professional Conduct, not to make any unauthorized use or disclosures of the privileged or confidential information of a client or former client, like the Privileged Information at issue here.  He is also prohibited from manipulating and using the Privileged information to the Corporate Client's disadvantage.

7

Delaney's conduct, including his filing of the State Court Complaint, revealing the Privileged Information, violated these ethical rules and his Employment Agreement, irreparably harming the Corporate Client and impairing HC2's goodwill in an effort to secure personal financial gain.

### 2.  Delaney Agreed to Abide by HC2's Employment Rules and Policies

Delaney was obligated to follow Conduct Rules, which provide in part, "concerns regarding your employment [should be] voiced directly [to] your HC2 recruiter."  The Conduct Rules also address how Delaney was to conduct himself once the Project was suspended; specifically, "[w]hen you conclude an assignment, you should not contact our client … [because] [c]ontacting anyone from the client … is against [HC2] policy."  Ver. Compl. ¶ 40.

Delaney breached these obligations repeatedly by raising his concerns to the Corporate Client and the Law Firm Customer without authorization.  *Id.* ¶ 41.

### 3.  Delaney's Duty of Loyalty to HC2 as an Employee

Delaney was bound by a duty of loyalty to HC2, which arises by virtue of the employer-employee relationship and which was memorialized in the Employee Handbook incorporated into the Employment Agreement.  The Employment Handbook expressly prohibited Delaney from "tak[ing] any action that is contrary to [HC2's] business interests or incompatible with the loyalty and obligation inherent in [his] employment."  Ver. Compl. ¶ 42.

He has breached this obligation repeatedly.  Among other things, he has disclosed the Privileged Information; sent unsolicited and unauthorized emails to the Law Firm Customer and Corporate Client; leveled threats and demands against the Law Firm Customer and Corporate Client that directly conflicted and interfered with HC2's business interests; and, severely and

irreparably damaged HC2's reputation and relationship with the Law Firm Customer and the Corporate Client.  *Id.* ¶ 43.

## ARGUMENT

**I.      THE TEMPORARY RESTRAINING ORDER SHOULD BE GRANTED**

Delaney, a licensed New York attorney, has already shown that he is not constrained by: professional ethics, or by his contractual obligations.  He has already misused and disclosed, without authorization or any valid justification, his client's Privileged Information publicly filed in the State Court Complaint.  Despite the sealing of the State Court Complaint on April 21, 2020, and despite demands from the Corporate Client and HC2 that Delaney cease and desist from his dissemination of Privileged Information and withdraw the State Court Complaint on April 20, 2020, a national media outlet contacted the Corporate Client purporting to have a copy of the State Court Complaint and knowledge of certain other facts that suggest Delaney sent it to them.  In short, even after HC2 demanded that Delaney cease and desist his damaging conduct and honor his ethical and contractual obligations, he ignored the requests, his professional duties, and instead continued to disseminate the Privileged Information by distributing it to or speaking about it with the national press.

It is plain that, if he is not immediately restrained and once he is on notice of this motion he will in all likelihood undertake further unlawful disclosures of Privileged Information, which would result in further harm to HC2's business -- which depends upon the trust of its customers -- before Delaney can be heard in opposition.  Under these unusual circumstances where, as here, Delaney would suffer no harm by being temporarily restrained, the entry of a temporary restraining order should be granted *ex parte*.  *See Lagermann v. Spence*, No. 1:18-CV-12218-GBD, 2019 WL 4014846, at *1 (S.D.N.Y. Jan. 24, 2019) (*ex parte* intervention is appropriate where "advance

contact with the adversary would itself be likely to trigger irreparable injury"); *Lim Tung v. Consol. Edison of New York*, No. 19-CV-5444-RRMSJB, 2019 WL 4805080, at *2 (E.D.N.Y. Oct. 1, 2019); *see also Little Tor Auto Ctr. v. Exxon Co., USA*, 822 F. Supp. 141, 143 (S.D.N.Y. 1993) (citing examples including "discovery of contraband which may be destroyed as soon as notice is given" as basis for proceeding *ex parte*).

The potential for irreparable harm should the motion not proceed *ex parte* is manifest here. Given Delaney's recent conduct, HC2 has a credible fear that providing notice will trigger Delaney into publicly disseminating the Privileged Information should he learn of the Verified Complaint or the request for a temporary restraining order before the Court rules on the emergency relief sought in this motion. Delaney has already flouted the Rules of Professional Conduct that he is required to abide by as a licensed New York lawyer. He has also demonstrated his disdain for the rights and privileges of clients whose information he was responsible to safeguard to advance his own personal interests in apparent personal vendettas against HC2 and its client. His wanton and reckless conduct to date speaks for itself and there is a high probability that upon learning of this action before this Court hears HC2's request for relief, he will effectively partially moot the request by publicly disseminating client confidences before he is subjected to an order of this Court or even a hearing on HC2's TRO application. By then, much of the damage may already be done. *See* Rossi Decl. at ¶¶ 5-7.

