UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
HC2, INC.,

                    Plaintiff,                          1:20-cv-03178-LJL

            -against-                   DEFENDANT'S ANSWER AND
                                          COUNTERCLAIMS_____
ANDREW DELANEY,

                 Defendant.                **JURY TRIAL DEMANDED**
-----------------------------------------------------------------x

Defendant Andrew Delaney, by his attorney Robert Rotman, Esq., hereby responds to the complaint of Plaintiff dated April 22, 2020 as follows:

<u>ANSWER</u>

Defendant specifically responds to the individually numbered allegations of Plaintiff's complaint as follows:

1.      The allegations in paragraph 1 are denied.

2.      The allegations in paragraph 2 are denied except that Defendant admits that "Delaney, along with two other HC2 employees, began working on the Project at HC2's facility in New York City," on September 30, 2020.

3.      The allegations in paragraph 3 are denied.

4.      The allegations in paragraph 4 are denied.

5.      The allegations in paragraph 5 are denied.

6.      The allegations in paragraph 6 are denied.

7.      The allegations in paragraph 7 are denied.

8.      The allegations in paragraph 8 are denied.

9.      The allegations in paragraph 9 are denied.

10.     The allegations in paragraph 10 are denied.

11.     The allegations in paragraph 11 are denied.

12.     The allegations in paragraph 12 are denied.

13.     The allegations in paragraph 13 are denied.

14.     The allegations in paragraph 14 are admitted.

15.     The allegations in paragraph 15 are denied.

16.     The allegations in paragraph 16 are denied.

17.     The allegations in paragraph 17 are admitted.

18.     The allegations in paragraph 18 are denied.

19.     The allegations in paragraph 19 are denied except admitted that on September 30, 2019, Delaney started work on the document review.

20.     The allegations in paragraph 20 are denied.

21.     The allegations in paragraph 21 are admitted.

22.     The allegations in paragraph 22 are denied.

23.     The allegations in paragraph 23 are denied.

24.     The allegations in paragraph 24 are denied.

25.     The allegations in paragraph 25 are denied.

26.     The allegations in paragraph 26 are denied.

27.     The allegations in paragraph 27 are denied.

28.     The allegations in paragraph 28 are denied.

29.     The allegations in paragraph 29 are denied.

30.     The allegations in paragraph 30 are denied.

31.     The allegations in paragraph 31 are denied.

32.     The allegations in paragraph 32 are denied.

33.     The allegations in paragraph 33 are denied.

34.     The allegations in paragraph 34 are denied except that Delaney admits he was an at-will employee.

35.     The allegations in paragraph 35 are denied.

36.     The allegations in paragraph 36 are denied.

37.     The allegations in paragraph 37 are denied.

38.     The allegations in paragraph 38 are denied.

39.     The allegations in paragraph 39 are denied.

40.     The allegations in paragraph 40 are denied.

41.     The allegations in paragraph 41 are denied.

42.     The allegations in paragraph 42 are denied.

3

43.     The allegations in paragraph 43 are denied.

44.     The allegations in paragraph 44 are denied.

45.     The allegations in paragraph 45 are denied.

46.     The allegations in paragraph 46 are admitted.

47.     The allegations in paragraph 47 are denied.

48.     The allegations in paragraph 48 are denied.

49.     The allegations in paragraph 49 are denied.

50.     The allegations in paragraph 50 are denied.

51.     The allegations in paragraph 51 are admitted.

52.     The allegations in paragraph 52 are denied.

53.     The allegations in paragraph 53 are denied.

54.     The allegations in paragraph 54 are admitted.

55.     The allegations in paragraph 55 are denied.

56.     The allegations in paragraph 56 are denied.

57.     The allegations in paragraph 57 are denied.

58.     Defendant denies that Plaintiff is entitled to any of the relief sought in its prayer for relief.  Each and every allegation of the complaint not elsewhere responded to is hereby expressly denied.

