# EXHIBIT E

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

# AGREEMENT

This Agreement is made as of this 25th day of September, 2019, by and between Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), with offices at 1875 Pennsylvania Avenue NW, Washington, D.C. 20006; Toyota Motor Corporation ("Client"), with offices at 1 Toyota-Cho, Toyota City, Aichi Prefecture 471-8571, Japan; and HC2, Inc. d/b/a Hire Counsel ("Vendor"), with offices at 360 Lexington Avenue, Suite 1100, New York, NY 10017.

WHEREAS, WilmerHale wishes to engage Vendor to perform the services described in Section 1 hereof, and Vendor's performance of those services will require WilmerHale to provide Vendor access to Confidential Information, as defined below; and

WHEREAS, Vendor wishes to perform the services and to receive the Confidential Information necessary for it to do so.

NOW, THEREFORE, in consideration of the promises hereinafter set forth, WilmerHale and Vendor acknowledge and agree as follows.

1. **Services.** In connection with WilmerHale's representation of Client in its ▓▓▓▓▓▓ ▓▓▓▓ matter ("Matter"), WilmerHale hereby retains Vendor to provide, and Vendor shall provide, the services described in Exhibit A hereto ("Services") at prices or rates set forth in that exhibit, which exhibit is incorporated in and hereby made a part of this Agreement.

Vendor is not engaged in the practice of law and has not been retained to provide legal advice or services. Vendor will not and cannot render legal advice or otherwise act as a law firm. Any services that constitute the practice of law are performed only by the legal practitioners licensed and authorized to practice law in the jurisdictions where such licenses are required, and WilmerHale shall ensure that such services are performed only under the supervision and control of duly authorized or licensed legal employees under WilmerHale direction or control. Where a jurisdiction may require (for example, the District of Columbia), WilmerHale shall ensure that the selection and supervision of Vendor-assigned employees shall be administered solely by a licensed attorney within that jurisdiction with an attorney-client relationship on the matter. Vendor will assist WilmerHale with conflicts checks by questioning Vendor-assigned employees on a list of conflicts that are provided by WilmerHale and/or by facilitating WilmerHale forms that relate to conflicts, background checks, and/or temporary employment. WilmerHale will complete any further steps necessary to clear Vendor-assigned employees for conflicts related to matters they work on. WilmerHale shall not request or allow any Vendor-assigned employees to sign or certify any paper, statement or return, pertaining to underwriting, tax, SEC, or other related matters.

Vendor shall not supervise or otherwise influence the work product of any of its assigned employees. Accordingly, WilmerHale and Client do not waive any right of recovery against Vendor for any claims, losses, costs, expenses, or damages (including any claims of negligence or malpractice) incurred by Client arising out of the work product or advice provided by Vendor-assigned employees assigned to WilmerHale and Client. WilmerHale and Client do not waive any right of recovery against Vendor for any claims, losses, costs, expenses, or damages incurred

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

by Client due to Vendor's own gross negligence, willful misconduct in its rendering of legal recruiting services, or breach of Section 3.

2.      **Subcontracting.** Vendor shall not subcontract any of the Services or components thereof without the prior, express, written consent of WilmerHale.

3.      **Confidentiality, Privilege, and Security**

3.1     The Services are confidential and privileged and may require WilmerHale and Client to provide or otherwise make accessible to Vendor proprietary, confidential, trade secret, privileged, and other information, including without limitation documents, terminology, annotations, comments, and document coding, of Client and of WilmerHale. All such Services and information, and any other information reviewed, accessed, obtained, created, or developed by Vendor in the course of this engagement, and any analyses, summaries, or derivations thereof, shall be deemed confidential ("Confidential Information").

