CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- X
  HC2, INC.,                                             :
                                                         :
                      Plaintiff,                         :
                                                         :
                -v-                                      :   Civil Action No.: 1:20-cv-3178
                                                         :
  ANDREW DELANEY,                                        :
                                                         :
                      Defendant.                         :::
------------------------------------------------------- X
```

**DECLARATION OF MICHAEL R. HEYISON**

I, Michael R. Heyison, in support of Plaintiff's Motion for a Preliminary Injunction, declare as follows:

1. I am over the age of eighteen and a partner in the law firm of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"). If called to testify as a witness, I would testify consistently with the facts stated herein. The matters addressed herein are based on my personal knowledge or upon information I learned in the course of my duties either from documents I have been provided or from my partners and colleagues at WilmerHale.

2. I serve as WilmerHale's Co-General Counsel, and the Co-Chair of the firm's Ethics Committee and of the Committee on Privilege. As part of my General Counsel duties, I advise WilmerHale lawyers on legal ethics, attorney-client privilege and work-product, the handling of client confidential information, compliance with rules and orders issued by courts and agencies, and agreements with persons outside of the firm.

3. On March 17, 2020, Defendant Andrew Delaney sent an email to WilmerHale's Co-Managing Partners and 14 members of the firm's Management Committee, in which he complained about the suspension of a document review project on which he was employed by

DocuSign Envelope ID: FF6C4CED-E8AA-45A9-9FDE-E0CD69A363E0

WilmerHale's vendor, Plaintiff HC2, Inc. ("HC2"). Mr. Delaney's email was referred to me and since that time I have provided advice to the firm's management and its lawyers concerning this and other correspondence sent by Mr. Delaney; this lawsuit; and the April 15, 2020, Florida state court civil complaint Mr. Delaney filed (the "Florida Complaint"), which discloses privileged and confidential information belonging to WilmerHale and its client that Mr. Delaney obtained when he provided legal services through HC2.

4. I am familiar with the complaint in this action. As Mr. Delaney disclosed to Law360, WilmerHale is the "Law Firm Customer" referenced in the complaint. Although he has also disclosed the name of WilmerHale's client, I do not do so here and refer to that client as the "Corporate Client," which is how it was referred to in the complaint.

5. WilmerHale has been representing the Corporate Client in a confidential matter (the "Matter"). I am not personally involved in the Matter, but have become familiar with it in my role as WilmerHale's General Counsel as a result of Mr. Delaney's actions. I am informed that prior to Mr. Delaney's disclosures, information about the Matter, including the fact that it was being conducted, its subject matter, and its geographic focus had not been revealed outside of the Corporate Client, its attorneys, and certain vendors such as HC2 that provided support services under a duty of confidentiality.

6. In order to assess the Matter and provide the Corporate Client appropriate legal advice, WilmerHale had to collect, review, and assess a large volume of documents. The volume was sufficiently large to require retention of a vendor that could provide a team of temporary lawyers to assist in that review and a technology platform to facilitate the review.

DocuSign Envelope ID: FF6C4CED-E8AA-45A9-9FDE-E0CD69A363E0

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

7. The Matter concerned the Corporate Client's privileged and confidential information, and therefore maintaining confidentiality of the Matter and all documents, information, and analysis was of the utmost importance.

8. WilmerHale considered several legal staffing vendors, and ultimately retained HC2. One of the key factors in that decision was HC2's commitment to provide secure and confidential services. HC2 offered secure document review centers, dedicated review rooms with physical security measures, and security cameras that allowed remote monitoring.

9. HC2 also committed to rigorous evaluation of candidates for the project, including a proprietary credentialing process, criminal background checks, a credit check, education/graduation/degree verification, verification of bar admissions and standing, review of work experience, and a check of conflicts of interest.

10. HC2 also required its employees to enter into employment agreements including promises to protect client information. I have read Mr. Delaney's employment agreement with HC2, which contains his promise "not to divulge any confidential information, proprietary information or trade secrets obtained" during work for any HC2 client and "to keep, hold, and maintain in confidence all … Confidential Information" of HC2's clients. Mr. Delaney agreed that Confidential Information included "confidential and proprietary information, ideas, data and/or materials belonging to [HC2's] Clients [e.g., WilmerHale] or their clients [e.g., the Corporate Client], including but not limited to information concerning their respective existing and future businesses which are secret and not generally known and/or available to third parties."

11. In September 2019, WilmerHale initially selected three lawyers proposed by HC2 for the New York-based review, including Mr. Delaney. According to the information HC2 provided, which is attached as Exhibit 1, Mr. Delaney is a lawyer licensed to practice in New

DocuSign Envelope ID: FF6C4CED-E8AA-45A9-9FDE-E0CD69A363E0

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

York, who graduated from Harvard Law School and was formerly an associate at Skadden, Arps, Slate, Meagher & Flom LLP.

