**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X

HC2, INC.,                                            :

                                                     :       Civil Action No.: 1:20-cv-3178 (LJL)

            Plaintiff-Counter Defendant,             :
                                                     :
                                                     :       **Oral Argument Requested**
                                                     :

            -v-                                       :
                                                     :

ANDREW DELANEY,                                      :
                                                     :
                                                     :

            Defendant-Counter Claimant.              :
                                                     :

------------------------------------------------------- X


# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF-COUNTER DEFENDANT HC2, INC.'S MOTION TO DISMISS
## DEFENDANT-COUNTER CLAIMANT'S COUNTERCLAIMS


KASOWITZ BENSON TORRES LLP

1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiff-Counter Defendant HC2, Inc.*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

FACTS ALLEGED IN THE COUNTERCLAIM .................................................. 3

ARGUMENT ...................................................................................................... 5

I.    STANDARD OF REVIEW ......................................................................... 5

II.   COUNTS I AND II FAIL TO STATE CLAIMS SOUNDING IN FRAUD ........................ 6

      A.    Counterclaimant's fraud claims fail to meet the heightened pleading
           standard required by Rule 9(b) of the Federal Rules of Civil Procedure .............. 6

      B.    Countrclaimant fails to allege any actionable misrepresentations. ........................ 8

      C.    Counterclaimant fails to adequately allege reasonable reliance. ........................... 9

      D.    Counterclaimant fails to plead a factual basis which gives rise to a strong
           inference of fraudulent intent. ............................................................... 10

III.  COUNT III FAILS TO STATE A CLAIM FOR "WHISTLEBLOWER
     RETALIATION" UNDER NEW YORK LABOR LAW SECTIONS 740
     AND 215. ...................................................................................... 10

      A.    Counterclaimant fails to state a plausible claim under Section 740. ................... 12

      B.    Counterclaimant fails to state a plausible claim under Section 215. ................... 14

IV.   COUNT IV FAILS TO STATE A CLAIM FOR BREACH OF A
     CONFIDENTIAL RELATIONSHIP ............................................................. 16

V.    COUNT V FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF
     EMOTIONAL DISTRESS ....................................................................... 18

VI.   COUNT VI FAILS TO STATE A CLAIM FOR INVASION OF PRIVACY .............. 20

VII.  COUNT VII FAILS TO STATE A CLAIM FOR UNPAID SICK LEAVE
     UNDER NEW YORK LABOR LAW § 196-b .............................................. 21

VIII. COUNTS VIII AND IX FAIL TO STATE A CLAIM FOR DEFAMATION *PER
     SE* AND ABUSE OF PROCESS .............................................................. 21

IX.   COUNTERCLAIMANT FAILS TO STATE A CLAIM FOR SANCTIONS ............... 23

CONCLUSION ................................................................................................ 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaberg v. Francesca's Collections, Inc.*,
No. 17-CV-115 (AJN), 2018 WL 1583037 (S.D.N.Y. Mar. 27, 2018) ...................................5

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
39 F. Supp. 3d 516 (S.D.N.Y. 2014) ...........................................................................7

*Arrington v. New York Times Co.*,
55 N.Y.2d 433 (1982), *cert. denied*, 459 U.S. 1146 (1983) ...................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....................................................................................5, 19, 22

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*,
679 F. Supp. 2d 474 (S.D.N.Y. 2010) ...........................................................................7

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
No. 03-CV-1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ...........................8

*BanxCorp v. Costco Wholesale Corp.*,
723 F. Supp. 2d 596 (S.D.N.Y. 2010) ...........................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................5, 22

*Bilinski v. Keith Haring Found., Inc.*,
96 F. Supp. 3d 35 (S.D.N.Y. 2015) .............................................................................22

*Brady v. John Goldman, Esq.*,
No. 16-CV-2287 (GBD)(SN), 2016 WL 8201788 (S.D.N.Y. Dec. 5, 2016)
*report and recommendation adopted sub nom. Brady v. Goldman*, No. 16-CV-
2287 (GBD)(SN), 2017 WL 111749 (S.D.N.Y. Jan. 11, 2017), *aff'd*, 714 F.
App'x 63 (2d Cir. 2018).............................................................................................19

*Comolli v. Huntington Learning Centers, Inc.*,
117 F. Supp. 3d 343 (S.D.N.Y. 2015).........................................................................20

*Copantitla v. Fiskardo Estiatorio Inc.*,
788 F. Supp. 2d 253 (S.D.N.Y. 2011).........................................................................14

*Cortes v. 21st Century Fox America, Inc.*,
751 F. App'x. 69 (2d Cir. 2018) ...................................................................................7

*Crigger v. Fahenstock and Co. Inc.*,
 443 F.3d 230 (2d Cir. 2006)..............................................................................6

*Dymm v. Cahill*,
 730 F. Supp. 1245 (S.D.N.Y. 1990)....................................................................8

*Freihofer v. Hearst Corp.*,
 65 N.Y.2d 135 (1985) ........................................................................................20

*Groden v. Random House, Inc.*,
 61 F.3d 1045 (2d Cir. 1995)..............................................................................20

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
 331 F. Supp. 3d 221 (S.D.N.Y. 2018), *reconsideration denied*,
 No. 15-CV-4244 (JGK), 2018 WL 5650004 (S.D.N.Y. Oct. 30, 2018)................23

*IKB Int'l S.A. v. Bank of Am. Corp.*,
 584 F. App'x 26 (2d Cir. 2014) ..........................................................................10

*Karla Otto, Inc. v. Rivoli Creation, S.A.S.*,
 No. 13-CV-0483 (JGK), 2014 WL 6910546 (S.D.N.Y. Dec. 5, 2014) ...................23

*Kassman v. KPMG LLP*,
 925 F. Supp. 2d 453 (S.D.N.Y. 2013)................................................................15

*Kelly v. Albarino*,
 485 F.3d 664 (2d Cir. 2007), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015) ........22

*Klass v. Frazer*,
 290 F. Supp. 2d 425 (S.D.N.Y. 2003)................................................................23

*Klein v. Brookhaven Health Care Facility*,
 No. CV-17-4841 (JS)(AKT), 2019 WL 1459258 (E.D.N.Y. Mar. 11, 2019) .........12

*Kramsky v. Chetrit Grp.*, LLC,
 No. 10-CV-2638 (HB), 2010 WL 4628299 (S.D.N.Y. Nov. 16, 2010)..................15

*United States ex rel. Ladas v. Exelis, Inc.*,
 824 F.3d 16 (2d Cir. 2016)................................................................................7

