**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X

HC2, INC.,                                              :

                                                        :       Civil Action No.: 1:20-cv-3178 (LJL) (KNF)

     Plaintiff-Counter Defendant,                    :
                                                        :
                                                        :       **Oral Argument Requested**
                                                        :
          -v-                                    :
                                                        :
                                                        :
ANDREW DELANEY,                                         :
                                                        :
                                                        :
     Defendant-Counter Claimant.                     :
                                                        :
-------------------------------------------------------- X


**PLAINTIFF-COUNTER DEFENDANT HC2, INC.'S REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIMS**


KASOWITZ BENSON TORRES LLP

1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiff-Counter Defendant HC2, Inc.*

Plaintiff-Counter Claimant HC2, Inc. ("HC2") respectfully submits this reply memorandum of law in further support of its motion to dismiss Defendant-Counter Claimant's ("Counterclaimant") Counterclaims (the "Counterclaims" or "Countercl."), with prejudice.

## PRELIMINARY STATEMENT

HC2's motion to dismiss, ECF No 62 (the "Motion" or "Mot."), conclusively established that the counterclaims must be dismissed pursuant to Rule 12(b)(6) because they do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In his opposition, ECF No. 68 (the "Opposition" or "Opp."), Counterclaimant repeats the Counterclaims' conclusory statements and legal conclusions and insists they are properly pleaded factual allegations. They are not and this Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Noelle Ibrahim. v. Lucas Pena, Deirdre Fuchs, & the Trustees of Columbia University in the City of New York*, No. 16-CV-7774 (VEC), 2017 WL 3601246, at *1 (S.D.N.Y. Aug. 21, 2017) (citations omitted).

Recognizing that his threadbare conclusory pleading fails to state legally cognizable claims, Counterclaimant attempts to amend his Counterclaims through his Opposition by adding new "facts" and altering his legal theories.[1]  Counterclaimant's impermissible repleading cannot salvage his Counterclaims because the Court may not consider allegations raised for the first time in the opposition to a motion to dismiss. *See, e.g.*, *Williams v. U.S. Info. Sys., Inc.*, No. 11 CIV. 7471 ER, 2013 WL 214318, at *4 n.4 (S.D.N.Y. Jan. 17, 2013) (the court may not consider allegations raised for the first time in plaintiff's opposition to a motion to dismiss) (citing *Tomlins*

---

[1]  For example, Opposition paragraphs 6-7, 10-13, 16, 18 and 21 all contain statements that were not alleged in the Counterclaims.

*v. Vill. of Wappinger Falls Zoning Bd. of Appeals,* 812 F.Supp.2d 357, 363 n. 9 (S.D.N.Y. 2011) (complaint may not be amended simply by raising new facts in opposition papers)).

## ARGUMENT

### I.    COUNTS I AND II FAIL TO STATE CLAIMS SOUNDING IN FRAUD

In its Motion, HC2 demonstrated that Counterclaimant's fraud claims (Counts I and II) do not meet the pleading requirements set forth in Rule 9 of the Federal Rules of Civil Procedure. (Mot. at 6-10.)  In response, Counterclaimant abandons the fraudulent misrepresentation theory and attempts, instead, to establish that he has adequately pleaded fraud by omission. The Counterclaims do not identify a single omission sufficiently pleaded under Rule 9, however.

Despite Counterclaimant's apparent adoption of the fraudulent omission theory, Counts I and II as pleaded seem based on fraudulent misrepresentations.  Count I alleges that "Delaney detrimentally relied on the [sic] HC2's two misrepresentations or material omissions of fact that (a) the work involved a normal document review that would not pose risks or danger to him and (b) his identity, personal information, involvement, and work-product would not be disclosed to outside third parties in this case, even worse, to the other side." (Countercl. ¶ 19.)  These alleged statements by HC2 are, on their face, affirmative representations and Counterclaimant has not explained how they could simultaneously be "material omissions."  Even if these statements could be construed as omissions (and they cannot), the Counterclaims do not plead *facts* with respect to "the person responsible for the failure to disclose," "the context of the omission and the manner in which they misled [Counterclaimant]," or "what the defendant obtained through the fraud," as Rule 9 requires.  *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007); Mot. at 7.