## II.   HC2 MEETS THE STANDARD APPLICABLE TO A PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER

It is well settled that a temporary restraining order and a preliminary injunction are appropriate where the movant shows "irreparable harm and . . . a likelihood of success on the merits . . . and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *See Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015); *see also Kelly*

*v. Evolution Markets, Inc.*, 626 F. Supp. 2d 364, 375 (S.D.N.Y. 2009) (standard for a temporary restraining order is the same as that for a preliminary injunction).

As shown below, HC2 satisfies each of the foregoing elements, and HC2 is entitled to injunctive relief enjoining Delaney from continuing to use or disclose the Privileged Information he obtained during the Project, from continuing to breach his ethical duties as an attorney, and from otherwise further breaching his Employment Agreement.  The record is plain that Delaney has felt himself undeterred by his contractual or professional obligations and that, absent court intervention, it is likely that he will continue to unlawfully use and disclose the Privileged Information.

### A.     HC2 WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

It is well-established that the disclosure of confidential information itself constitutes irreparable harm, let alone the Privileged Information that includes attorney-client privileged and attorney work product privileges that should be preserved and maintained inviolate at all times. *See Hirschfeld v. Stone*, 193 F.R.D. 175, 187 (S.D.N.Y. 2000) (the disclosure of confidential information "is the quintessential type of irreparable harm that cannot be compensated or undone by money damages"); *see also Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019) (granting preliminary injunction because "the confidentiality of . . . records will be irreversibly lost even if plaintiffs ultimately prevail on the merits of their claim").

Injunctive relief is particularly warranted where, as here, the irreparable harm results from the disclosure of privileged information by an attorney.  *See, e.g., Data Track Account Servs., Inc. v. Lee*, 291 A.D.2d 827, 827 (4th Dep't 2002) (affirming permanently enjoining defendant from "disclosing confidences and secrets he obtained during his employment as an attorney for plaintiffs" given irreparable harm from defendant's "repeated disclosures of confidential

11

information to [plaintiffs'] detriment").  Here, HC2 has suffered and will suffer irreparable harm given that Delaney's misuse and disclosure of Privileged Information he learned as HC2's employee strikes a blow to the heart of HC2's business as a legal services provider, threatening to harm its reputation in the legal marketplace and good will with its clients.  *See, e.g., Reuschenberg v. Town of Huntington*, 16 A.D.3d 568, 570 (2d Dep't 2005) (irreparable harm demonstrated where defendant's actions threaten to destroy a business).

### B.    HC2 IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

HC2 has an overwhelming likelihood of success on the merits of its claims.  Delaney plainly and blatantly has breached, and threatens to continue to breach, his Employment Agreement with HC2 in numerous ways, including by misusing and disclosing the Privileged Information he learned while employed by HC2.  Statement of Facts, *supra* at 4-9.  Among other things, he publicly filed the State Court Complaint, which contained the Privileged Information, and appears to have also provided it to the national press.[4]  *See Roswell Capital Partners LLC v. Alternative Const. Techs.*, No. 08 Civ. 10647 (DLC), 2009 WL 222348, at *9-*11 (S.D.N.Y. Jan. 30, 2009) (finding plaintiff would be successful on the merits of its breach of contract claim where it showed undisputed evidence of defendants' breach and defendants did not show a likelihood of success at trial on any affirmative defense to excuse their breaches); *see also Payment Alliance Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 485 (S.D.N.Y. 2007) (finding success on the merits where plaintiff showed defendant's breach of an enforceable contract).

---

[4]  On April 21, 2020, the Corporate Client succeeded in having the State Court Complaint provisionally sealed, but that will not prevent Delaney from making further efforts to use and disclose the Privileged Information.

## C.     THE EQUITIES WEIGH STRONGLY IN FAVOR OF INJUNCTIVE RELIEF

Because HC2 has a likelihood of success on the merits, it need not also demonstrate that the "balance of hardships" overwhelmingly weighs in its favor.  Nevertheless, that is the case here.  Indeed, Delaney cannot make any showing, much less a convincing showing, that he will be harmed in any way if enjoined from being able to continue to exploit for his own gain the Privileged Information he misappropriated.  *See Clayton v. Whitton*, 233 A.D.2d 828, 830 (3d Dep't 1996) (balance of equities favors injunctive relief where defendant fails to make "a convincing showing that he will be harmed in any material way" by the issuance of a preliminary injunction).

In balancing the equities, a court may also consider various other factors, such as "the interests of the general public."  *See Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980) ("the public interest has always been a factor to be considered in the granting of a preliminary injunction").  Here, the public interest strongly weighs in favor of injunctive relief as it would serve to preserve the integrity of the attorney-client privilege.

## CONCLUSION

For the foregoing reasons, HC2's motion for a temporary restraining order and preliminary injunction should be granted.

Dated:  New York, New York             Respectfully submitted,
        April 22, 2020
                                       KASOWITZ BENSON TORRES LLP


                                       By:   */s/ Ronald R. Rossi*
                                             Marc E. Kasowitz
                                             Ronald R. Rossi
                                             Kalitamara L. Moody

                                             1633 Broadway
                                             New York, NY 10019
                                             Telephone:  (212) 506-1700
                                             Facsimile:  (212) 506-1800

                                       *Attorneys for Plaintiff HC2, Inc.*