<u>FIRST DEFENSE</u>

4

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2), Defendant asserts the defense of lack of subject-matter jurisdiction and the defense of lack of personal jurisdiction.

Plaintiff did not properly serve the complaint on him.

## SECOND DEFENSE

Plaintiff has no standing to sue, and therefore the complaint should be dismissed with prejudice.[1]

## THIRD DEFENSE

The complaint fails to state a claim upon which relief can be granted.

## FOURTH DEFENSE

The complaint is unconstitutionally vague and is not clear about who, what, or when they are referring to.  It refers to "the Corporate Client", "the Law Firm", "the Project", "the State Court Complaint", "the Chief Executive Officer and Board of Directors," "the Employment Agreement",[2] "NDA", "Confidential Information", "Conduct Rules", and all these other meaningless defined terms.  It is impossible for Defendant to know what he is accused of doing and what he has to respond to in violation of his constitutional right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

---

[1] Defendant was led to believe he was working jointly for "Hire Counsel, Inc." but this entity, if it even exists at all, is not registered as d/b/a in New York State where Defendant was working.

[2] In footnote 1 of the complaint Plaintiff makes the lame excuse about "the Employment Agreement": "In order to avoid further unnecessary harm to HC2, counsel has not submitted copies of the relevant employment agreements as exhibits, but those documents are of course available if the Court requests them."  This makes no sense.  The attachment of an employment agreement could not possibly cause harm to Plaintiff.  The real reason for not attaching it is there is no such agreement because Defendant was not working for Plaintiff on December 28, 2016 as alleged.

<u>FIFTH DEFENSE</u>

The complaint violates Defendant's rights under the First Amendment to the United States Constitution.[3]  Defendant has a right to make public health and labor law petitions against Plaintiff which are in the public interest.

<u>SIXTH DEFENSE</u>

There was no employment agreement between Plaintiff and Defendant.[4]

<u>SEVENTH DEFENSE</u>

Any information in this case was not being treated as confidential because it was shared with third persons on the other side, and was therefore not privileged.

Also, Plaintiff illegally disclosed Defendant's private and confidential information to the other side.

<u>EIGHTH DEFENSE</u>

Plaintiff is not entitled to equitable relief since "he who comes into equity must come with clean hands" ("he who seeks Equity must do Equity").  Plaintiff firstly disclosed and leaked Defendant's confidential personal information to the other side in breach of contract and in

---

[3] https://law.yale.edu/sites/default/files/area/center/liman/document/50-4_cover.pdf

[4] On April 22, 2020, Marc E. Kasowitz, Plaintiff's attorney, sent an email to Defendant's attorney stating "We represent HC2, Inc. ('HC2'), a legal staffing company. HC2 has employed your client, Andrew Delaney ('Delaney'), a licensed New York attorney, as a contract attorney <u>since December 28, 2016</u>, pursuant to a written employment contract ('Employment Agreement')."  (emphasis added).  This is utterly false.  He makes it sound as if Defendant was working for Plaintiff continuously since December 28, 2016 and in perpetuity.  Defendant never agreed to enter into an employment agreement with Plaintiff forever, and would have had no reason to do so since he was working for them for a low hourly wage, zero benefits, and for a short time.  He is a merely a gig worker who works for many agencies and the standard practice is that he has to sign a new agreement for any new document review.  He is not allowed to work for multiple agencies at the same time, although he can be on their mailing lists.  The whole reason workers like Defendant work in the gig economy is the freedom not to have permanent contracts.

violation of his privacy rights, and secondarily filed this false complaint against him. Due to Plaintiff's dirty hands, it is Defendant who should be entitled to an injunction against Plaintiff not the other way around.

## NINTH DEFENSE

The complaint should be dismissed due to Plaintiff's fraud.

## TENTH DEFENSE

Defendant is entitled to protection under applicable whistleblower laws.

## COUNTERCLAIMS

## PARTIES

1.      Plaintiff/Counterclaim Defendant HC2, Inc. ("HC2") is incorporated in the District of Columbia with its principal place of business in Chicago, Illinois.