3.2     During and after this engagement, Vendor shall (a) keep Confidential Information in strict confidence, (b) exercise an appropriate degree of care to avoid the unauthorized use or disclosure of Confidential Information, (c) not, directly or indirectly, disclose any Confidential Information to anyone outside of WilmerHale or Client, unless such disclosure is expressly authorized in writing by WilmerHale or Client, (d) not make use of any Confidential Information for its own purposes or the benefit of any person or entity other than WilmerHale or Client, and (e) take no action, or fail to take any action, with respect to Confidential Information that is inconsistent with its confidential and proprietary nature.

3.3     Vendor agrees to implement and maintain an effective information security program to protect the Confidential Information, which program shall include appropriate administrative, technical, and physical safeguards to (a) ensure the security and confidentiality of Confidential Information, (b) protect against any anticipated threats or hazards to the security or integrity of such Confidential Information, and (c) protect against unauthorized access to or use of Confidential Information. Vendor will, on request by WilmerHale, provide WilmerHale a written description, reasonably satisfactory to WilmerHale, of the information security program Vendor has in place in compliance with this Section 3.3 and will notify WilmerHale of any material modification of such program during this engagement.

3.4     Confidential Information may be disclosed only as follows:

(a) *Vendor's Employees.* Vendor may disclose Confidential Information to its employees provided that such employees have a need to know the Confidential Information in connection with the performance of the Services. Vendor shall instruct all such employees as to their obligations under this Agreement. Vendor shall be responsible for all employees' compliance with the terms and conditions of this Agreement.

(b) *Disclosures Required by Law.* Vendor may disclose Confidential Information to the extent required by law. However, if any person or entity to whom disclosure has not been authorized in writing by WilmerHale requests, subpoenas, or otherwise seeks to obtain any

ActiveUS 175944296v.1

CONFIDENTIAL                                                                          HC2-00000279

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

Confidential Information within Vendor's possession, custody, or control, Vendor shall immediately notify WilmerHale and Client before taking any action with respect to such request or subpoena and cooperate fully with the efforts of WilmerHale or Client with respect to such disclosure.

3.5   **Attorney-Client and Other Privileges.**  To the extent that any Confidential Information may include materials subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege ("Privileges"), the disclosure of such materials to Vendor pursuant to this Agreement is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under any Privileges. Information, documents, or materials generated or prepared by or on behalf of Vendor, WilmerHale, or Client in connection with the Services are prepared or generated to assist WilmerHale in the rendering of legal advice and are protected by Privileges. All documents and other materials generated or prepared by Vendor in connection with the Services shall be created only at WilmerHale's direction, shall be marked "Privileged and Confidential – Attorney Work Product," and shall become and remain the property of WilmerHale.

3.6   In the event Vendor is or should reasonably believe itself to be (or to have been) in breach of this Section 3, Vendor shall immediately notify WilmerHale and take steps to remedy such breach, including but not limited to protecting WilmerHale and Client against the consequences of any disclosure or use of the Confidential Information. Vendor recognizes that the unauthorized disclosure or use of the Confidential Information would cause irreparable harm to WilmerHale and Client and that monetary damages would be inadequate to compensate WilmerHale or Client for such breach. For these reasons, Vendor agrees that in any court of competent jurisdiction, WilmerHale or Client is entitled to injunctive relief, including a preliminary injunction based upon an ex parte application to protect and recover the Confidential Information. Such relief shall be cumulative and in addition to whatever other remedies WilmerHale or Client may have.

3.7   **Retroactive Application.**  The undertakings set forth in this Section 3 shall apply retroactively to any prior communications between the Parties and/or between Vendor and Client regarding WilmerHale's and/or Client's consideration of Vendor for this engagement to render Services.

4.   **Disclosure of Potential Conflicts.**

4.1   Disclosure of Potential Conflicts Because of Pre-Existing Customers of Vendor. Vendor will (a) identify any of its active engagements in which the customer Vendor is servicing has been deemed adverse or potentially adverse to Client by WilmerHale in accordance with Section 4.3 below (b) notify WilmerHale of all such engagements without breaching any confidentiality obligations Vendor has to any such customers. Vendor shall promptly notify WilmerHale if, notwithstanding an earlier review, Vendor hereafter learns that any of its existing customers that are located at the same Vendor facility as WilmerHale have been identified by WilmerHale as adverse to Client.