12. Before the HC2 lawyers began work on the Matter, each signed an additional non-disclosure agreement with WilmerHale (the "NDA").  Ex. 2.  Under his NDA, Mr. Delaney "agreed that all information and know-how, whether or not in writing, of a private, secret or confidential nature concerning the Firm's business or financial affairs … is and shall be the exclusive property of [WilmerHale]" and that he would "not to disclose any [such information] other than to employees or partners of [WilmerHale] or use the same for any purposes (other than in the performance of [his] duties or services for [WilmerHale])."  Mr. Delaney also agreed that his "obligations not to disclose or to use information and materials of the types set forth above . . . extend to such types of information, materials and tangible property of clients of [WilmerHale]."

13. Mr. Delaney also agreed in his NDA that he is obligated to comply with the rules of professional conduct for the jurisdictions where he is admitted to practice.  Mr. Delaney is admitted in New York, he provided legal services for WilmerHale and its Corporate Client there, and his conduct is governed by the New York Rules of Professional Conduct.  New York Rule 1.6(a), in relevant part, prohibits a lawyer from knowingly revealing confidential information, or using it to the disadvantage of a client or for the advantage of a third person without the client's informed consent.  The Rule defines confidential information as "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential."  New York Rule 1.9(c) defines the scope of duties to former clients and prohibits "use [of] confidential information of the

former client protected by Rule 1.6 to the disadvantage of the former client" or "reveal[ing] confidential information of the former client protected by Rule 1.6."

14.  On September 30, 2019, after the HC2 lawyers had executed the necessary agreements, WilmerHale provided training to Mr. Delaney and others about the Matter. As part of that training, WilmerHale provided Mr. Delaney and his fellow HC2 team members a 22-page memorandum and document review protocol (the "Protocol"). Each page was marked "Privileged and Confidential: Attorney Client Communication [and] Attorney Work Product." The WilmerHale lawyers leading the training then discussed the Protocol document in a meeting with the HC2 lawyers.

15.  WilmerHale instructed the HC2 lawyers that the review is confidential and protected by the attorney-client privilege and the attorney work product doctrine; that reviewers are ethically obligated to keep all information, documents, and communications, including the Matter's subject matter, completely confidential; that their confidentiality obligations continue after the Matter has ended; and that the HC2 lawyers should be especially careful not to discuss the Matter with anyone outside of the group of HC2 and WilmerHale colleagues with whom they are working directly on the Matter.

16.  Through the Protocol and training, WilmerHale also gave the HC2 lawyers a detailed analysis of the relevant laws, the facts as WilmerHale understood them as of that point, the questions and legal issues that gave rise to the Matter, the legal and factual issues for review, and the types of information WilmerHale considered relevant and potentially noteworthy.

17.  WilmerHale also instructed the HC2 lawyers that, in addition to reviewing documents for relevance to a range of issues, they should use the comment field to identify the particular portions of long documents that they deemed to be relevant and if not obvious indicate

why the document is relevant. For documents identified by the reviewer as potentially noteworthy, the HC2 lawyers were asked to include an explanation for their designations.

18. Among the legal services Mr. Delaney and his other lawyer colleagues provided were analyzing documents, including documents that were privileged communications of the Corporate Client, to determine whether and how the documents related to a variety of legal and factual issues, identifying additional issues that may be appropriate for further inquiry, conducting focused reviews of documents for certain issues, developing strategies to research emerging issues identified from the available documents, identifying documents that may have particular significance to the Matter, and drawing connections between documents to assist WilmerHale in gaining a better understanding of the underlying issues in the Matter.

19. During the course of the review, WilmerHale lawyers and personnel were available for guidance, advice, and questions, and provided feedback, made suggestions, and ensured that the reviewers were alerted to new information that was relevant to their work. Over time, WilmerHale refined the issues that were under review and adjusted the review protocol as appropriate.

20. Mr. Delaney worked on the document review over a period of approximately five months. During that time, I am informed he reviewed thousands of documents, highlighted a number of documents he believed were of significance, and sent emails explaining his views as to the relevance of certain documents.

21. Some of the documents Mr. Delaney reviewed were written in a foreign language in which he is fluent. While his foreign language proficiency was helpful, he, like the other HC2 lawyers, was hired to provide legal services as outlined in the various agreements. Translation

DocuSign Envelope ID: FF6C4CED-E8AA-45A9-9FDE-E0CD69A363E0

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

only services are generally available at lower cost, and WilmerHale engaged a separate vendor to provide translation services.

22. Over the course of the document review, Mr. Delaney exercised his legal judgment, identifying whether documents were relevant to certain issues and what he considered significant to the Matter.

23. In early to mid-March 2020, COVID-19 was spreading across the United States and was of particular concern in New York City, where Mr. Delaney and others were working in a HC2 document review center. In mid-March, HC2 and WilmerHale discussed how COVID-19 might affect the review and whether the HC2 lawyers could work remotely from home. After consideration, including concerns about security for confidential information, it was decided not to move to remote review. On March 17, 2020, WilmerHale asked HC2 to suspend the review in New York and HC2 notified all of the New York reviewers that the review was suspended immediately.