*Lader v. Delgado*,
 941 F. Supp. 2d 267 (E.D.N.Y. 2013) .................................................................22

*Lopez v. City of New York*,
 901 F. Supp. 684 (S.D.N.Y. 1995) .....................................................................23

*Lynch v. Johnson*,
 No. 652761/2015, 2018 WL 6181300 (N.Y. Sup. Ct. Nov. 27, 2018)...................18

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
  244 F.R.D. 204 (S.D.N.Y. 2007) ............................................................7

*McGhan v. Ebersol*,
  608 F. Supp. 277 (S.D.N.Y. 1985) ........................................................17

*Ningbo Prod. Imp. & Exp. Co. v. Eliau*,
  No. 11-CV-650 (PKC), 2011 WL 5142756 (S.D.N.Y. Oct. 31, 2011) ....................................8

*Noelle Ibrahim. v. Lucas Pena, Deirdre Fuchs, & the Trustees of Columbia
  University in the City of New York*,
  No. 16-CV-7774 (VEC), 2017 WL 3601246 (S.D.N.Y. Aug. 21, 2017) ................................5

*O'Bradovich v. Village of Tuckahoe*,
  325 F. Supp. 2d 413 (S.D.N.Y. 2004) ....................................................23

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*,
  277 B.R. 20 (S.D.N.Y. 2002) ..............................................................7

*Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*,
  51 F. Supp. 3d 319 (S.D.N.Y. 2014) ......................................................22

*PetEdge, Inc. v. Garg*,
  234 F. Supp. 3d 477 (S.D.N.Y. 2017) ..................................................9, 10

*Poindexter v. EMI Record Grp. Inc.*,
  No. 11-CV-559 (LTS)(JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ..................5, 14

*Rapoport v. Asia Elecs. Holding Co.*,
  88 F. Supp. 2d 179 (S.D.N.Y. 2000) ....................................................6, 14

*Reyes v. Energy Transp. Corp.*,
  No. 96-CV-3321 (JSM), 1997 WL 256923 (S.D.N.Y. May 16, 1997) ....................12, 13

*Robledo v. No. 9 Parfume Leasehold*,
  No. 12-CV-3579 (ALC)(DF), 2013 WL 1718917 (S.D.N.Y. Apr. 9, 2013) ..................15

*Romain v. Seabrook*,
  No. 16-CV-8470 (JPO), 2017 WL 6453326 (S.D.N.Y. Dec. 15, 2017) ....................24

*Rosenfeld v. W.B. Saunders, a Div. of Harcourt Brace Jovanovich, Inc.*,
  728 F. Supp. 236 (S.D.N.Y. 1990), *aff'd sub nom. Rosenfeld v. Saunders*,
  923 F.2d 845 (2d Cir. 1990) ..............................................................21

*Ross v. Bolton*,
  904 F.2d 819 (2d Cir. 1990) ..............................................................7

*Sazerac Co. v. Falk,*
    861 F. Supp. 253 (S.D.N.Y. 1994) ...................................................................6, 14

*Schaer v. City of N.Y.,*
    No. 09-CV-7441 (CM)(MHD), 2011 WL 1239836 (S.D.N.Y. Mar. 25, 2011) ...................18

*Semper v. N.Y. Methodist Hosp.,*
    786 F. Supp. 2d 566 (E.D.N.Y. 2011) ...................................................................19

*Shaffer Smith, 2424, LLC v. Foster,*
    168 F. Supp. 3d 654 (S.D.N.Y 2016)........................................................................6

*Smith v. Weinstein,*
    578 F.Supp. 1297 (S.D.N.Y. 1984), *aff'd,* 738 F.2d 419 (2d Cir. 1984) ................17

*Starikov v. Ceva Freight, LLC,*
    153 A.D.3d 1377 (2d Dep't 2017) .......................................................................16

*Stewart v. World Wrestling Federation Entertainment, Inc.,*
    No. 03-CV-2468 (RLC), 2005 WL 66890 (S.D.N.Y. 2005) .....................................17

*Stuto v. Fleishman,*
    164 F.3d 820 (2d Cir. 1999)...............................................................................18

*In re Swift,*
    No. 94-10285-CEC, 2016 WL 355515 (Bankr. E.D.N.Y. Jan. 28, 2016) ...............20

*Thai v. Cayre Grp., Ltd.,*
    726 F. Supp. 2d 323 (S.D.N.Y. 2010) ................................................................19

*Tonra v. Kadmon Holdings, Inc.,*
    405 F. Supp. 3d 576 (S.D.N.Y. 2019) ................................................................12

*Vassiliades v. Garfinckel's,*
    492 A.2d 580 (D.C. 1985) .................................................................................17

*Warden v. E.R. Squibb & Sons, Inc.,*
    840 F. Supp. 203 (E.D.N.Y. 1993) ....................................................................15

*Yukos Capital S.A.R.L. v. Feldman,*
    No. 15-CV-4964 (LAK), 2016 WL 4940200 (S.D.N.Y. Sep. 14, 2016)................22

Plaintiff-Counter Claimant HC2, Inc. ("HC2") respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rules of Civil Procedure 12(b)(6), to dismiss Defendant-Counter Claimant Andrew Delaney's ("Counterclaimant") Counterclaims, dated May 13, 2020 (Dkt. No. 26) (the "Counterclaims" or "Countercl.") with prejudice.[1]

## PRELIMINARY STATEMENT

Counterclaimant, by his Counterclaims, sues HC2, his former employer, for fraud, retaliatory discharge, breach of confidential relationship, intentional infliction of emotional distress, invasion of privacy, failure to pay sick leave, defamation and abuse of process stemming from HC2's initiation of a lawsuit seeking to hold Counterclaimant responsible for his unauthorized publication of Privileged Information learned during his employment.

Counterclaimant's factual allegations are threadbare, conclusory and nonsensical. Counterclaimant claims to have been deliberately misled into working on a document review that, on the first day on the job, he discovered "involved persons and issues" which posed "a grave personal danger to him . . . ." Notwithstanding the alleged "grave personal danger," Counterclaimant admits that, after taking a hiatus from the review in early January 2020 to engage in other work, he voluntarily rejoined it in February 2020.

One month after rejoining the review, and having apparently abandoned his earlier concerns about grave danger, Counterclaimant decided to recast himself as a whistleblower. A status he conferred upon himself by virtue of the fact that, on March 17, 2020, on what turned out to be the last day of work, he had complained that three workers had come into the office that day with what he characterized as "flu-like symptoms." A status he also did not claim until after his demand to work on the review remotely or be paid to stay at home was rejected.

---

[1] Defined terms herein have the same meaning as in the Verified Complaint.