The Opposition also attempts to replead Count II as alleging "fraud by omission or silence" even though this counterclaim specifically alleges that "HC2 *made three fraudulent*

*misrepresentations* to Delaney," and proceeded to list those alleged misrepresentation in three separate paragraphs. *See* Countercl. ¶¶ 23-26 (emphasis added). Leaving aside that none of those allegations plead a fraudulent misrepresentation with the requisite particularity, *see* Mot. at 6-10, Counterclaimant may not use the Opposition to amend his theory from fraud by "three fraudulent misrepresentations" to "fraud by omission or silence." *See Williams*, 2013 WL 214318, at *4 n.4 (the court may not consider allegations raised for the first time in opposition to a motion to dismiss).

Finally, neither the Counterclaims nor the Opposition identify what duty to disclose HC2 owed Counterclaimant. In this regard, the Opposition also fails adequately to address the argument that "a fraud claim cannot be maintained based on misrepresentations as to acts or intentions that formed the content of the contract unless a separate legal duty existed." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 619 (S.D.N.Y. 2010); *see* Mot. at 8-9. The Opposition offers the conclusory assertion that the fraud claims are "independent of any employment agreement," (Opp. ¶ 56), which is insufficient without citation to a single supporting fact or legal authority. The general rule that a false statement with respect to performance of a contract cannot form the basis of a fraud claim "applies even where the plaintiff does not assert a claim for breach of contract." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017) (citations omitted).

## II.   COUNT III FAILS TO STATE A CLAIM FOR "WHISTLEBLOWER RETALIATION" UNDER NEW YORK LABOR LAW SECTIONS 740 OR 215.

As set out in the Motion, Count III fails to state a claim under Section 740 because the March 17 "complaint" to HC2, merely related observations about three employees in the office that day (Countercl. ¶ 14), and, thus, fails to allege that Counterclaimant identified particular activities, policies or practices that *HC2 allegedly engaged in* that he knew or believed to violate

a law, rule or regulation and which presented a substantial danger to public health or safety.  (Mot. at 12.)

Count III under Section 215 fails for similar reasons: "Counterclaimant has not alleged that HC2's conduct violated any specific provision of the Labor Laws or that his complaint on March 17 was related to such a violation."  Mot at 15 (citing *Robledo v. No. 9 Parfume Leasehold*, No. 12-CV-3579 (ALC) (DF), 2013 WL 1718917, at *7 (S.D.N.Y. Apr. 9, 2013).  As set out in the Motion, the Counterclaims merely allege that Counterclaimant worked in close proximity to two other contract attorneys and that he observed three other employees in the office whom he characterized as displaying "flu-like symptoms," but do not allege that any of HC2's policies or procedures violated the Labor Laws.  (Mot. at 15.)

Counterclaimant's inability to identify any labor law, rule or regulation that HC2 was in violation of is not surprising because HC2 was not in violation of any law, rule or regulation.  Nor, after Counterclaimant expressed concerns about others in the office, did HC2 violate any specific law, rule or regulation by suspending the document review that same day and sending the attorney reviewers home until the Law Firm Customer determined whether remote review was feasible.

The Opposition cites a March 17 email, attached as Exhibit A to the Declaration of Robert Rotman In Opposition to Motion to Dismiss ("Rotman Declaration"), and claims that the email shows an "immediate desire and decision" by HC2 to terminate Counterclaimant for sending his March 17 email.  (Opp. ¶ 62.)  The Court must reject this attempt to amend Count III by injecting new facts through the Opposition.  *Williams*, 2013 WL 214318, at *4 n.4; *Tomlins,* 812 F.Supp.2d at 363 n. 9.  The assertion is also belied by the subsequent March 17 email from Denise Asnes (*see* ECF No. 63-1), which states that HC2 would contact Counterclaimant (and the two other document reviewers in New York) if the document review could resume.