2.      Defendant/Counterclaim Plaintiff Andrew Delaney ("Delaney") is a resident of the State of New York.

## JURISDICTION AND VENUE

3.      Jurisdiction is based on 28 U.S.C. § 1332 because (1) the amount in controversy exceeds $75,000 and (2) all plaintiffs are of different citizenship than all defendants.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) because it is a judicial district in which any defendant resides and because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## FACTS

7

5.      Delaney works in the "gig economy".   He is a translator and a foreign language document review worker.

6.      After starting on the document review reviewing Thai documents on September 30, 2019, Delaney learned that the review involved persons and issues which could pose a grave personal danger to him in a Third World country.

7.      On November 28, 2019 (Thanksgiving), Delaney received a personal email from a party on the other side of the review[5] which made it clear that they knew he was working on the review and which was an implied "set-up" or threat.  The clear message was "we know it is you."

8.      Delaney found out that his name, involvement, personal information, and work were being disclosed to persons on the other side of the review.  The servers and review center were located offshore in Asia.

9.      Delaney emailed the document review law firm[6] and complained about this.  The law firm asked for a copy of the email on the condition it would not be shared with the company but it reneged on this.

10.      After being double-crossed by HC2 and the law firm, Delaney immediately applied for other work and left.  January 3, 2020 was his last day of work.

11.      On February 17, 2020, at HC2's request, Delaney was rehired for work on the document review.

---

[5] Due to the TRO, Delaney is not naming the specific persons on the other side of the review.  As used herein, the "law firm" is the U.S. law firm and the "company" is the foreign company who was conducting the document review.

[6] On March 27, 2020, the law firm emailed Defendant: "You are incorrect that Hire Counsel is the agent of [the law firm] or [the company]."

12.     On March 7, 2020 – 10 days before he was fired – New York State Governor Andrew Cuomo declared a state of emergency.

13.     Starting on January 21, 2020 as the coronavirus spread throughout the United States and especially New York, HC2 was not maintaining safe and healthy office conditions.  Document review is similar to a call center. Delaney sat two feet away from the other two reviewers in a small office with no windows.  HC2's HR department simply emailed workers to commute with wipes and to watch President Trump's speech on TV.[7]

14.     On March 17, 2020, Delaney emailed HC2 and the law firm and complained to them that workers were coming into the office with flu-like symptoms and asked if he could either work remotely or if they could stay at home with pay while still being on the document review.[8] At 1:02 PM – 90 minutes later - the law firm emailed him back stating that the company said that remote work was not an option ("we have not been in a position where we are able to conduct a remote review").[9]  A few minutes later, HC2 emailed Delaney and the others saying that they were terminated:  "We are requesting all team members to gather their belongings and depart the facility

---

[7] On March 5, 2020, HC2 sent out an email subject "Inform - COVID-19 & Seasonal Flu – Update" stating:  "Due to the nature of our business, we will continue to operate all our locations, but continue to take precautionary measures, such as reducing the number of contractors per review room."  However, this did not happen.  Instead of closing its office, HC2 said "Commute with a pack of antibacterial wipes with alcohol and wipe down the surfaces you come into contact with (i.e., door handles, elevator buttons, remote control, telephone)."  It further said: "Avoid people who are obviously sick…. Make sure you, and the people around you, follow good respiratory hygiene. This means covering your mouth and nose with your bent elbow or tissue when you cough or sneeze. Then, dispose of the used tissue immediately. Droplets spread viruses. By following good respiratory hygiene, you protect the people around you from viruses such as cold, flu and COVID-19…. Stay home if you feel unwell. If you have a fever, cough and difficulty breathing, seek medical attention and call in advance."

[8] Delaney came into the office wearing a mask, latex gloves, and goggles which he bought on his own.  His hands were badly hurt from wearing the gloves at his computer all day.