4.2   Disclosure of Potential Conflicts Because of Potential New Customers of Vendor. Prior to providing services to a potential new customer at a facility in which it is hosting a WilmerHale

ActiveUS 175944296v.1

CONFIDENTIAL                                                                                                          HC2-00000280

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

project after the commencement of this engagement, Vendor will determine whether such potential new customer has been identified by WilmerHale as adverse or potentially adverse to Client, and (b) notify WilmerHale of the potential conflict. In the event that a conflict or potential conflict exists, Vendor will make reasonable efforts to assist WilmerHale and the applicable customer to resolve any issues. Should the parties be unable to come to a resolution, Vendor will provide WilmerHale the opportunity to secure the review space at issue at Vendor's standard rate for the applicable location.

4.3     **Adversity (defined).** Any company that Vendor is or may be hosting in the same facility in which it is hosting a WilmerHale project that WilmerHale identifies to Vendor as having an actual or potential conflict with the Client.

5.     **Charges and Billing.** Client shall be responsible for Vendor's fees and expenses. Promptly after completion of the Services, Vendor will submit a statement of its charges to Lillian Potter, 1875 Pennsylvania Avenue NW, Washington, D.C. 20006 (lillian.potter@wilmerhale.com) and to Ryo Ito, Toyota Motor Corporation, 1 Toyota-Cho, Toyota City, Aichi Prefecture 471-8571, Japan (█████@mail.toyota.co.jp). Vendor's statement shall contain (a) a description of the work performed, with daily timesheet details for each assigned employee (b) the date performed, and (c) the number of any other unit on which the charges are based. Client will remit payment of Vendor's undisputed charges to Vendor within sixty (60) days after receipt of Vendor's statement. WilmerHale shall, on behalf of Client, make best efforts to provide Vendor, as soon as practicable after receipt of Vendor's statement, notice of the nature of any fees or expenses disputed by Client.

Vendor shall directly pay, on a weekly or bi-weekly basis, any assigned employee engaged by WilmerHale and/or Client. Vendor will provide time sheets to WilmerHale and/or Client setting forth the number of hours worked by such assigned employees, which an authorized representative of WilmerHale shall promptly verify, authorize and return to Vendor. Approved time sheets authorize Vendor to render full payment of assigned employees' hours for which Vendor will be paid by WilmerHale according to this Agreement and Exhibit A.

Payment shall be made by Client to Vendor via wire transfer in accordance with the wire transfer instructions set forth below:

| | |
|---|---|
| Account#: | ████4423 |
| Beneficiary Name: | Israel Discount Bank F/B/O HCMC Legal Inc. |
| ABA Number: | 026009768 |
| Address: | 511 Fifth Avenue |
| City, State: | New York, NY |
| Zip Code: | 10017 |
| Swift #: | DBYUS33 |

6.     **Document and Data Disposition.** Unless WilmerHale elects to have Vendor continue to store the Confidential Information after performance of any requested Service, Vendor shall, as directed by WilmerHale after consultation with Vendor, either return all Confidential Information or dispose of it in a confidential manner acceptable to WilmerHale.

ActiveUS 175944296v.1

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

7.  **Term and Termination.** This Agreement shall commence upon the date last executed and shall continue until terminated for any reason upon notice by a party.

8.  **Disputes**

8.1  Any controversy or claim arising out of or relating to this Agreement shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration before a single arbitrator of the American Arbitration Association in Washington, D.C., pursuant to the Association's commercial arbitration rules. The arbitrator is not authorized to award punitive or multiple damages against any party. Notwithstanding anything contained in this Section 8 to the contrary, each party shall have the right to seek interim relief, including but not limited to temporary restraining orders or preliminary injunctions, from any court of competent jurisdiction before the arbitral tribunal is constituted or thereafter upon the order of the arbitral tribunal.