24. Mr. Delaney did not accept that decision. Within hours of being advised that the review had been suspended and over the next several weeks, in a series of emails and letters sent to WilmerHale's management and to executives at the Corporate Client, Mr. Delaney claimed to have been wrongfully terminated in retaliation for raising concerns over the work environment and COVID-19. Later, Mr. Delaney also complained about what he claimed was the unauthorized disclosure of his name and involvement in the document review project to others during the fall of 2019, and he threatened litigation if his demands for payment were not met.

25. WilmerHale and the Corporate Client considered Mr. Delaney's communications on and after March 17 troubling. Among other things, he directed them to senior people within WilmerHale and the Corporate Client who had nothing to do with, and did not even know about,

the HC2 review. For example, Mr. Delaney sent several emails to WilmerHale's Co-Managing Partners and members of the firm's Management Committee. Samples of these emails are attached as Exhibits 3-5. He also sent emails to an executive of the Corporate Client.

26. In response to these communications, on March 27, 2020, I emailed Mr. Delaney in my capacity as WilmerHale's General Counsel. Exhibit 6. Among other things, I told Mr. Delaney that I would be representing WilmerHale and that he should communicate with me and not engage in further direct communications with other WilmerHale personnel. I also told him that one of my partners was representing the Corporate Client and that he should direct all future communications regarding the Corporate Client to him. I also reminded Mr. Delaney of his "legal and ethical obligations as an attorney [not to disclose] privileged and confidential information belonging to [the Corporate Client] and/or its counsel WilmerHale."

27. Shortly after receiving my email, Mr. Delaney ignored it by emailing WilmerHale's Co-Managing Partners as well as a senior executive of the Corporate Client—a represented party. Mr. Delaney's email to the Co-Managing Partners is attached as Exhibit 7.

28. On or about April 13, 2020, Mr. Delaney significantly escalated his threats by causing his then-lawyer to send a communication addressed to the Corporate Client's senior officials that previewed, as it turned out, the allegations he makes in his Florida Complaint. In that communication, Mr. Delaney's counsel discusses the Corporate Client's privileged and confidential information that Mr. Delaney learned during the review, and says he will commence legal action without further notice unless provided with a settlement offer within seven days.

29. On April 14, 2020, one of my partners responded to one of Mr. Delaney's counsel's communications to the Corporate Client. My partner stated, among other things, that WilmerHale had concerns about Mr. Delaney's misuse and disclosure of confidential

DocuSign Envelope ID: FF6C4CED-E8AA-45A9-9FDE-E0CD69A363E0

information obtained while he was acting as a lawyer in connection with a privileged review for the Corporate Client, and that, in light of Mr. Delaney's ethical obligations as a member of the bar and his contractual non-disclosure obligations, he is not permitted to disclose information obtained during the course of the review to anyone. He proposed a discussion and asked to schedule a telephone call for later that day. A copy of that email, redacted to remove certain identifying information, is attached as Exhibit 8.

30. Mr. Delaney's lawyer did not respond to the invitation for a call, and on April 15, 2020, a day after being expressly reminded that Mr. Delaney was under contractual and ethical obligations not to disclose information obtained during the course of the review to anyone, Mr. Delaney's counsel filed the Florida Complaint on Mr. Delaney's behalf against the Corporate Client, an affiliate, and a senior executive of the Corporate Client. The plaintiff in the Florida Complaint is John Doe, but the press has reported that Mr. Delaney is the plaintiff.

31. Mr. Delaney's lawyer filed the Florida Complaint on the public docket without any request that the court seal it from public view. The complaint was accessible through the court's website.

32. The Corporate Client learned of the Florida Complaint late in the day on Friday, April 17, after one of its subsidiaries received a copy through CT Corporation, and I received a copy that day. On Monday, April 20, the Corporate Client filed an emergency motion to seal the complaint. On Tuesday, April 21, the clerk removed the complaint from the public docket on account of the emergency motion. The Florida court has not yet ruled on the motion.

33. I have read the Florida Complaint and can attest that it discloses the Corporate Client's privileged and confidential information. I can also attest, without disclosing any privileged information, that Mr. Delaney disclosed facts that he learned from WilmerHale or

DocuSign Envelope ID: FF6C4CED-E8AA-45A9-9EDE-F0CD69A363E0

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

from reviewing the Corporate Client's documents during the review as well as inferences he drew from that information.

34. In some parts of the Florida Complaint, Mr. Delaney cites publicly available information as background. The cited public sources do not reveal the Corporate Client's privileged and confidential information that WilmerHale provided to Mr. Delaney during the review and that he reveals elsewhere in the Florida Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Michael R. Heyison*
_____
Michael R. Heyison

Executed on May 15, 2020