Generally, the Counterclaims fall into four groups: those sounding in fraud (Counts I and II); those related to his alleged retaliatory termination (Counts III and VII); those related to the alleged disclosure of his name and involvement on the review (Counts IV, V and VI); and those related to HC2's initiation of its lawsuit (Counts VIII and IX).  Whatever Counterclaimant's legal theories, his allegations are read in vain for actionable, well-pleaded facts that state legally cognizable claims.

Counterclaimant's fraud claims fail for multiple, independent reasons.  First, he does not even attempt to plead them with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Second, none of HC2's alleged misrepresentations (or omissions) are actionable.  Third, even if they were, Counterclaimant's allegations, including his voluntary decision to rejoin the review in February 2020, negate his supposed reliance on them.  Fourth, Counterclaimant has failed to allege facts that lead to any inference, much less the required strong inference, that HC2 acted with the requisite fraudulent intent.

Counterclaimant's whistleblower causes of action fare no better.  Counterclaimant claims to be a "whistleblower" based solely on his March 17, 2020 email to HC2 and the Law Firm Customer in which he complained that he had observed three people in the office that day whom he believed were displaying  "flu-like symptoms" and, based on that observation, demanded to work remotely or be paid to stay at home.  Counterclaimant's observations are hardly a complaint that HC2 engaged in a violation of the law and his bare assertion to the contrary is insufficient to sustain a claim under New York Labor Law ("NYLL") Section 740.  Counterclaimant simply fails to allege facts, as he must, sufficient to put HC2 on notice of the particular activities, policies or practices in which it allegedly engaged that constitute an actual violation of law, rule or regulation.

Additionally, the alleged harm that results from the complained of violation (whatever it is), must affect the public-at-large, not just the individual employee.

Count VII, alleging failure to pay accrued sick leave under NYLL Section 196-b, is equally unavailing and frivolous.  That law has not yet taken effect and, even if it had, the statute does not require an employer to pay accrued, but unused sick leave, when an employee resigns, retires or is terminated.

Counts IV (Breach of Confidential Relationship), V (Intentional Infliction of Emotional Distress) and VI (Invasion of Privacy) all depend on Counterclaimant's allegation that either HC2, its Law Firm Customer or the Corporate Client allegedly "disclosed information about him to the other side."  Each of these causes of action is defective as a matter of law and fact and each depends on Counterclaimant's gross mischaracterization of a personal email he allegedly received on or about November 28, 2019.  Counterclaimant's attempt to pass off his own inferences from the email as if they were facts is fatally undermined by the fact that, after taking a brief leave from the review, Counterclaimant returned and worked on it again for months without complaint.

Finally, Counts VIII (Defamation) and IX (Abuse of Process) are legally and factually baseless.  Both claims are predicated entirely upon statements in HC2's filings in this case, which are absolutely privileged and do not give rise to a claim for defamation.  Likewise, HC2's filing of the complaint does not give rise to a claim for abuse of process.

Accordingly, the Counterclaims should be dismissed with prejudice.

## **FACTS ALLEGED IN THE COUNTERCLAIM**

The following is a summary of the operative facts as alleged in the Counterclaim.

Counterclaimant alleges that, after starting work on a document review on September 30, 2019, he "learned that the review involved persons and issues which could pose a grave personal danger to him . . . ."  (Countercl. ¶ 6.)

3

Counterclaimant alleges that, on November 28, 2019, he "received a personal email from a party on the other side of the [document] review" in which that person "made it clear that they knew he was working on the review." (Countercl. ¶ 7.) Counterclaimant speculatively characterizes the email as containing an "implied 'set-up' or threat" and a "clear message" that "we know it is you." *Id.* Counterclaimant concluded from the receipt of this email that, "his name, involvement, personal information, and work were being disclosed to persons on the other side of the review." (Countercl. ¶ 8.) Counterclaimant further alleges that he provided a copy of the [November 28, 2019] email to the Law Firm Customer, which allegedly "double-crossed" him by reneging on a promise not to share it with the Corporate Client. (Countercl. ¶¶ 9-10.)

On January 3, 2020, Counterclaimant voluntarily left the document review for "other work." (Countercl. ¶ 10.) On February 17, 2020, despite allegedly knowing that the review involved issues and persons that put him in "grave personal danger," that the "other side" knew he was involved and had threatened him, that he had been "double-crossed" by the Law Firm Customer, and that HC2's offices were neither safe nor healthy, Counterclaimant voluntarily chose to rejoin the review. (Countercl. ¶¶ 6, 7, 8, 11 and 13.)

On March 17, 2020 -- a month after rejoining the document review review and having made no prior complaints about his working conditions -- Counterclaimant complained "that workers were coming into the office with flu-like symptoms" and asked to either "work remotely" or be paid to stay at home. (Countercl. ¶ 14.) Later that same day, the Law Firm Customer suspended the document review and did not authorize remote work for Counterclaimant or any of the other New York reviewers. (Compl. ¶ 21.)

**ARGUMENT**

**I.    STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . and courts are not bound to accept as true a legal conclusion couched as a factual allegation . . . ." *Noelle Ibrahim. v. Lucas Pena, Deirdre Fuchs, & the Trustees of Columbia University in the City of New York*, No. 16-CV-7774 (VEC), 2017 WL 3601246, at *1 (S.D.N.Y. Aug. 21, 2017) (quoting *Twombly*, 550 U.S. at 555).  Indeed, a complaint that merely offers labels and conclusions, a formulaic recitation of the elements, or "naked assertions devoid of further factual enhancement, will not survive a motion to dismiss."  *Iqbal*, 556 U.S. at 678 (at the motion to dismiss stage, the court need not credit "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

While plausibility is not tantamount to "a probability requirement," the complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Assessing plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679; *Aaberg v. Francesca's Collections, Inc.*, No. 17-CV-115 (AJN), 2018 WL 1583037, at *3 (S.D.N.Y. Mar. 27, 2018).  Ultimately, if the pleadings "have not nudged [plaintiff's] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When ruling on a motion to dismiss, "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Grp. Inc.*, No. 11-CV-

559 (LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012); *see also Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("[T]his Court has closely examined the substance of the two documents upon which Plaintiffs rely. . . . [and] finds that the documents contradict Plaintiffs' allegations and, therefore, this Court must grant Defendants' motion to dismiss.") (citing *Feick v. Fleener,* 653 F.2d 69, 75 (2d Cir. 1981) ("Since the documents upon which appellants based their claim show on their face absence of any grounds for relief, dismissal was proper.")).