The Counterclaims also contain no allegation that HC2's policies or activities threatened the *public at large*, and the Court should not consider Opposition paragraphs 73-76, which attempt to amend the Counterclaims with new allegations that were not pleaded initially. *Williams*, 2013 WL 214318, at *4 n.4; *Tomlins,* 812 F.Supp.2d at 363 n. 9. The Court may also disregard Counterclaimant's assertion, first raised in his Opposition, that he "contacted a New York labor lawyer, Christopher Davis, who advised him that in his opinion this was an unlawful termination in violation of N.Y. Labor Law § 740 and § 215." (Opp. ¶ 16.) This self-serving disclosure does, however, constitute a knowing and intentional waiver of the attorney-client privilege.

## III.   COUNT IV FAILS TO STATE A CLAIM FOR BREACH OF A CONFIDENTIAL RELATIONSHIP

As established by HC2's Motion, Count IV fails to sufficiently allege both the existence of a confidential relationship between Counterclaimant and HC2 and HC2's breach. (Mot. at 16-18.) The Opposition fails to identify any factual allegations in the Counterclaims (and there are none) that establish that Counterclaimant and HC2 "either stood in a relationship imposing a duty of trust or confidentiality, or that they entered into an agreement establishing such a confidential relationship." *Stewart v. World Wrestling Federation Entertainment, Inc.*, No. 03-CV-2468 (RLC), 2005 WL 66890, at *4 (S.D.N.Y. 2005). Rather, the Opposition claims that the May 19, 2020 deposition testimony of HC2's general counsel that, "[t]here may be legal obligations on [HC2] to protect personal information," somehow proves the existence of a confidential relationship. (Opp. ¶¶ 78, 78 n.13.) But the Court should not even consider this new rationale that was not pleaded in the Counterclaims, which pre-date the deposition. *Williams*, 2013 WL 214318, at *4 n.4; *Tomlins,* 812 F.Supp.2d at 363 n. 9. Moreover, the mere existence of "legal obligations" to protect personal information hardly establishes the existence of a confidential relationship. In fact, the Counterclaims and Opposition assert a contradictory narrative, that the obligation to

5

protect personal information arose from an HC2 human resources policy, not from any "confidential relationship" between the parties.  *See* Opp. ¶¶ 79, 79 n.14 (citing Countercl. ¶ 43 n.15).

The Opposition also fails to identify a single *factual allegation* supporting the conclusory claim that it was *HC2* that "disclosed information about him to the other side." (Countercl. ¶ 35.) In fact, the Counterclaims do not actually allege any facts at all about the circumstances, timing or perpetrator of the supposed disclosure, only that Counterclaimant received an email on November 28, 2019 from which he inferred that his information had been disclosed (Countercl. ¶ 7), and that Counterclaimant "found out that his name, involvement, personal information, and work were being disclosed to persons on the other side of the review." (Countercl. ¶ 8.)  Count IV must be dismissed for its reliance upon unsubstantiated inference and speculation rather than actual facts linking HC2 to the alleged disclosure.  *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("[C]ourts have no obligation to entertain pure speculation and conjecture.").  Notably, Counterclaimant does admit that he already knew the person who contacted him, having met him socially prior to commencing work on the document review.  (Opp. ¶ 6.)

Confronted with the Counterclaims' failure to allege a disclosure by HC2, the Opposition attempts to resuscitate Count IV by changing the legal theory to assert that "HC2's failure to stop the outrageous actions of another may itself be outrageous."  (Opp. ¶ 78 n.12.)[2]  Not only is Counterclaimant prohibited from amending his Counterclaims through his Opposition, the purported legal theory he proposes is meritless.

---

[2] *Travis v. Alcon laboratories, Inc.*, cited in the opposition, addressed an employer's liability for the "tort of outrage" under West Virginia law.  202 W. Va. 369, 382 (W. Va. Sup. Ct. App. 1998).  The case is inapposite because "New York does not recognize the tort of outrage . . . ." *Scholes v. Am. Kennel Club, Inc.*, No. 98 CIV. 6538 LBS, 1999 WL 799532, at *5 (S.D.N.Y. Oct. 7, 1999); *see also Werner v. Selene Fin., LLC*, No. 17-CV-06514 (NSR), 2019 WL 1316465, at *12 (S.D.N.Y. Mar. 22, 2019) ("New York does not recognize the tort of outrage, and so that claim would also be dismissed.").  *Burrow By and Through Burrow v. Postville Cmty. Sch. Dist.*, 929 F. Supp. 1193, 1210 (N.D Iowa 1996), also cited in the Opposition, contradicts Counterclaimant's argument.