[9] Now, HC2 shamelessly claims it was offering Delaney remote work.

in an orderly fashion and exit our environment since the project is effectively ending… We will continue to monitor the efforts of Congress in helping to off-set the impact of lost work."[10]

15.     There is no question that Delaney was terminated in unlawful retaliation for his whistleblower notification about the office conditions and for criticizing HC2's HR department.[11]

16.     Knowing that Delaney would file a public health and employment lawsuit against it, HC2 and its lawyers cooked up this bogus lawsuit accusing him of extortion[12] and stealing documents.

17.     HC2 and its lawyers knew perfectly well that it was physically impossible for Delaney to steal or download documents and that there were no hard copies of anything.[13]

COUNT ONE
FRAUDULENT INDUCEMENT

18.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

---

[10] This did not stop HC2 from fabricating in the complaint that Delaney had not been terminated.  On March 30, 2020, HC2's general counsel sent an email stating that "Hire Counsel lawfully terminated his employment." It further stated: "We hope that this email clarifies …..the circumstances around Hire Counsel's decision to terminate his employment." But paragraph 23 of the complaint falsely states that: "HC2 never terminated the Employment Agreement or took any other action to terminate Delaney's employment by HC2."  Like the rest of its complaint, it is the exact opposite of the truth.  To try to cover up its unlawful termination of him after the fact, HC2's HR department then started sending Defendant/Counterclaim Plaintiff uninvited harassing emails after he was terminated pretending that he was still working there unpaid and that it was offering him remote work.

[11] The immediate nature of the firing of Defendant/Counterclaim Plaintiff without any advanced notice is further proof that it was retaliatory.   HC2's Handbook paragraph 113 says "Should the Company need to terminate your employment because of reorganization, job elimination, economic downturns, or lack of work, the Company will try to give you as much advance notice as is practical."

[12] Paragraph 31 states:  "Finally, the lawyer who was assisting Delaney in carrying out his scheme to extort a significant payment from the Corporate Client, is the same lawyer who signed and caused to be filed the State Court Complaint."

[13] ABA Model Rule of Professional Conduct 3.3 (Candor Toward the Tribunal) states: "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

19.     Delaney detrimentally relied on the HC2's two misrepresentations or material omissions of fact that (a) the work involved a normal document review that would not pose risks or danger to him and (b) his identity, personal information, involvement, and work-product would not be disclosed to outside third parties in this case, even worse, to the other side.   These misrepresentations or material omissions of fact were made for the purpose of inducing Delaney to rely on it and them, Delaney justifiably relied on it and them in agreeing to work and continuing to work on the document review, and he was injured as a result of that reliance.

20.     As a result, HC2 is liable to pay damages equal to the actual pecuniary loss to Delaney directly caused by the fraudulent inducement in an amount to be proven at trial.

## COUNT TWO
## FRAUDULENT MISREPRESENTATION

21.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

22.     Fraudulent misrepresentation involves a party making a materially false statement to another party, causing a deal between the two parties to be based on a false premise.   These were made in a number of formats including writing, speech, gestures, and silence.

23.     HC2 made three fraudulent misrepresentations to Delaney.

24.     Firstly, HC2 fraudulently misrepresented that its office would be a safe and "healthful" working environment.   This representation was known to be false when it was made or made recklessly without knowledge of its truth.   HC2 had Delaney come into the office during the coronavirus despite the unlawful, unsafe, and unhealthy public health issues present there.

25.     Secondly, HC2 fraudulently misrepresented that this was a normal document review which would not involve any dangerous issues or personal risks to Defendant.   This was either because HC2 was only interested in making a "cut" of the Delaney's work and had no idea

11

what the document review was about or what was happening in Asia, or that it knew but deliberately did not disclose this to Delaney.  It turned out that the work was very dangerous and posed a grave threat to Delaney's life, work, and property.