8.2  WilmerHale, Client, and Vendor each knowingly, voluntarily, and intentionally waives its right to a trial by jury to the extent permitted by law in any action or other legal proceeding arising out of or relating to this Agreement and the transactions it contemplates. This waiver applies to any action or other legal proceeding, whether sounding in contract, tort, or otherwise. WilmerHale, and Vendor each acknowledges that it has received the advice of competent counsel.

9.  **Applicable Law.** This Agreement will be interpreted according to the laws of the District of Columbia, excluding its conflict of law provisions.

10. **Notice.** Any notice required or permitted to be sent under this Agreement shall be delivered by hand, or sent by a commercial overnight carrier with evidence of delivery, as follows:

|  |  |
|---|---|
| To WilmerHale: | Lillian Potter<br>WilmerHale LLP<br>1875 Pennsylvania Avenue NW<br>Washington, D.C. 20006 |
| With a copy to: | Nathan Croumer<br>WilmerHale<br>3139 Research Boulevard<br>Dayton, OH 45420 |
| To Client: | Ryo Ito<br>Toyota Motor Corporation<br>1 Toyota-Cho<br>Toyota City, Aichi Prefecture 471-8571<br>Japan |

ActiveUS 175944296v.1

CONFIDENTIAL

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

      To Vendor:      Joan M. Davison, CEO
                           HC2, Inc. d/b/a Hire Counsel
                           360 Lexington Avenue, Suite 1100
                           New York, NY 10017

11. **Relationship of Parties.** The relationship of the parties hereunder is that of independent contractors, and nothing in this Agreement shall be construed as authorizing any party to act as an agent of another. No party shall have any right to enter into any contracts or commitments in the name of, or on behalf of, any other party, or to bind any other party in any respect whatsoever. Vendor agrees that all persons furnished by Vendor shall be considered Vendor's employees or agents and that Vendor shall be responsible for payment of all unemployment, social security, and other payroll taxes, including contributions from them when required by law.

12. **Assignment.** No party shall assign or transfer this Agreement, or any interest herein, without the prior written consent of each other party, provided that WilmerHale may assign this Agreement to any successor counsel engaged by Client to represent it in the Matter.

13. **Entire Agreement.** This Agreement, including Exhibit A, constitutes the entire understanding of the parties with respect to the subject matter herein and supersedes all prior agreements (oral and written), negotiations, and discussions. Any modifications to this Agreement must be in writing and signed by each party.

14. **Severability.** In the event that any one or more provisions of this Agreement shall be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. The remedies contained herein are cumulative and in addition to any other remedies at law or equity. A party's failure to enforce, or waiver of a breach of, any provision of this Agreement shall not constitute a waiver of any other breach or of such provision.

15. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed by their authorized representatives to be effective *as of the last date signed below by a party.*

ActiveUS 175944296v.1

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

Wilmer Cutler Pickering Hale and Dorr LLP

By: *Ron Machen /st*

Name: Ron Machen

Title: Partner

Date: 9/26/19

Toyota Motor Corporation

By: *for Ryo Ito*

Name: Ryo Ito

Title: General Manager of Legal Div.

Date: 9/27/2019

HC2, Inc. d/b/a Hire Counsel

By: *Joan M. Davison* (DocuSigned by: 679DCD5A0E544A9...)