## II.      COUNTS I AND II FAIL TO STATE CLAIMS SOUNDING IN FRAUD

Under New York law, to state a cause of action in fraud a plaintiff must allege facts sufficient to establish five elements: "(1) a material misrepresentation or omission of fact (2) made by a defendant with knowledge of its falsity and (3) an intent to defraud; (4) reasonable reliance on the part of the plaintiff, and (5) resulting damage to the plaintiff." *Crigger v. Fahenstock and Co. Inc.*, 443 F.3d 230 (2d Cir. 2006).  The failure to allege any element with the requisite specificity requires dismissal of the claim. *Shaffer Smith, 2424, LLC v. Foster*, 168 F. Supp. 3d 654, 658-59 (S.D.N.Y. 2016).

Here, Counts I and II alleging fraudulent inducement and fraudulent misrepresentation fail to state legally cognizable claims for numerous reasons.

### A.      Counterclaimant's fraud claims fail to meet the heightened pleading standard required by Rule 9(b) of the Federal Rules of Civil Procedure.

As a threshold matter, the fraud claims are subject to dismissal because they do not come close to meeting the pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) "requires that [i]n alleging fraud … a party must state with particularity the

circumstances constituting fraud . . . ." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (quoting Fed. R. Civ. P. 9(b)). "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Cortes v. 21st Century Fox America, Inc.*, 751 F. App'x. 69, 73 (2d Cir. 2018). The specificity requirement must be "rigorously enforce[d]." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).

Here, Counterclaimant fails to plead with specificity any of the "who, what, when, where, and how" of the alleged fraud. *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014). Furthermore, when alleging fraud based on concealment by omission, "the complaint must allege: (1) what the omissions were (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (internal quotation omitted).

Because the fraud allegations lack any specificity as to person, place or time, fail to say if they are misrepresentations or omissions, and are bereft of any of the required detail and context, they do not provide HC2 with sufficient notice of the particular alleged misconduct so that it can defend itself against these unsubstantiated claims. *See B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) (dismissing fraud claim as "too vague to satisfy Rule 9" because "it does not identify what specific representations were made or at what time, and it does not say why these representations turned out to be fraudulent, just that they turned out to be wrong"); *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20,

36 (S.D.N.Y. 2002) ("A defendant must be given sufficient notice of the time, place, and content of the alleged fraud because a defendant would be unable to prepare a defense properly without such notice."); *Dymm v. Cahill*, 730 F. Supp. 1245, 1260 (S.D.N.Y. 1990) (dismissing fraud claims comprised of "vague assertions [that] d[id] not give defendants sufficient notice of the claims against them.").

> ### B.   Counterclaimant fails to allege any actionable misrepresentations.

Even if Counterclaimant had satisfied the requirements of Rule 9(b), which he has not, none of the alleged misrepresentations are legally actionable. Counterclaimant alleges three misrepresentations, that: "the work involved a normal document review that would not pose risks or danger to him," "his identity, personal information, involvement, and work-product would not be disclosed to outside third parties in this case" or "to the other side," and "HC2 fraudulently misrepresented that its office would be a safe and 'healthful' working environment." Counterclaimant fails, however, to allege facts sufficient to demonstrate that, at the time these alleged misrepresentations were made (whenever that was), HC2 believed them to be false. *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03-CV-1537 (MBM), 2003 WL 23018888, at *13 (S.D.N.Y. Dec. 22, 2003) ("[Plaintiff] has failed to plead a cause of action for fraudulent inducement because it has not alleged that Citibank knew the statements to be false at the time the statements were made or that Citibank intended to defraud BESI."); *Ningbo Prod. Imp. & Exp. Co. v. Eliau*, No. 11-CV-650 (PKC), 2011 WL 5142756, at *7 (S.D.N.Y. Oct. 31, 2011) (stating that, in pleading a fraud claim, "plaintiff must identify misrepresentations of presently existing facts made to induce plaintiff to enter the [contract].")

Each of the alleged misrepresentations is also not actionable because Counterclaimant's work for HC2 was governed by an employment agreement. Under New York law, "as a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for

breach of contract." *See PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017) (internal citation omitted); *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 619 (S.D.N.Y. 2010) ("a fraud claim cannot be maintained based on misrepresentations as to acts or intentions that formed the content of the contract unless a separate legal duty existed.")  Even assuming *arguendo* that HC2 did somehow assign work that imposed "risks or danger to him," disclosed his "identity" or "personal information," or failed to provide "a safe working environment," those matters would arise out of the contractual employment relationship.  In his Counterclaims, Counterclaimant does not even attempt to allege a legal duty between him and HC2 separate and apart from the employer-employee contractual relationship.

### C.      Counterclaimant fails to adequately allege reasonable reliance.

Counterclaimant's fraud claims also fail because his allegations do not establish that he reasonably relied on the alleged misrepresentations to his detriment.  On the contrary, and as alleged, Counterclaimant admittedly discovered that working for HC2 allegedly posed a danger to him and that his identity and involvement had been disclosed long before he left the review for other work on January 3, 2020. (Countercl. ¶¶ 6-7.)  He further alleges that, "on January 21, 2020 as the coronavirus spread throughout the United States and especially New York, HC2 was not maintaining safe and healthy office conditions." (Countercl. ¶ 13.)   Thus, even after Counterclaimant had allegedly discovered the falsity of the misrepresentations he claims duped him into working for HC2 on the review in the first place, he nevertheless voluntarily decided to rejoin the review on February 17, 2020, thus negating his reliance on any of the alleged misrepresentations. (Countercl. ¶ 11.)

Counterclaimant has also failed to establish the falsity of HC2's alleged misrepresentation that his identity, personal information, involvement, and work-product would not be disclosed to third parties. (Countercl. ¶ 19.) While Counterclaimant alleges that a personal email he received

on November 28, 2019, establishes that his "identity, personal information, involvement, and work-product were disclosed," (Countercl. ¶¶ 7-8), he supplies no facts to support any assertion that HC2 was responsible for the purported disclosure.

> **D.** **Counterclaimant fails to plead a factual basis which gives rise to a strong inference of fraudulent intent.**

The Second Circuit has held that Rule 9(b) requires fraud complaints to allege facts that lead to a "strong inference" that the party accused of fraud has the requisite state of mind. *See, e.g., IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014) ("We have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.")  To allege facts giving rise to a strong inference of intent, a party asserting fraud must either allege facts showing "that defendant had both motive and opportunity to commit fraud," or allege fact that "constitute strong circumstantial evidence of conscious misbehavior or recklessness." *PetEdge*, 234 F. Supp. 3d at 491.

As pled, Counterclaimant does not even come close to alleging facts that support a "strong inference" of HC2's intent to commit fraud.