## IV.    COUNT V FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In its Motion, HC2 established that the three conclusory sentences offered in support of Count V fail to state a claim for intentional infliction of emotional distress.  (Mot. at 18-20.)

In Opposition, Counterclaimant, once again, changes his theory by stating, contrary to the Counterclaims, that "[Counterclaimant] is not basing the intentional infliction claim solely on 'statements in this litigation'.  Allegations of HC2's and its agents' outrageous conduct are merely exacerbated by the litigation but are not borne by it."  (Opp. ¶ 88.)   Leaving aside what Counterclaimant even means by that assertion, the Court should not consider this impermissible amendment to the pleading because there is no allegation of conduct by any agent of HC2 in the prior version of the Counterclaims.  *See* Countercl. ¶¶ 39-41.[3]

## V.    COUNT VI FAILS TO STATE A CLAIM FOR INVASION OF PRIVACY

HC2's Motion established that Count VI fails to state a claim under NYCRL Sections 50 and 51 because those statutory provisions are limited to situations involving commercial exploitation of an individual's name, portrait or picture, without written consent and do not protect some nondescript common law "right to be left alone" as alleged in the Counterclaims.  (Mot. at 20.)  The Counterclaims' failure to allege any misappropriation or commercial exploitation of Counterclaimant's name or likeness warrants dismissal of this claim.

## VI.    COUNT VII FAILS TO STATE A CLAIM FOR UNPAID SICK LEAVE

Count VII expressly states that "HC2 failed to pay [Counterclaimant] for his accrued sick time under N.Y. Labor Law § 196-b."  (Countercl. ¶ 47.)  HC2 moved to dismiss the claim because this provision has not yet taken effect.  (Mot. at 21.)  In response, the Opposition asserts a different

---

[3]  The Court must also reject Opposition paragraphs 82-85 as none of these new allegations were included in the Counterclaims.

basis for relief pursuant to "the revised New York City Earned Sick Time Act" (Opp. ¶ 92), but the Counterclaims contain no factual allegations to plausibly state Counterclaimant's entitlement to relief under this provision.  Rather, Counterclaim paragraph 48, cited in the Opposition, alleges simply that, "[i]t is illegal to interfere with investigations or to retaliate against employees who exercise their rights under the Paid Sick Leave Law" (Countercl. ¶ 48) and drops a footnote with a link to an online informational pamphlet created by the New York City Department of Consumer Affairs.  The Opposition claims that the footnoted link alone provides the basis for relief and not NYLL Section 196-b as actually alleged in the Counterclaim.  Such amorphous and fluid pleading does not satisfy the basic requirements of Rule 8 of the Federal Rules of Civil Procedure.

## VII.   COUNTS VIII AND IX FAIL TO STATE A CLAIM FOR DEFAMATION *PER SE* AND ABUSE OF PROCESS

HC2's Motion established that allegations in HC2's Complaint are absolutely privileged and thus not actionable.  (Mot. at 21-23.)  The Opposition does not meaningfully contest HC2's assertion of litigation privilege, except to assert, in conclusory terms, that, "[e]ven if there is an absolute privilege in New York, it does not apply in this case because none of the 'words and writings' was 'material and pertinent to the questions involved' to [sic] the litigation."  Opp. ¶ 105 (citing *Yukos Capital S.A.R.L. v. Feldman*, No. 15-CV-4964 (LAK), 2016 WL 4940200, at *4 (S.D.N.Y. Sep. 14, 2016)).  The existence of absolute immunity for written statements by attorneys in connection with a court proceeding is beyond question, though.  (Mot. at 22.)  And the privilege is broad such that it "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability." *Yukos*, 2016 WL 4940200, at *4.