26.     Thirdly, HC2 fraudulently misrepresented that Delaney's working on the document review would be kept confidential and would not be disclosed to outside parties, in this case, to the other side, and that it would maintain his privacy rights.  Instead, without telling him, Delaney's identity, personal information, involvement, and work was disclosed to the other side.  HC2 knew perfectly well the risks of having Delaney's information and work be with the foreign company. HC2 merely acted as a "passthrough" or "veil" for the law firm and the company to claim no relationship with Delaney whenever it suited them, such as in this lawsuit, while not controlling or protecting Delaney's information and privacy at all.

27.     As a result of HC2's multiple fraudulent misrepresentations above, any agreement with HC2 is rescinded and Delaney is entitled to actual damages in an amount to be proven at trial.

COUNT THREE
WHISTLEBLOWER RETALIATION

28.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

29. HC2 unlawfully retaliated against Delaney after he made a complaint against it under N.Y. Labor Law § 740[14] and § 215.

30.     HC2's subsequent actions were an effective admission that it had illegally retaliated against Delaney.

---

[14] Section 740 states: "2.   Prohibitions.   An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a)  discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety…."

31.     HC2 also did not comply with paragraph 604 of its own Handbook which states: "Report immediately to your supervisor any indications that the environment is not being maintained in a safe and healthful fashion."

32.     The bringing of this baseless action is further retaliation for Delaney's whistleblower complaint.

33.     As a result of HC2's retaliatory and other unlawful acts, Delaney is entitled to injunctive relief, reinstatement to the same position or to an equivalent position, compensation for lost salary and benefits, and recoupment of reasonable costs, disbursements, and attorney's fees in an amount to be proven at trial but not less than $450,000.

COUNT FOUR
BREACH OF CONFIDENTIAL RELATIONSHIP

34.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

35.     HC2 breached the confidential relationship with Delaney when it, the law firm, and the company disclosed information about him to the other side.

36.     For the tort of breach of confidential relationship, a cause of action consists of the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship.

37.     As a result of its tortious acts, HC2 is liable to pay damages to Delaney in an amount to be proven at trial.

COUNT FIVE
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

38.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

13

39.     HC2 intentionally inflicted emotional distress on Delaney when it disclosed his identity, personal information, involvement, and work to the other side and brought this false case against him.

40.     Here, there is extreme and outrageous conduct, intent to cause, or disregard of a substantial probability of causing, severe emotional distress, and there is a causal connection between the conduct and the injury.

41.     As a result of HC2's conduct, Delaney suffered damages including medical problems, severe humiliation, mental anguish, and emotional and physical distress, has been injured in mind and body in the sum of $5,000,000, special damages including loss of wages and medical and related expenses incurred or paid, and punitive damages in an amount to be proven at trial.

COUNT SIX
INVASION OF PRIVACY

42.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

43.     HC2's disclosure of Delaney's personal information to the other side was a violation of its own privacy policies[15] and his right to privacy.  In so doing, HC2 intruded on Delaney's solitude and private affairs and publicly disclosed private facts.

44.     N.Y. Civ. Rights L. §§ 50 and 51 protect Delaney's identity from unauthorized commercial use and recognize a person's right to be left alone.

---

[15] "Hire Counsel uses Human Resource personal information for limited purpose that includes complying with employment related laws and regulations as well as for payroll purposes."
https://www.hirecounsel.com/wp-content/uploads/2018/12/Hire-Counsel-Global-GDPR-Data-Privacy-Policy_120618.pdf

45.     As a result of its unlawful acts, HC2 is liable to Delaney damages in an amount to be proven at trial.

COUNT SEVEN
<u>FAILURE TO PAY N.Y. SICK LEAVE</u>

46.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

47.     HC2 failed to pay Delaney for his accrued sick time under N.Y. Labor Law § 196-b.

48.     It is illegal to interfere with investigations or to retaliate against employees who exercise their rights under the Paid Sick Leave Law.[16]