Name: Joan M. Davison

Title: CEO

Date: 9/25/2019 | 10:49 EDT

ActiveUS 175944296v.1

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

## EXHIBIT A

## SERVICE ORDER

WilmerHale, Client, and Vendor agree as follows:

1. **SERVICES**

   Name of project:      Toyota Motor Corporation / ▮▮▮▮▮▮▮▮ (the "Project")

   Client Matter Number:      2213071-00135

   Supervising Attorney: Lillian Potter

   Project Start Date:      Targeted for September 27, 2019

   Vendor will provide the following Contract Professionals for the duration of the Project:

   Number of Attorney(s): Such as sufficient to complete the Project in the required timeframe, namely a minimum estimate of 10 Japanese speaking and 4 Thai speaking attorneys. Attorneys shall meet the following standard contract personnel requirements:

   1. Passed a criminal background check within the last 365 days
   2. Passed a global sanctions check within the last 365 days
   3. Cleared conflicts
   4. Maintain active and in good standing membership with the Bar in the jurisdiction in which the review will take place

   Number of Project Manager(s): 2, one fluent in Japanese and one in Thai.

   WilmerHale shall have the right to interview and accept or reject, in its sole discretion, any Contract Professional. If WilmerHale agrees to retain such Contract Professional, Vendor shall deliver written confirmation setting forth terms of such Contract Professional's engagement. WilmerHale has the right to remove any Contract Professional at any time with or without cause, except as prohibited by law. Vendor reserves the right to notify Contract Professionals after business hours, and any deviation from this policy must be approved by Vendor's Human Resources department. Upon notification to Vendor by Client that any Contract Professional is no longer required by Client for any reason whatsoever, Vendor shall notify Contract Professional in accordance with Vendor's standard practices.

   Vendor will maintain constant communication with WilmerHale and Contract Professionals to ensure the Project runs smoothly and all needs are met. Vendor will work with WilmerHale to establish all Project protocols and will disseminate and enforce expectations on behalf of WilmerHale.

ActiveUS 175944296v.1

CONFIDENTIAL                                                                                                                         HC2-00000285

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

**Project Space**

Vendor will provide office space for this Project at its New York and Los Angeles locations, with additional locations to be added with WilmerHale consent as needed. This is a modern, clean, and secure facility, accessible twenty-four (24) hours a day, seven (7) days a week. Facility staff is available on site at this location. Internet is accessed through a high-speed internet connection, and Vendor provides local IT support twenty four (24) hours per day, seven (7) days per week. One or more phones are available for WilmerHale supervisors.

2.  **FEES & EXPENSES**

On a weekly basis each Contract Professional providing Services for the Project shall complete and submit a time sheet provided by Vendor. WilmerHale shall review and sign off on time sheets by 2 p.m. on Monday for timesheets submitted for the prior week's work. Approval signatures verify the hours worked by Contract Professionals and authorize full payment of Contract Professionals' hours for which Vendor will be paid by Client according to the Agreement.

**Pricing Per Hour**

Attorneys: English speaking at $██████ / hour

Attorneys: Thai speaking at $██████ / hour

Attorneys: Japanese speaking at $██████ / hour

Project Manager: $██████ /hour

Overtime rate: 1.32, where applicable

Contract Professionals will be billed at the overtime rate stated above for all hours worked in excess of forty (40) hours per week, though they may not work in excess of forty (40) hours per week without written permission by WilmerHale.

Vendor shall not charge Client a fee for the first eight (8) hours of the work performed by a Contract Professional should WilmerHale request that the Contract Professional be removed from the Project within the first week of his/her assignment.

**Expenses**

Contract Professionals shall not submit expense reimbursements.

3.  **DURATION OF SERVICES**

Six to eight weeks

ActiveUS 175944296v.1

CONFIDENTIAL                                                                                           HC2-00000286

DocuSign Envelope ID: E668D547-2508-49F8-9710-1D39351D24BB

Duration of Services is not a guarantee of how long a project will take to complete.

4. **PROJECT MATERIALS**

Vendor shall make arrangements to return materials to WilmerHale upon completion of the engagement. All Project Materials are subject to the confidentiality provisions set forth in Section 3 of the Agreement to which this Exhibit A is attached.

ActiveUS 175944296v.1

CONFIDENTIAL                                                                                         HC2-00000287