For all the foregoing reasons, Counterclaimant's fraud claims should be dismissed.

## III. COUNT III FAILS TO STATE A CLAIM FOR "WHISTLEBLOWER RETALIATION" UNDER NEW YORK LABOR LAW SECTIONS 740 AND 215.

Count III for "whistleblower retaliation" alleges that HC2 terminated Counterclaimant in violation of NYLL Sections 740 ("Section 740") and 215 ("Section 215").  Although these are independent statutory provisions, Counterclaimant does not plead violations in the alternative. Regardless, Count III fails to state a claim against HC2 for violating either provision.

Count III alleges that, "[s]tarting on January 21, 2020, as the coronavirus spread . . . [in] New York, HC2 was not maintaining safe and healthy office conditions," because "Counterclaimant sat two feet away from the other two reviewers in a small office with no

windows." (Countercl. ¶ 13.)[2]  Counterclaimant alleges that, on March 17, he emailed HC2 and the Law Firm Customer and "complained to them that workers were coming into the office with flu-like symptoms," and "asked if he could either work remotely or if they could stay at home with pay while still being on the document review." (Countercl. ¶ 14.)  Counterclaimant does not allege that his email alerted HC2 to any policy, practice or activity that he believed violated a law, rule or regulation.

Counterclaimant alleges that HC2 emailed him and the other contract attorneys working on the review at HC2's New York facility in response to his March 17 email and "terminated" them, by writing, "[w]e are requesting all team members to gather their belongings and depart the facility in an orderly fashion and exit our environment since the [document review] is effectively ending. . . .  We will continue to monitor the efforts of Congress in helping to off-set the impact of lost work."  (Countercl. ¶ 14) (quoting March 17 Email from Denise Asnes of HC2 to Counterclaimant, a true and correct copy of which is attached as Exhibit A to the Declaration of Ronald Rossi ("Rossi Decl.") filed concurrently).  Counterclaimant also alleges the legal conclusion that, "[t]here is no question that Counterclaimant was terminated in unlawful retaliation for his whistleblower notification about the office conditions and for criticizing HC2's HR department," (Countercl. ¶ 15); and that HC2 filed the complaint in this case in further retaliation for Counterclaimant's alleged "whistleblower" email.  (*Id*. ¶ 32.)

---

[2]   Counterclaimant's allegation that he stopped working on the review and sought other employment on January 3 and that he eventually returned, voluntarily, to the review on February 17, (Countercl. ¶¶ 10-11) contradicts this allegation and demonstrates that Counterclaimant was not present in HC2's office for a substantial portion of the period during which he claims HC2's office was unsafe.

**A.       Counterclaimant fails to state a plausible claim under Section 740.**

Section 740 provides, in relevant part, that "[a]n employer shall not take any retaliatory personnel action against an employee because such employee . . . *discloses, or threatens to disclose* to a supervisor or to a public body *an activity, policy or practice* of the employer *that is in violation of law, rule or regulation which* violation creates and *presents a substantial and specific danger to the public health or safety* . . . ." N.Y. Lab. L. § 740(2)(a) (emphasis added); *see also Reyes v. Energy Transp. Corp.*, No. 96-CV-3321 (JSM), 1997 WL 256923, *4 (S.D.N.Y. May 16, 1997). Count III fails to state a plausible claim for a violation of Section 740 because Counterclaimant has not identified a particular HC2 policy or procedure that violated (or which he believed violated) any specific law, rule or regulation or that HC2's alleged violation presented a substantial and specific danger to public health or safety.

"[T]he employee's complaint to the company must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct." *Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 586 (S.D.N.Y. 2019); *Klein v. Brookhaven Health Care Facility*, No. CV-17-4841 (JS) (AKT), 2019 WL 1459258, at *9 (E.D.N.Y. Mar. 11, 2019) ("[F]or pleading purposes, the complaint . . . must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct."), *report and recommendation adopted*, No. 17-CV-4841, 2019 WL 1458219 (E.D.N.Y. Mar. 31, 2019).  Counterclaimant's March 17 "complaint" and demand to HC2, however, merely related his observations about three employees in the office that day (Countercl. ¶ 14), but it did not identify any HC2 policy or procedure that violated any law.  Thus, Count III fails to allege that Counterclaimant identified particular activities, policies or practices that HC2 allegedly engaged in that he knew or believed to violate a law, rule or regulation.

Count III also fails to allege that HC2's policies, practices or activities created a substantial and specific danger to the public health or safety. The requisite "threat to public safety" contemplated by Section 740 "has generally been narrowly construed to apply to the public at large." *Reyes*, 1997 WL 256923, \*4 (citing *Remba v. Fed'n Employment & Guidance Serv.*, 76 N.Y.2d 801, 803 (1990)) (affirming dismissal of claim under Section 740 because defendant's conduct "is not the type of violation which creates a substantial and specific danger to the public health or safety") (internal quotation marks omitted). Counterclaimant's personal complaint that he observed three employees in the office with "flu-like symptoms" does not satisfy the requirement to allege that HC2's policy, procedures or activities threatened the public at large. *See Reyes*, 1997 WL 256923, \*4 (citation omitted). Counterclaimant's purported "whistleblower complaint" related entirely personal concerns and demands that are insufficient to plausibly allege retaliation.

Finally, Counterclaimant has failed to plausibly allege that HC2 took adverse action against him as a result of his March 17 email. Counterclaimant cherry-picks sentences from HC2's March 17 email in reply to Counterclaimant's "complaint." Counterclaimant mischaracterizes HC2's email in an apparent attempt to allege that he was terminated in retaliation for his March 17 "complaint." *Compare* Countercl. ¶ 14 ("A few minutes later, HC2 emailed Delaney and the others saying that they were terminated: 'We are requesting all team members to gather their belongings and depart the facility in an orderly fashion and exit our environment since the [document review] is effectively ending.'"), *with* Rossi Decl. Ex. A ("If a decision to re-start the [review] in NYC is made, we will contact you – directly."). Read in full (and objectively), HC2's email reveals that HC2 did not "terminate" Counterclaimant, but instead advised him that the document review had been suspended in New York, that HC2 had sought authorization for

13

Counterclaimant to work remotely and that HC2 would notify Counterclaimant directly if, and when, the review could resume in New York.  (Rossi Decl. Ex. A.)  Because the document from which Counterclaimant quotes contradicts his allegations, his allegations cannot be accepted as true and the document's plain language controls.  *Poindexter*, 2012 WL 1027639, at *2; *see also Sazerac*, 861 F. Supp. 253 at 257; *Rapoport*, 88 F. Supp. 2d at 184.  Contrary to Counterclaimant's allegations, HC2 responded to his complaint about the conditions in the office by asking all three contract attorneys working on the review -- not only Counterclaimant -- to leave the premises and by promising to follow up once remote work was approved or the review resumed in New York.