The Opposition also falsely asserts that footnote 4 and paragraph 51 of the Counterclaims allege that HC2's counsel made a defamatory statement in an April 20, 2020 email to

Counterclaimant's prior counsel.  (Opp. ¶ 100(2).)  Paragraph 51 contains no reference to a letter between counsel and footnote 4, which pertains to Counterclaimant's sixth affirmative defense and not to any counterclaim, references an April 22 email between counsel and disputes the existence of an employment agreement without reference to a supposed defamatory statements concerning "stolen information."  Indeed, the Opposition perpetuates the false narrative that Counterclaimant has been accused of stealing documents even though HC2's Complaint contains no such allegation. The assertion that "the word 'continuing' [in paragraph 57 of the Complaint] is a clear statement that [Counterclaimant] had documents," (Opp. ¶ 100(3)), is not only false but also legal argument that the Court need not accept as true.

The Opposition airs Counterclaimant's grievances about media coverage of the case (Opp. ¶¶ 103-104, 109-111), but fails to identify a single false statement of fact concerning Counterclaimant by HC2 in any of those articles.  Additionally, with the exception of the statement that, "[f]rom April 23-29, 2020, due to this case, various articles appeared falsely accusing Defendant/Counterclaim Plaintiff of 'extortion' and 'blackmail," (Countercl. ¶ 51 n.18), none of Counterclaimant's assertions at paragraphs 104, and 109-111 and their argumentative footnotes were actually alleged in the Counterclaims.  Similarly, the Court should disregard Exhibit B to the Rotman Declaration, which was not alleged either, contains legal argument and was never produced to HC2 despite HC2's request for production of communications with third parties and the press.

The Opposition also impermissibly attempts to amend the Counterclaims to allege that "the *post-counterclaims* Zannikos declaration" contained an additional defamatory statement (Opp. ¶ 100(11) (emphasis added).[4]

---

[4]  The Zannikos declaration is dated May 22, 2020, not May 15.  *See* ECF No. 45.  Additionally, the April 13, 2020 letter from Counterclaimant's counsel (ECF No. 45-27) does demand settlement under the threat of litigation.

HC2's Motion established that the Counterclaims allege only conclusory statements in support of the claim for abuse of process and the absence of *factual* allegations to support the claim that HC2 pursued a collateral objective after process issued.  (Mot. at 21-22.)  The Opposition reiterates the conclusory recitation of the elements from the Counterclaims and also adds the allegation that HC2's filing the Complaint in this Court "when there was a pending action in Florida was an abuse of process and designed to intimidate Delaney, to force him to litigate in distant jurisdictions, to incur costs, and to force him to not pursue legitimate claims of right which occurred after the issuance of process."  (Opp. ¶ 117.)  This additional allegation does not cure Counterclaimant's failure to allege a collateral objective *after* process issued.  Regardless, the Court need not consider this false and misleading attempt to replead the abuse of process claim.

HC2 has never been a party to the Florida Action and Counterclaimant alleges that he is a New York resident (Countercl. ¶ 2), so there is no basis for jurisdiction in Florida with respect to HC2's claims in this action.  That Counterclaimant is a New York resident also undercuts the unsubstantiated assertion that filing in New York forced Counterclaimant to litigate in a distant jurisdiction or to incur costs by virtue of the venue.  Counterclaimant also fails to substantiate his assertion that filing the Complaint in New York forced him to forgo legitimate claims of right.

Finally, the litigation privilege may also be applied to insulate counsel from a variety of civil claims, including abuse of process.  *See, e.g.,* Anenson*,* T., "Absolute Immunity from Civil Liability; Lessons for Litigation Lawyers," 31 Pepp. L. Rev. 915, 928 (2004) (collecting cases).

## **CONCLUSION**

HC2 respectfully moves this Court to dismiss all of Defendant's Counterclaims, with prejudice, for failure to state a claim.

Dated: New York, New York
       June 24, 2020

Respectfully submitted,

KASOWITZ BENSON TORRES LLP


By:   */s/ Ronald R. Rossi*
    Marc E. Kasowitz
    Ronald R. Rossi
    Kalitamara L. Moody

    1633 Broadway
    New York, NY 10019
    Telephone:  (212) 506-1700
    Facsimile:  (212) 506-1800

*Attorneys for Plaintiff-Counter Defendant*
*HC2, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Ronald R. Rossi*
Ronald R. Rossi