49.     HC2 is liable to pay Delaney for all accrued and unpaid sick leave.

COUNT EIGHT
<u>DEFAMATION PER SE (LIBEL PER SE)</u>

50.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

51.     HC2 and its attorneys maliciously defamed Delaney when they accused him of extortion and implied that he stole  documents in paragraphs 1, 9, 29, 31, 43, and 57[17] of the complaint and accused him of being unethical in paragraphs 1, 7, 9, 32, and 39 and then publicized this.[18]

---

[16] https://www1.nyc.gov/assets/dca/downloads/pdf/about/PaidSickLeave-AnswerstoEmployerQuestions.pdf

[17] Paragraph 57(i) requests an order preventing Defendant/Counterclaim Plaintiff from "[c]ontinuing to possess and not return any and all documents in any form he acquired during and as a result of his employment with HC2".  The word "continuing" is a clear statement that he had documents.

[18] From April 23-29, 2020, due to this case, various articles appeared falsely accusing Defendant/Counterclaim Plaintiff of "extortion" and "blackmail."

52.     HC2 acted with actual malice because it knew that what they accused Delaney of was physically impossible and because it knew that Delaney was planning to file legitimate public health and employment claims against HC2.

53.     Delaney has been damaged by these false statements because the statements subjected him to hatred, distrust, ridicule, contempt, and disgrace.

54.     Delaney has been damaged by these false statements because the statements injured him in his profession and business.

55.     HC2 is liable to Delaney for all compensatory damages including consequential and incidental damages in the amount of $15,000,000.

COUNT NINE<br>ABUSE OF PROCESS

56.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

57.     HC2 regularly issued civil process with the intent to do harm without cause or justification and used the process in a perverted manner to achieve a collateral objective.

58.     Paragraph 57 of the complaint which is its request for a Temporary Restraining Order is based on the false and defamatory premise that Delaney stole documents, when it knew that he did not and that doing so was physically impossible.

59.     The sole purpose of this complaint was to deter Delaney from pursuing legitimate public health and employment claims against the HC2.

60.     As a result of its intentional tortious acts, HC2 is liable to Delaney in an amount to be proven at trial.

SANCTIONS

62.     Sanctions are requested under Fed. R. Civ. P. Rule 11 against HC2 and/or its attorneys for filing a knowingly non-good faith case against Delaney for an improper purpose.

<u>JURY DEMAND</u>

63.     Delaney asserts his rights under the Seventh Amendment to the United States Constitution and demands, in accordance with Fed. R. Civ. P. Rule 38, a trial by jury on all issues.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Defendant/Counterclaim Plaintiff respectfully requests the following relief:

1.     That the claims asserted in Plaintiff's complaint be dismissed with prejudice.

2.     That Plaintiff's requests for a Preliminary Injunction and Permanent Injunction be denied.

3.     That the Defendant/Counterclaim Plaintiff be awarded all compensatory, economic, special, and punitive damages of at least $20,000,000.

4.     That the Defendant/Counterclaim Plaintiff be awarded actual damages.

5.     That the Defendant/Counterclaim Plaintiff be awarded costs, attorneys' fees and expenses.

6.     That the Defendant/Counterclaim Plaintiff be awarded pre-judgment and post-judgment interest.

7.     That the Defendant/Counterclaim Plaintiff be awarded such other relief as the Court shall deem just and proper.

Dated: May 12, 2020                          Respectfully submitted,
                                             By:/s/Robert Rotman_____
                                             Robert Rotman
                                             305 West 24th Street Apt. 17R
                                             New York, NY 10010

(646) 606-4867
rrotmanlaw@gmail.com

*Attorney for Defendant/Counterclaim Plaintiff*

**<u>JURY TRIAL DEMANDED</u>**

<u>VERIFICATION</u>

I hereby declare under penalty of perjury that I have read the foregoing Defendant's Answer and Counterclaims, and that the allegations contained therein are true to the best of my knowledge.

Dated: May 12, 2020                    <u>/s/Andrew Delaney          </u>
      New York, NY                    Andrew Delaney, Esq.