**B.    Counterclaimant fails to state a plausible claim under Section 215.**

Section 215 prohibits an employer from "discharge[ing], threaten[ing], penalize[ing], or in any other manner discriminat[ing] or retaliate[ing] against any employee (i) because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [the Labor Laws], or any order issued by the commissioner."  N.Y. Lab. Law § 215(l)(a)(i).  To establish a prima facie case for retaliation under Section 215, Counterclaimant must plead that, "while employed by the defendant, [he] made a complaint about the employer's violation of [NYLL] and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action."  *Copantitla v. Fiskardo Estiatorio Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011).[3]  Count III fails to allege a cause of action for violation of Section 215.

---

[3]  *See also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (holding that to establish a prima facie claim of retaliation under Section 215 of the NYLL, "a plaintiff must show: (1) participation in protected activity known to the defendant[;] ... (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.") (internal quotation marks an citations omitted).

Counterclaimant has not alleged that HC2's conduct violated any specific provision of the Labor Laws or that his complaint on March 17 was related to such a violation.  *Robledo v. No. 9 Parfume Leasehold*, No. 12-CV-3579 (ALC)(DF), 2013 WL 1718917, at *7 (S.D.N.Y. Apr. 9, 2013) ("[T]o establish a claim under Section 215(l)(a), a plaintiff must show that she complained to [her employer] about its violations of the Labor Law and that she was terminated because of her complaints.") (internal quotation marks omitted).  Rather, Counterclaimant merely alleges that he worked in close proximity to two other contract attorneys and that he observed three other employees in the office whom he characterized as displaying "flu-like symptoms," but he does not allege that any of HC2's policies or procedures violated the Labor Laws.  (Countercl. ¶ 14.)  As addressed above in the context of Section 740, Counterclaimant has not stated facts sufficient to allege that he was terminated as a result of his March 17 email, such that his claim must be dismissed.  *Robledo*, 2013 WL 1718917, at *7 ("'In addition, New York's anti-retaliation provision requires a nexus between the employee's complaint and the employer's retaliatory action.'") (quoting *Higueros v. New York State Catholic Health Plan*, 526 F.Supp.2d 342, 347 (E.D.N.Y. 2007)).

Finally, Sections 215 and 740 both "provide a right of action to an employee who has been subjected to retaliation."  *Warden v. E.R. Squibb & Sons, Inc.*, 840 F. Supp. 203, 208 (E.D.N.Y. 1993); *see also Kramsky v. Chetrit Grp.*, LLC, No. 10-CV-2638 (HB), 2010 WL 4628299, at *5 (S.D.N.Y. Nov. 16, 2010) (both sections "are essentially designed to protect against the same 'wrong'—namely, employer retaliation").  It appears that Counterclaimant is alleging application of both provisions in the alternative.  However, to the extent Counterclaimant is attempting to plead that HC2 violated Section 740 of the NYLL and that *that* violation is the predicate for a claim under Section 215, such a claim necessarily fails for two reasons.

15

First, Counterclaimant's March 17 "complaint" to HC2 did not report a violation of Section 740 by name or in substance and the law requires that the complaint to the employer identify the particular activities, policies or practices in which the employer allegedly engaged so that the employer has notice. *See, e.g., Wu*, 2019 WL 2754865, at *7 (dismissing Section 215 claim predicated upon an alleged violation of Section 740 because "plaintiff's complaint to the [employer] regarding [another employee] was not about conduct that violated Section 740 of the NYLL, or any other provision of the NYLL").  In addition, Counterclaimant alleges only one complaint to HC2 and one adverse employment action in retaliation.  Counterclaimant does not allege that HC2 violated section 740, that he subsequently complained to HC2 about that particular violation and that HC2 took additional adverse employment action based on the second complaint in violation of Section 215.  *See Starikov v. Ceva Freight, LLC*, 153 A.D.3d 1377, 1378 (2d Dep't 2017) (dismissing claim under Section 215 where plaintiff failed to allege adverse employment action arising from a complaint that employer violated Section 740).

Thus, Counterclaimant fails to state a claim under Section 215 for the additional reason that he has not (and cannot) allege that HC2 violated any provision of New York's Labor Laws.

## IV.   COUNT IV FAILS TO STATE A CLAIM FOR BREACH OF A CONFIDENTIAL RELATIONSHIP

Count IV alleges that HC2 breached a confidential relationship with Counterclaimant by "disclos[ing] information about him to the other side."  (Countercl. ¶ 35.)  The counterclaim must be dismissed because it fails to sufficiently allege both the existence of a confidential relationship and a breach by HC2.

To state a claim for breach of a confidential relationship, Counterclaimant must plead that (i) the parties either stood in a relationship imposing a duty of trust or confidentiality, or that they (ii) entered into an agreement establishing such a confidential relationship.  *Stewart v. World*

*Wrestling Federation Entertainment, Inc.*, No. 03-CV-2468 (RLC), 2005 WL 66890 (S.D.N.Y. 2005).[4]   To recover for disclosure of confidential information divulged to the defendant, Counterclaimant must allege the creation of a confidential relationship and that defendant, in fact, accepted that relationship.  *Id*. (citing *Smith v. Weinstein*, 578 F.Supp. 1297, 1307 (S.D.N.Y. 1984), *aff'd*, 738 F.2d 419 (2d Cir. 1984)).   Here, Counterclaimant has not alleged facts sufficient to establish the existence of a confidential relationship or HC2's acceptance of one.

Also, even if the Court indulges Counterclaimant's speculation that his identity was somehow disclosed to a third party, there are no alleged acts to support his conclusory statement that HC2 disclosed Counterclaimant's identity.[5]   Furthermore, even if the Court accepts as true the conclusory allegation that HC2 disclosed Counterclaimant's personal information to a third party, his personal information is not the type of novel idea, item or secret that was revealed in confidence that is protected from exploitation by the recipient of the confidential information.  *See McGhan v. Ebersol*, 608 F. Supp. 277, 285 (S.D.N.Y. 1985) (dismissing claim for compensation for breach of a confidential relationship due to plaintiff's failure to allege that his ideas that were both novel and concrete); *Smith*, 578 F. Supp. at 1307 (dismissing claim where plaintiff failed to show disclosure of novel idea).  Finally, the Counterclaim for breach of a confidential relationship must be dismissed because it fails to allege any injury in fact as a result of HC2's alleged disclosure. (*See* Countercl. ¶¶ 34-37; *see also Lynch v. Johnson*, No. 652761/2015, 2018 WL 6181300, at *4

---

[4]  The legal standard advanced by Counterclaimant -- "unconsented, unprivileged disclosure to a third party of nonpublic information" (Countercl. ¶ 36) -- appears to have been borrowed from an opinion of the District of Columbia Court of Appeals.  *Vassiliades v. Garfinckel's,* 492 A.2d 580, 591 (D.C. 1985).  But New York has not adopted this standard.

[5]  Indeed, even Counterclaimant's conclusory allegations that his information was disclosed hedges by accusing HC2 as well as nonparties Law Firm Customer and the Corporate Client of the disclosure.   (*See* Countercl.  ¶ 35 ("HC2 breached the confidential relationship with Counterclaimant when it, the law firm, and the company disclosed information about him to the other side.").

(N.Y. Sup. Ct. Nov. 27, 2018) (plaintiff failed to show how defendant's conduct resulted in an injury in fact to confer standing).

## V.     COUNT V FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Count V alleges intentional infliction of emotional distress ("IIED").  Under New York law, a claim for IIED requires: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).  The standard is "rigorous, and difficult to satisfy," as the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id*. at 827 (quoting *Howell v. New York Post Co*., 81 N.Y.2d 115, 122 (1993); *see Schaer v. City of N.Y.*, No. 09-CV-7441 (CM)(MHD), 2011 WL 1239836, at \*7 n.4 (S.D.N.Y. Mar. 25, 2011) (IIED is "an extremely disfavored cause of action under New York law that is routinely dismissed on pre-answer motion").

The IIED Counterclaim must be dismissed because it fails to allege facts with respect to any of these elements.  Specifically, Count Nine alleges the conclusion that HC2 intentionally inflicted emotional distress because it "disclosed his identity, personal information, involvement, and work to the other side and brought this false case against him."   (Countercl. ¶ 39.) Counterclaimant's "[n]aked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action" are precisely the "mere conclusory statements" that the Supreme Court has held to be insufficient to state a claim.  *Iqbal*, 556 U.S. at 678.

Yet again, Counterclaimant refers generally to "the other side" without ever alleging who the "other side" is and without alleging facts as to how, when, where and to whom HC2 supposedly

18

disclosed his identity, personal information, or involvement in work for HC2.   Nor has Counterclaimant alleged why HC2's supposed disclosure is "extreme and outrageous" conduct.[6] Counterclaimant also fails to allege any facts supporting the existence of severe emotional distress or establishing the requisite causal link between HC2's conduct and Counterclaimant's alleged emotional distress.  (Countercl. ¶¶ 39-40.)  Instead, Counterclaimant offers only a generalized allegation that he suffered "medical problems, severe humiliation, mental anguish, and emotional and physical distress," (Countercl. ¶¶ 40- 41), which is insufficient to state a claim for relief.

Moreover, Counterclaimant's allegations of harm stemming from the alleged disclosure of his involvement are belied by his allegation that he did not apply for other work or leave the review until over a month later, on January 3, 2020, and that, thereafter, he voluntarily rejoined the review on February 17, 2020.  (Countercl. ¶¶ 10-11.)

Finally, Counterclaimant cannot maintain a claim for IIED with respect to HC2's statements in this litigation, which are protected by litigation privilege.  *See, e.g.*, *Brady v. John Goldman, Esq.*, No. 16-CV-2287, 2016 WL 8201788, at *8 (S.D.N.Y. Dec. 5, 2016) ("Cases relying on statements made in the context of adversarial litigation have been summarily dismissed under [the IIED] standard.") (citing *Kaye v. Trump*, 58 A.D.3d 579, 579 (1st Dep't 2009) (statements made in adversarial litigation "cannot provide a foundation for the claim" for IIED); *Yalkowsky v. Century Apts. Assocs.*, 215 A.D.2d 214, 215 (1st Dep't 1995) (same)), *report and recommendation adopted sub nom. Brady v. Goldman*, No. 16-CV-2287, 2017 WL 111749

---

[6]  *See, e.g. Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 331 (S.D.N.Y. 2010) ("Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation."); *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) ("Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous") (internal citations omitted).

(S.D.N.Y. Jan. 11, 2017), aff'd, 714 F. App'x 63 (2d Cir. 2018); *see also In re Swift*, No. 94-10285-CEC, 2016 WL 355515, at *4 (Bankr. E.D.N.Y. Jan. 28, 2016) (collecting cases).

## VI.    COUNT VI FAILS TO STATE A CLAIM FOR INVASION OF PRIVACY

Count VI attempts to assert a claim for invasion of privacy premised on alleged violations of Sections 50 and 51 of New York Civil Rights Law ("NYCRL").  Counterclaimant alleges that HC2's "disclosure of [his] personal information to the other side was a violation of its own privacy policies and his right to privacy. . . . [that] intruded on [Counterclaimant's] solitude and private affairs and publicly disclosed private facts."  (Countercl. ¶ 43.)  Counterclaimant has not, and cannot, state a claim under either provision and the Counterclaim must be dismissed with prejudice.

New York law does not recognize a common-law right of privacy.  Rather, the privacy rights protected by NYCRL Sections 50 and 51 apply only in limited situations involving commercial exploitation of an individual's name, portrait or picture, without written consent.[7] *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 140 (1985); *see also Arrington v. New York Times Co.*, 55 N.Y.2d 433, 440 (1982) (citation omitted), *cert. denied*, 459 U.S. 1146 (1983); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1048 (2d Cir. 1995) (citations omitted) ("the remedy of section 51 has been characterized as "limited" in scope."). *Rosenfeld v. W.B. Saunders, a Div. of Harcourt Brace Jovanovich, Inc.*, 728 F. Supp. 236, 249 (S.D.N.Y. 1990) (denying preliminary injunction premised upon the "common law right to privacy"), *aff'd sub nom. Rosenfeld v. Saunders*, 923 F.2d 845 (2d Cir. 1990).  Counterclaimant fails to allege any misappropriation or commercial exploitation of his name or likeness, which is fatal to his claim.

---

[7]  Counterclaimant "must demonstrate each of four elements under the statute: (1) usage of plaintiff's name, portrait, picture, or voice, (2) within the state of New York, (3) for purposes of advertising or trade, (4) without plaintiff's written consent."  *Comolli v. Huntington Learning Centers, Inc.*, 117 F. Supp. 3d 343, 348–49 (S.D.N.Y. 2015).

**VII.    COUNT VII FAILS TO STATE A CLAIM FOR UNPAID SICK LEAVE UNDER NEW YORK LABOR LAW § 196-b**

Count VII alleges that HC2 failed to pay him accrued sick leave post-termination in violation of NYLL Section 196-b.  Counterclaimant cannot state a claim under this provision because the law does not take effect until September 30, 2020.  NYLL § 196-b, added by Ch. 56 (S. 7506/A. 9505), L. 2020, enacted April 3, 2020, and effective September 30, 2020.  When the law does take effect, however, the statute expressly states that employers are not required to pay accrued, but unused, sick leave when an employee retires, resigns or is terminated.  NYLL § 196-b(6).  Thus, Count VII is frivolous.

**VIII.    COUNTS VIII AND IX FAIL TO STATE A CLAIM FOR DEFAMATION *PER SE* AND ABUSE OF PROCESS**

Count VIII alleges defamation (libel) *per se* on the grounds that "HC2 and its attorneys maliciously defamed [Counterclaimant] when they accused him of extortion and implied that he stole documents . . . and accused him of being unethical," in HC2's complaint.  (Countercl. ¶ 51.)  Counterclaimant alleges that all of the published statements that undergird his defamation claim are set forth in nine paragraphs in HC2's Complaint (*id.*), but he failed to actually allege which statements within those paragraphs he claims are actionable.  (Countercl. ¶ 51.)  Likewise, in support of Count Nine for abuse of process,[8] Counterclaimant proffers four conclusory sentences

---

[8]  "To plead a claim of abuse of process under New York law, Plaintiff must plead . . . that there was (1) regularly issued civil process, (2) an intent to do harm without excuse or justification, (3) use of the process in a perverted manner to obtain a collateral objective, and (4) actual or special damages."  *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 355 (S.D.N.Y. 2014) (internal quotations omitted).  Counterclaimant also fails to state a claim for abuse of process because he offers merely conclusory statements with respect to the second and third elements with no factual allegations to support them.  None of these conclusory statements and legal conclusions is sufficient to establish any of the elements of abuse of process.  *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Twombly*, 550 U.S. at 555 ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation[.]") (quotations omitted)).

rather than factual allegations (Countercl. ¶¶ 57-60), that merely recite the elements of the cause of action, which is insufficient. *Iqbal*, 556 U.S. at 678 (the court need not credit "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). The sole basis for Counterclaimant's abuse of process claim is HC2's request for injunctive relief set out in paragraph 57 of the Complaint. (Countercl. ¶ 58.)

Both the defamation and abuse of process counterclaims must be dismissed because the statements in HC2's Complaint are absolutely privileged. "The law of New York for well over one hundred years has provided absolute immunity from liability for defamation" for written statements made by attorneys in connection with a court proceeding, when those statements are "pertinent to the questions involved." *Yukos Capital S.A.R.L. v. Feldman*, No. 15-CV-4964 (LAK), 2016 WL 4940200, at *4 (S.D.N.Y. Sep. 14, 2016) (internal quotations omitted); *see also Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 48 (S.D.N.Y. 2015) ("statements made in the course of legal proceedings are absolutely privileged if pertinent to the litigation"); *Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007) (same), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015).

The litigation privilege applies to pleadings, *see Lader v. Delgado*, 941 F. Supp. 2d 267, 273 (E.D.N.Y. 2013); and it "is not lost by the presence of actual malice." *Kelly*, 485 F.3d at 666. Indeed, the litigation privilege "is the broadest of possible privileges and any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent is protected by an absolute privilege even though such matter may be ineffectual as a defense." (*Id.*) Both the defamation and abuse of process claims are barred by the litigation privilege and should be dismissed with prejudice.

Further, with respect to an abuse of process claim, "[t]he pursuit of a collateral objective must occur *after* the process is issued; the mere act of issuing process does not give rise to a claim."

*Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995) (emphasis added); *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413,434 (S.D.N.Y. 2004) ("Numerous other courts have also held that the mere issuing of process cannot give rise to an abuse of process claim, since the unlawful pursuit of a collateral objective must occur after the process is issued."). Counterclaimant, however, failed to allege a collateral objective *after* the issuance of process, which warrants dismissal of his counterclaim under rule 12(b)(6). *See, e.g., Klass v. Frazer*, 290 F. Supp. 2d 425, 427 (S.D.N.Y. 2003) (dismissing abuse of process claim where complaint "contain[ed] no allegation of any improper usage of the process to obtain a collateral objective after it was issued.").

## IX.   COUNTERCLAIMANT FAILS TO STATE A CLAIM FOR SANCTIONS

Finally, Counterclaimant asks this Court to issue sanctions against HC2, its attorneys or both pursuant to FRCP 11 (Countercl. ¶ 62.)  It is unclear, however, whether Counterclaimant is asserting this as a cause of action.  Assuming he is, the claim fails and must be dismissed for two reasons.  First, a Rule 11 motion for sanctions must be made "separately from any other motion." Fed. R. Civ. P. 11(c)(2); *see Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 253 (S.D.N.Y. 2018) (denying motion for sanctions for failing to file it separately as required by Rule 11), *reconsideration denied*, No. 15-CV-4244 (JGK), 2018 WL 5650004 (S.D.N.Y. Oct. 30, 2018); *Karla Otto, Inc. v. Rivoli Creation, S.A.S.*, No. 13-CV-0483 (JGK), 2014 WL 6910546, at *1 (S.D.N.Y. Dec. 5, 2014) (same).  Second, the allegations in HC2's Complaint and its other filings are justified by existing law, are not frivolous or are warranted by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.  *See Romain v. Seabrook*, No. 16-CV-8470 (JPO), 2017 WL 6453326, at *8 (S.D.N.Y. Dec. 15, 2017) (internal quotations omitted).  ("[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable

argument to extend, modify or reverse the law as it stands.")  Counterclaimant's procedurally-improper request for sanctions under Rule 11 must be dismissed accordingly.

## **<u>CONCLUSION</u>**

HC2 respectfully moves this Court to dismiss all of Defendant's Counterclaims, with prejudice, for failure to state a claim.


Dated:  New York, New York
    June 3, 2020

            Respectfully submitted,

            KASOWITZ BENSON TORRES LLP


            By:  */s/ Ronald R. Rossi*
               Marc E. Kasowitz
               Ronald R. Rossi
               Kalitamara L. Moody

               1633 Broadway
               New York, NY 10019
               Telephone:  (212) 506-1700
               Facsimile:  (212) 506-1800

            *Attorneys for Plaintiff-Counter Defendant*
            *HC2, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 3, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Ronald R. Rossi*
Ronald R. Rossi
