**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------

| | | |
|---|---|---|
| HC2, INC., | : | Civil Action No.: 20-cv-3178 (LJL) |
| | : | |
| Plaintiff-Counter Defendant, | : | |
| | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| v. | : | |
| | : | |
| ANDREW DELANEY, | : | |
| | : | |
| Defendant-Counter Claimant. | : | |

---------------------------------------------------

---

### BRIEF IN SUPPORT OF PLAINTIFF-COUNTER DEFENDANT'S MOTION TO DISMISS DEFENDANT COUNTER CLAIMANT'S AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Tel: (973) 656-1600
Fax: (973) 656-1611
*Attorneys for Plaintiff-Counter Defendant*

On the Brief:
Michael Nacchio, Esq.
Valerie L. Weiss, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................................i

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ....................................................................................................2

STANDARD OF REVIEW ...................................................................................................4

LEGAL ARGUMENT...........................................................................................................4

POINT I
NEW   YORK   LABOR   LAW   WHISTLEBLOWER   AMENDED
COUNTERCLAIMS SHOULD BE DISMISSED .................................................................4

     A.   Counterclaimant Fails to State a NYLL § 740 Claim ..................................................6

     B.   The NYLL § 215 Counterclaim Should be Dismissed...............................................11

POINT II
PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONFIDENTIAL
RELATIONSHIP ................................................................................................................12

POINT III
THE COUNTERCLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS SHOULD BE DISMISSED ..............................................................................14

POINT IV
THE COUNTERCLAIM FOR ABUSE OF PROCESS FAILS .............................................15

CONCLUSION....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>CASE</u>                                                                                                    <u>Page</u>

*Allen v. Antal*,
    2014 WL 2526977, at *16 (S.D.N.Y. Mar. 13, 2014) ................................................... 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ............................................................................................ 12

*Barber v. Von Roll U.S.A., Inc.*,
    No. 1:14-CV-907  MAD/TWD, 2015 WL 5023624,
    at *6 (N.D.N.Y. Aug. 25, 2015) ................................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................3, 4, 14, 15

*Bilinski v. Keith Haring Found., Inc.*,
    96 F. Supp. 3d 35 (S.D.N.Y. 2015) .............................................................................. 17

*Brady v. John Goldman, Esq.*,
    No. 16-CV-2287, 2016 WL 8201788, *8 (S.D.N.Y. Dec. 5, 2016) ............................... 14

*Calabro v. Nassau University Medical Center*,
    424 F.Supp.2d 465 (E.D.N.Y. 2006) .............................................................................. 8

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ........................................................................................... 3

*Christensen v. Harris County*,
    529 U.S. 576 (2000) ........................................................................................................ 7

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) ........................................................................................................ 7

*Collette v. St. Luke's Roosevelt Hosp.*,
    132 F. Supp. 2d 256 (S.D.N.Y. 2001) ..................................................................... 11, 12

*Cotrone v. Consol. Edison Co. of N.Y., Inc.*,
    50 A.D.3d 354 (1st Dep't 2008) .............................................................................. 9, 10

*Foster v. WNYC – TV*,
    No. 88 Civ. 4584 (JFK), 1989 WL 146277,
    at *6 (S.D.N.Y. Nov. 20, 1989) .......................................................................11

*Hallgren v. Bell Atlantic Corp.*,
    No. 99 Civ. 11937, 2000 WL 726496, at *3 (S.D.N.Y. May 30, 2000) ................... 14, 15

*Kassman v. KPMG LLP*,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013) ..........................................................11

*Kelly v. Albarino*,
    485 F.3d 664 (2d Cir. 2007) (same), *aff'd in part*,
    632 F. App'x 637 (2d Cir. 2015) ...............................................................17

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992) ..................................................................11

*Lynch v. Johnson*,
    No. 652761/2015, 2018 WL 6181300, at *4 (N.Y. Sup. Ct. Nov. 27, 2018) ................13

*Martin v. Citibank, N.A.*,
    762 F.2d 212 (2d Cir. 1985). ...................................................................14

*McGhan v. Ebersol*,
    608 F. Supp. 277 (S.D.N.Y. 1985) .............................................................13

*Nadkarni v. North Shore–Long Island Jewish Health Sys.*,
    21 A.D.3d 354, (2d Dep't 2005) ...............................................................8

*O'Bradovich v. Village of Tuckahoe*,
    325 F. Supp. 2d 413 (S.D.N.Y. 2004) .........................................................16

*Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*,
    51 F. Supp. 3d 319 (S.D.N.Y. 2014) ..........................................................16

*Peace v. KRNH, Inc.*,
    12 A.D.3d 914 (3d Dep't 2004) .............................................................9, 10

*Poindexter v. EMI Record Grp. Inc.*,
    No. 11-CV-559 (LTS)(JLC), 2012 WL 1027639, at *2) ...............................................11

*Pugliese v. Actin Biomed LLC*,
    Ind. No. 103104/2010, 2012 NY Slip Op 31566,
    at *7 (N.Y. Sup. Ct., June 7, 2012) ............................................................9

*Remba v. Fed'n Employment & Guidance Serv.*,
 76 N.Y.2d 801 (1990) ................................................................................................9

*Reyes v. Energy Transp. Corp.*,
 No. 96-CV-3321 (JSM), 1997 WL 256923,
 at *4 (S.D.N.Y. May 16, 1997) ...........................................................................5, 10

*Segarra v. Fed. Reserve of New York*,
 17 F. Supp. 3d 304 (S.D.N.Y. 2014)......................................................................7, 8

*Smith v. New Line Cinema*,
 No. 03 Civ. 5274 (DC), 2004 WL 2049232,
 at *5 (S.D.N.Y. Sept. 13, 2004) (Chin, J.) ................................................................11

*Stroock & Stroock & Lavan v. Beltramini*,
 157 A.D.2d 590 (1990) ...............................................................................................18

*Stuto v. Fleishman*,
 164 F.3d 820 (2d Cir. 1999)........................................................................................15

*Taboola, Inc. v. Ezoic Inc.*,
 2020 WL 3965308, *6 (S.D.N.Y. Feb. 21, 2020) ......................................................12

*Tenore v. Kantrowitz, Goldhamer & Graifman, P.C.*,
 76 A.D.3d 556 (2010)...........................................................................................16, 17

*Tonra v. Kadmon Holdings, Inc.*,
 405 F. Supp. 3d 576 (S.D.N.Y. 2019) .........................................................................8

*Webb-Weber* v. *Community Action for Human Services, Inc. et al.*,
 15 N.E.3d 1172 (N.Y. 2014) ........................................................................................8

*Yukos Capital S.A.R.L. v. Feldman*,
 2016 WL 4940200, at *4 (S.D.N.Y. Sep. 14, 2016) ...................................................17

## PRELIMINARY STATEMENT

This Court's July 17, 2020 Order dismissed the original counterclaims and permitted Defendant-Counter Claimant ("Counterclaimant") leave to replead. The Court found that the original ten counterclaims all contained fatal deficiencies. Counterclaimant now abandons six of those counterclaims and gives the Court no reason to rescue the remaining four from a second dismissal.

Counterclaimant asserts amended counterclaims for whistleblower retaliation, breach of confidentiality, intentional infliction of emotional distress, and abuse of process. The latter three all remain premised on nothing more than a combination of speculation, attorney conjecture, and privileged litigation statements. They all accordingly fail.

Counterclaimant's new allegations asserted to buttress his purported retaliation claim under New York Labor Law ("NYLL") §§ 740 and 215 fail for a number of reasons. Most notably, those statutes prohibit retaliation in response to a violation of a law, rule, or regulation that poses a substantial and specific danger to the public health. Unable to point to any such violation, Counterclaimant recycles his previously rejected allegation that he was retaliated against for reporting his speculative belief that two co-workers exhibited flu-like symptoms. He alleges no activity, policy, or practice by HC2 that was in violation of any legal authority, let alone one that posed a substantial and specific danger to public health.

Instead, with obvious futility, Counterclaimant alleges HC2 violated public health "guidance." But "guidance," of course, lacks force of law. His backup reliance on terms of his private employment contract is even further off mark, as the private agreement has no bearing on the public. His citation to an Executive Order from the New York Governor that *had not been issued* when Counterclaimant wrote his March 17, 2020 email reveals true frivolity. His NYLL §

1

215 claim fails again for lack of a violation of the Labor Law, and it is barred by NYLL § 740(7)'s election of remedies waiver provision in the first place.

Having failed to state a claim with this second opportunity, the Court should now dismiss the amended counterclaims with prejudice. Further attempts to replead are demonstrably futile and wasteful.

## STATEMENT OF FACTS[1]

HC2 is a legal staffing agency, which was hired by the Law Firm Customer and the Corporate Client to provide contract lawyers for a confidential document review project. Counterclaimant, a lawyer licensed to practice in New York, was staffed on the project and worked with several others from HC2's on site document review center in Manhattan.

On March 17, 2020, at 11:27 a.m., as COVID-19 was spreading across the city and employers were evaluating the rapidly changing circumstances and deciding how best to respond, Counterclaimant emailed "HC2 and its agents" and complained that his coworkers were "coming into the office with flu-like symptoms and asked if they could either work remotely or short of that stay at home with pay while still being on the document review." (First Amended Answer and Counterclaims ("Countercl.") ¶ 15, Dkt. No. 74). Counterclaimant had "sat several inches away from the other two reviewers in a small office with no windows." (*Id.* ¶ 13). In response to Counterclaimant's email, an email dialogue ensued between 11:40 a.m. and 1:10 p.m., on March 17, 2020, between HC2 and its Law Firm Customer. (*Id.* ¶¶ 16-21). An HC2 sales manager based in Los Angeles, wrote at 11:55 a.m., "can we fire him? Just a thought." (*Id.* ¶ 18). Counterclaimant was not fired for sending that email. Nor was he singled out in any way.

---

[1] The Amended Counterclaim's allegations are taken to be true for this motion only. HC2 includes only those facts from the Amended Counterclaims pertinent to this Court's analysis given this Court's extensive knowledge of the record.

On the same day, the Law Firm Customer decided not to move to a remote document review, but to suspend the review for the time being. At 1:02 p.m., "Delaney received [another] email stating that remote work was not an option." (Countercl. ¶ 20). At 1:10 p.m., HC2's Denise Asnes emailed Counterclaimant and the other document reviewers working at HC2's offices in Manhattan. (Countercl. ¶ 21). Asnes' email asked the document review team to "gather their belongings and depart the [HC2] facility in an orderly fashion and exit our environment since the project is effectively ending." (*Id.*) Asnes informed the group that HC2 will "continue to monitor the efforts of Congress in helping to off-set the impact of lost-work." (*Id.*) Asnes' email also informed the team that it had sought authorization from the Law Firm Customer to let the team work remotely, and that HC2 would notify Counterclaimant directly if, and when, the review could resume in New York. (*See* Rossi Decl. Ex. A, Dkt. No. 63).[2]

Over the next several weeks, Counterclaimant made a series of escalating demands, including demands made directly to the Law Firm Customer's managing partners and to senior executives of the Corporate Client. On March 30, 2020, HC2's General Counsel wrote to Delaney's "then-settlement counsel" and stated that "Hire Counsel lawfully terminated his employment." (Countercl. ¶ 14).

On April 15, 2020, Counterclaimant filed "a John Doe Complaint" in Florida, in Brevard County, against the Corporate client (but not HC2). (Countercl. ¶ 25). On April 22, 2020, HC2 filed this action along with a motion for a temporary restraining order seeking to enforce Counterclaimant's contractual and ethical obligations to maintain the Corporate Client's confidences. (Dkt. No. 1).

---

[2] Counterclaimant quotes from this email in paragraph 21 of his counterclaims. The Court can therefore consider it as part of this motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.")

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim has facial plausibility when the pleading sets forth factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.*

Complaints require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

## LEGAL ARGUMENT

### POINT I

### NEW YORK LABOR LAW WHISTLEBLOWER AMENDED COUNTERCLAIMS SHOULD BE DISMISSED

The Court's July 17, 2020 decision held that the original NYLL § 740 counterclaim "does not allege any activity, policy or practice of the employer here – HC2 – that was in violation of any law, rule, or regulation." (Transcript of Hearing held July 17, 2020 ("Tr."), at 4:20-22, Dkt. No. 76).[3] Counterclaimant again fails to allege an activity, policy, or practice of HC2 that violated a law,

---

[3] As HC2's original motion to dismiss noted, Section 740 provides, in relevant part, that "[a]n employer shall not take any retaliatory personnel action against an employee because such employee … discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or

rule, or regulation. His inability to allege protected conduct under NYLL § 740 is fatal to the amended counterclaim in Count One.

As an initial matter, the amended counterclaim relies on the same insufficient allegations that the Court previously rejected. Counterclaimant originally alleged that his March 17, 2020 email to HC2 and its Law Firm Customer spurred the alleged retaliation. (*See* Original Counterclaim ¶ 14, Dkt. No. 26). He originally alleged that he reported to HC2 and the Law Firm Customer that his coworkers "were coming into the office with flu-like symptoms" and demanded the ability to "work remotely or [to] stay at home with pay." (*Id.*)

This same March 17, 2020 email remains the sole basis for Counterclaimant's allegations that he engaged in protected activity under NYLL § 740. *Compare* Countercl. ¶ 30 ("On March 16-17, 2020, Delaney observed three workers at HC2's . . . office who were coming into the office with *clear* flu-like symptoms.") (emphasis added), *with* Original Counterclaim ¶ 14 ("On March 17, 2020 Delaney emailed HC2 and the law firm and complained to them that workers were coming into the office with flu-like symptoms and asked if they could stay at home with pay while still being on the document review."). Counterclaimant only adds the speculative adjective, "clear," to his allegation about flu-like symptoms, and a legally irrelevant explanation that he sent his March 17, 2020 email "to bring the unsafe and unhealthy office conditions to [the] urgent attention [of HC2 and the Law Firm Customer]". (Countercl. ¶ 30). He still asked for "remote work or alternatively to stay at home with pay." (*Id.*). Indeed, he annexes his March 17, 2020 email to the amended counterclaim, leaving no doubt this email alone is his purported whistleblower complaint to HC2.

---

regulation which violation creates and presents a substantial and specific danger to the public health or safety." N.Y. Lab. L. § 740(2)(a) (emphasis added); *see also Reyes v. Energy Transp. Corp.*, No. 96-CV-3321 (JSM), 1997 WL 256923, at *4 (S.D.N.Y. May 16, 1997).

Additionally, Counterclaimant still does not allege facts that plausibly show HC2's violation of a law, rule, or regulation. He originally alleged, "HC2 was not maintaining safe and healthy office conditions," despite the spread of coronavirus. (Original Countercl. ¶ 13). He claimed that he "[sat] two feet away" from the other document reviewers "in a small office with no windows." (*Id.*) He alleged that HC2 "simply emailed workers to commute with wipes and to watch President Trump's speech on TV." (*Id.*).

He again alleges nothing more than these same personal grievances, with one deceptive and meaningless adjustment. He claims as before that HC2 implemented "no changes whatsoever to the physical work environment," but now shortens the distance that he sat from his coworkers from "two feet" to "several inches." (*Id.*); *compare id.*, *with* Original Countercl., ¶ 13 ("Delaney sat two feet away from the other two reviews in a small office with no windows."). Yet his March 17, 2020 email still does not report any HC2 activity or practice that could have violated any law, rule, or regulation. His attorney's conjecture that this email "criticized HC2's HR Department's lack of measures to seriously address the coronavirus issues in the office," adds nothing. (Countercl. ¶ 30).

This Court held on July 17, 2020 that "Delaney [did] not identify any law, rule or regulation that the facts he pleads violates." (Tr. at 5:8-9). The same remains true.

Counterclaimant does now allege that HC2 violated "guidance" from the New York City Department of Health ("NYCDOH"), interim guidance from the CDC, Governor Cuomo's March 18, 2020 Executive Order, and the HC2 employment agreement dated December 28, 2016. (*See* Countercl. ¶¶ 36-41). None gives foundation to his Labor Law whistleblower claims.

### C.   Counterclaimant Fails to State a NYLL § 740 Claim.

As an initial matter, Counterclaimant's reliance on the March 18, 2020 Executive Order highlights his desperation to manufacture *any* counterclaim. His contention that "HC2 was ignoring

the governor's executive orders mandating remote work" is disingenuous and meaningless. (Countercl. ¶ 39). The Governor had not yet issued E.O. 202.6 when Counterclaimant wrote his March 17th email. Counterclaimant also does not allege that he made any complaint to HC2 after March 17, 2020.

Turning to the cited NYCDOH guidance and the CDC interim guidance, neither provide any basis for an amended counterclaim.

First, even if HC2 had violated agency guidance (which it did not), it would not matter. Under NYLL § 740(1)(c), "[l]aw, rule or regulation" is defined to "include[] any duly enacted statute or ordinance or any rule or regulation promulgated pursuant to any federal, state or local statute or ordinance." *Id.*

This definition excludes NYCDOH and CDC interim guidance because neither bear force of law to qualify as a "law, rule, or regulation" under NYLL § 740.[4]  *See Segarra v. Fed. Reserve of New York*, 17 F. Supp. 3d 304, 311 (S.D.N.Y. 2014) (subsequent history omitted) ("A 'central distinction' in administrative law is between those agency pronouncements that amount to 'substantive rules' and those that are merely 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'") (citing *Chrysler Corp. v. Brown,* 441 U.S. 281, 301 (1979)). "Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law, do warrant Chevron-style deference." *Christensen v. Harris County*, 529 U.S. 576, 586 (2000). Accordingly, in *Segarra*, the Court found that plaintiff was not a financial whistleblower because an

---

[4] This definition plainly excludes Counterclaimant's HC2 employment contract and E.O. 202.6.  Additionally, Plaintiff's citation in footnote 14 to a Paul Weiss attorney marketing publication dated March 10, 2020 has absolutely no tendency to support his NYLL § 740 claim (or any other claim).

advisory letter (SR 08-08) that plaintiff claimed her employer had violated did not have the force of law. *See Segarra*, 17 F. Supp. 3d at 312-13.

The NYCDOH "guidance" and CDC "interim guidance" encourage employers to "promote" physical distancing and "recommended" – in Counterclaimant's choice of words – the "separating [of] sick employees." (Countercl. ¶¶ 36-37). The plain text of both is clear that neither have legal authority to provide any basis for the NYLL § 740 counterclaim.

Second, it remains utter speculation that HC2 did anything to violate even this advisory guidance. Counterclaimant described the NYCDOH guidance and alleges, in entirely conclusory fashion, that, "HC2 did not do any of this." (Countercl. ¶ 36). Likewise, referring to the CDC interim guidance, he again concludes, "HC2 did not even ask the identity or location of the sick workers in Delaney's complaint but just fired him." (*Id.*).[5] However, Counterclaimant's March 17, 2020 email simply reported his personal opinion that the workplace was not safe and conveyed his request to work from home or be paid to stay home. His speculation of an unsafe workplace is far short of the required notice of an activity, policy, or practice. *See Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 586 (S.D.N.Y. 2019) ("The employee's complaint to the company must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct.") (citing *Webb-Weber* v. *Community Action for Human Services, Inc. et al.*, 15 N.E.3d 1172, 1174 (N.Y. 2014)); *Calabro v. Nassau University Medical Center*, 424 F.Supp.2d 465, 475 (E.D.N.Y. 2006) ("The violation must be an actual violation, and an employee's good faith, reasonable belief that a violation occurred is insufficient.") (citing *Nadkarni v. North Shore–Long Island Jewish Health Sys.*, 21 A.D.3d 354, 355, (2d Dep't 2005)).

---

[5] As discussed, *infra*, however, HC2 sent the entire document review team home within hours of Counterclaimant's email, eliminating the need for social distancing in the workplace.

Third, and furthermore, "the provisions of [Section 740] regarding retaliatory discharge are to be strictly construed." *Cotrone v. Consol. Edison Co. of N.Y., Inc.*, 50 A.D.3d 354, 354 (1st Dep't 2008); *see also Remba v. Fed'n Employment & Guidance Serv.*, 76 N.Y.2d 801, 803 (1990) (affirming dismissal of claim under Section 740 because defendant's conduct "is not the type of violation which creates a substantial and specific danger to the public health or safety") (internal quotation marks omitted). The statute "clearly envisions a certain quantum of dangerous activity before its remedies are implicated." *Peace v. KRNH, Inc.*, 12 A.D.3d 914, 915 (3d Dep't 2004); *see also Pugliese v. Actin Biomed LLC*, Ind. No. 103104/2010, 2012 NY Slip Op 31566, at *7 (N.Y. Sup. Ct., June 7, 2012) (A section 740 claim requires a "quantum of dangerous activity," which is something more than just "'mere speculation' of a public detriment.").

Counterclaimant's report that, in his lay opinion, his co-workers might have had "flu-like" symptoms – speculation itself – in no way conveys that HC2 had an activity, policy or practice in violation of a law, rule, or regulation *which created* a "substantial and specific danger to the public health or safety." NYLL § 740. Although Counterclaimant self-servingly shortens the distance between himself and his co-workers from two feet to "several inches," he nonetheless misrepresents what he actually reported in his March 17, 2020 email. He did not report that the other document reviewers were the allegedly sick employees. *See* Dkt. No. 74-2 (…"there are at least 3 people *in the office* who have flu-like symptoms….") (emphasis added). Moreover, his email indicated that two other document reviewers wore a mask and gloves. *See Id.* ("I wear a mask & gloves but except for my two [redacted] colleagues others are not.") It is wild speculation to suggest that proximity to possibly ill co-workers somewhere in the office created a "quantum of dangerous activity" so serious that it posed a substantial and specific danger to "public health or safety." NYLL § 740 (emphasis added). *See Cotrone*, 50 A.D.3d at 354–55 (concluding that leaving tanker trucks with hazardous

materials unattended on a public street did not create a substantial and specific danger to the public health or safety); *Peace*, 12 A.D.3d at 915–16 (finding allegations that a respiratory therapist documented false respiratory treatment and blood-oxygen level checks that had not in fact been performed "simply insufficient to establish the requisite threat to public health and safety").

Moreover, that HC2 and Law Firm Customer suspended the project literally within hours of Counterclaimant's email completely obviates any "substantial and specific danger to the public health or safety" caused by proximity amongst members of the review team.  NYLL § 740; *see*, *e.g.*, *Cotrone*, 50 A.D.3d at 49 ("Plaintiff pointed to two isolated incidents where these trucks had been left unattended for a short period of time, in the presence of other employees who concededly did not have tanker truck driver training.  Aside from the fact that these incidents led to no adverse consequence, they did not rise to the level of dangerous activity.").

For these reasons, Counterclaimant's reliance on his December 28, 2016 employment agreement ("Agreement") is nonsensical.  He asserts that the Agreement required him to report an unsafe work environment and required employer notice in the event of a separation.  (Countercl. ¶ 41-42).  However, an employment contract between a private employee and his employer has nothing to do with the requisite "threat to public safety" contemplated by Section 740, which "has generally been narrowly construed to apply to the public at large."  *Reyes v. Energy Transp. Corp.*, No. 96-cv-3321 (JSM), 1997 WL 256923, at *4 (S.D.N.Y. May 16, 1997).

Finally, Counterclaimant goes to lengths to assert that his project's suspension was an adverse employment action.[6]  He is wrong, but in any event, an adverse action is only one element

---

[6] HC2 does not concede that Counterclaimant suffered an adverse employment action.  Counterclaimant still fails to plausibly allege that HC2 took adverse action against him as a result of his March 17, 2020 email.  First, he again cherry-picks from Denies Asnes' email response, sent March 17, 2020, 1:10 p.m.  As HC2 pointed out in its original motion to dismiss, Ms. Asnes' email reveals that HC2 did not "terminate" Counterclaimant, that it instead advised him that the document review had been suspended in New York, that it had sought authorization for Counterclaimant to work remotely, and that HC2 would notify Counterclaimant directly if, and when, the review could resume in New York.  (*See* Rossi Decl. Ex. A, Dkt. No. 63).  Because the document from which Counterclaimant quotes contradicts

of a whistleblower retaliation claim; the NYLL § 740 claim fails because he did not engage in protected activity. *See*, *e.g.*, *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013). The sufficiency of allegations concerning causation and an adverse employment action are therefore legally irrelevant.

Therefore, for all of the foregoing reasons, this Court should dismiss Counterclaimant's NYLL § 740 amended counterclaim.

### D.   The NYLL § 215 Counterclaim Should be Dismissed.

Counterclaimant's NYLL § 215 claim should also be dismissed – for two reasons. First, as the Court held on July 17, 2020, Counterclaimant failed to plausibly allege a violation of NYLL § 740, a necessary element to a § 215 claim. (Tr. at 5:10-19). Here, because the NYLL § 740 claim fails, so too must his NYLL § 215 claim.

Second, the claim is barred by his NYLL § 740 claim. NYLL § 740(7) provides that "the institution of an action in accordance with [Section 740] shall be deemed a waiver of the rights and remedies available under any other . . . law, rule or regulation." *See Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 274 (S.D.N.Y. 2001). This waiver provision has most reasonably been interpreted to operate to "waive[] . . . 'other legal rights and remedies that protect

---

his allegations, his allegations cannot be accepted as true and the document's plain language controls. *See Poindexter v. EMI Record Grp. Inc.*, No. 11-CV-559 (LTS)(JLC), 2012 WL 1027639, at *2). Contrary to Counterclaimant's allegations, HC2 responded to his complaint about the conditions in the office by asking all three contract attorneys working on the review – not only Counterclaimant – to leave the premises and by promising to follow up once remote work was approved or the review resumed in New York.

Second, the Court should disregard Counterclaimant's reliance on the March 30, 2020 email from Stephanos Zannikos to "Delaney's then-settlement counsel." (Countercl. ¶ 24). "Settlement discussions are inadmissible to show fault under Fed. R. Evid. 408, and accordingly may be stricken from a Complaint as immaterial and potentially prejudicial." *Smith v. New Line Cinema*, No. 03 Civ. 5274 (DC), 2004 WL 2049232, at *5 (S.D.N.Y. Sept. 13, 2004) (Chin, J.) (citing *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992)); *see also Foster v. WNYC – TV*, No. 88 Civ. 4584 (JFK), 1989 WL 146277, at *6 (S.D.N.Y. Nov. 20, 1989) (Inclusion of letters of settlement as exhibits in motion papers "clearly violates" Fed. R. Evid. 408 such that "at the conclusion of this action, if defendant WNYC wishes to so move, the Court will entertain a motion pursuant to Fed. R. Civ. P. 11 against plaintiff for this violation of Rule 408.").

against the same wrong that the statute itself prohibits.'" *Barber v. Von Roll U.S.A., Inc.*, No. 1:14-CV-907 MAD/TWD, 2015 WL 5023624, at *6 (N.D.N.Y. Aug. 25, 2015) (citing *Collette*,132 F. Supp. 2d at 274 and other cases).

Counterclaimant's § 215 claim is unquestionably premised on the same allegations as is his NYLL § 740 claim. (*See* Countercl. ¶ 36-37). Therefore, the NYLL § 215 counterclaim is barred by the election of remedies provision of NYLL § 740(7).

## POINT II

## PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONFIDENTIAL RELATIONSHIP

This Court held that the original counterclaim failed to allege facts making it plausible "that HC2 disclosed confidential information in violation of a duty about Delaney to the other side." (Tr. at 6:4-6). Counterclaimant now repeats the same fanciful allegation that HC2 disclosed his identity "to the other side," asserts that his resume was posted to the public docket during the preliminary injunction briefing, and claims HC2 "exposed" him as the John Doe plaintiff in the Florida John Doe Complaint. The amended counterclaim is as meritless as before. He fails to plausibly allege a confidential relationship and any actionable breach by HC2.

First, Counterclaimant supplies no facts plausibly showing how HC2 disclosed his identity to the "other side." His allegation that he had received an email from people who could only have known about him "by a disclosure from [HC2]" (Countercl. ¶ 47) is utter speculation that deserves no credit. *See*, *e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide grounds upon which their claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555); *Taboola, Inc. v. Ezoic Inc.*, 2020 WL 3965308, *6 (S.D.N.Y.

Feb. 21, 2020) ("[W]hile well-pleaded factual allegations must be assumed true for purposes of deciding a motion to dismiss under Rule 12(b)(6), the Court need not credit speculative inferences . . . .").

Second, as originally noted by HC2's initial motion to dismiss, the "personal information" at issue, including his identity, is not protectable confidential information. *See McGhan v. Ebersol*, 608 F. Supp. 277, 285 (S.D.N.Y. 1985) (dismissing claim for compensation for breach of a confidential relationship due to plaintiff's failure to allege that his ideas were both novel and concrete). For the same reason, the allegedly improper filing of his resume fails to state a claim. Among other reasons, his resume is devoid of even any personal identifiable information requiring redaction under Fed. R. Civ. P. 5.2, which is limited to social security numbers, birth dates, the name of individuals known to be minors, and financial account numbers. In addition, Counterclaimant has failed to allege any injury from such disclosure. *See Lynch v. Johnson*, No. 652761/2015, 2018 WL 6181300, at *4 (N.Y. Sup. Ct. Nov. 27, 2018) (finding plaintiff failed to show how defendant's conduct resulted in an injury in fact to confer standing).

Finally, counterclaimant's assertion is frivolous that HC2 "exposed" him as the Florida *John Doe* plaintiff. While counterclaimant may have preferred to proceed anonymously in that action, he had no right to remain anonymous. In fact, Counterclaimant's use of a pseudonym in that action was impermissible under Florida law. In particular, Florida Rule of Civil Procedure P. 1.100(c)(1) requires that all papers filed in an action "indicate clearly . . . the party requesting . . . relief." While Florida's legislature has exempted some classes of people from that requirement and allowed them to proceed anonymously (e.g., minors seeking to avoid parental notice of an abortion, Fl. Stat. § 390.01114(4)(a)), the legislature has not created an exception that would reach Counterclaimant. Furthermore, Counterclaimant's desire for anonymity in Florida could in no

way interfere with HC2's ability to enforce its rights in this action, including its right to seek injunctive relief to enforce Counterclaimant's contractual obligations and ethical duties as a lawyer to protect the confidentiality of the Corporate Client's information.

For the foregoing reasons, Count Two should be dismissed.

## POINT III

## THE COUNTERCLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED

The amended counterclaim for Intentional Infliction of Emotional Distress ("IIED") also fails for the same reasons as before.[7] This Court found it failed because Counterclaimant's "allegations [were] conclusory and fail to allege extreme conduct." (Tr. 6:15-17). In so holding, the Court further took note that HC2's litigation statements are absolutely privileged. (*Id.*)

The amended counterclaim repeats the same empty allegations from before. Counterclaimant asserts that HC2's "first extreme and outrageous action was to allow the disclosure of his confidential and personal information to opposing lobbyists" in a foreign country. (Countercl. ¶ 54). Counterclaimant supplies no facts rendering this allegation plausible in the slightest. As before, this allegation fails to state an IIED claim. *See Iqbal*, 556 U.S. at 678.

Counterclaimant also again alleges an IIED claim based upon his alleged termination of employment to "preempt a lawsuit from him with baseless accusations pulled out of their hat." (Countercl. ¶ 55). However, HC2's litigation statements are absolutely privileged. *See, e.g., Brady v. John Goldman, Esq.*, No. 16-CV-2287, 2016 WL 8201788, *8 (S.D.N.Y. Dec. 5, 2016)

---

[7] IIED is "a highly disfavored tort under New York law," and such claims generally "do not survive dispositive motions." *Hallgren v. Bell Atlantic Corp.*, No. 99 Civ. 11937, 2000 WL 726496, at *3 (S.D.N.Y. May 30, 2000). The conduct alleged must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985).

("[C]ases relying on statements made in the context of adversarial litigation have been summarily dismissed under [the IIED] standard."). For the same reasons, Counterclaimant's additional allegation that HC2's "third act" in filing this lawsuit fails. (Countercl. ¶ 56). *Id.* Finally, his allegation of "outrageous conduct" for filing his resume on the docket as part of preliminary injunction briefing fails, as that activity occurred as part of this litigation. *Id.*; *see generally Hallgren v. Bell Atlantic Corp.*, No. 99 Civ. 11937, 2000 WL 726496, at *3 (S.D.N.Y. May 30, 2000).

Lastly, Counterclaimant supplies a rambling narrative that fails to state a claim for IIED. (*See* Countercl. ¶¶ 55, 58-59). He mistakenly alleges that HC2 is "collaterally" litigating in Florida when, again, HC2 is not a party to that action, and, in any event, that is litigation *he* commenced. (Countercl. ¶ 55); *see also, infra*, Point IV. He also alleges that HC2 is tracking Counterclaimant with investigators in Nebaskra, and, at his hotel, where he received a "suspicious phone call." (Compl. ¶ 58). He claims that HC2 placed him on a "Do Not Reuse" blacklist that "preclude[s] him from future document review work. (Compl. ¶ 59).

These diffuse and paranoid allegations, supported only by attorney conjecture and speculatively attributed to HC2, fall far short of a malicious campaign, and fail to state a claim under the "rigorous and difficult to satisfy" IIED standard. *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). These allegations are fiction, and speculation.

Therefore, for the foregoing reasons, the IIED claim should be dismissed.

## POINT IV

## THE COUNTERCLAIM FOR ABUSE OF PROCESS FAILS

In an effort to salvage his abuse of process counterclaim, Counterclaimant has asserted a few additional allegations, but his efforts fall well short once again. "To plead a claim of abuse of

process under New York law, Plaintiff must plead . . . that there was (1) regularly issued civil process, (2) an intent to do harm without excuse or justification, (3) use of the process in a perverted manner to obtain a collateral objective, and (4) actual or special damages." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 355 (S.D.N.Y. 2014) (internal quotations omitted).

While Counterclaimant now makes several sensational allegations designed to give the false impression that he was subject to abuse of process, his meager factual allegations separated from hyperbole demonstrate that he has not alleged any facts to satisfy the abuse of process pleading standard. Defendant's counterclaim is founded entirely on the following two allegations: (1) HC2's request for injunctive relief, which was allegedly "designed to intimate" him, "force him to litigate in multiple jurisdictions, incur costs," and force him not to pursue "legitimate claims," and (2) HC2's "continuation of the case," in particular allegedly falsely representing the Court that Counterclaimant "extorted" it to obtain an *ex parte* TRO, supposedly coordinating with the Corporate Client's counsel in Florida to obtain a finding that Plaintiff sold trade secrets, and "unethically" exposing him as the *John Doe* in the Florida Action. (Countercl. ¶¶ 67, and 68-71, respectively).

As a matter of law, service of a complaint and summons, even with malicious intent, is insufficient to support a cause of action for abuse of process. *See Tenore v. Kantrowitz, Goldhamer & Graifman, P.C.*, 76 A.D.3d 556, 557 (2010). Rather, "the gist of the tort is the improper use of process *after* it is issued by an unlawful interference with one's person or property." *Id.* (emphasis added); *see also O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 434 (S.D.N.Y. 2004) ("Numerous other courts have also held that the mere issuing of process cannot give rise to an abuse of process claim, since the unlawful pursuit of a collateral objective must occur after the

process is issued."). Therefore, any claim by Counterclaimant that HC2 instituting the Complaint is abuse of process fails as a matter of law.

Counterclaimant also fails to allege sufficient facts to demonstrate that the Complaint was improperly used *after* it was brought. Most notably, the allegation that the suit was instituted to gain an advantage in the pending Florida Action does not constitute a sufficient basis for maintenance of the action. *See Tenore*, 76 A.D.3d at 557 (dismissing abuse of process counterclaim where counterclaimant alleged the litigation was instituted with the "objective of inflicting economic harm and obtaining a tactical advantage" in another pending action and reasoning "a malicious motive alone does not give rise to a cause of action to recover damages for abuse of process"); *see also Allen v. Antal*, 2014 WL 2526977, at *16 (S.D.N.Y. Mar. 13, 2014) ("Neither retaliation nor a malicious motive . . . is a sufficient collateral objective to satisfy that element of a cognizable malicious abuse of process claim."). Again, HC2 is not a party to the Florida Action.

Additionally, any statements in HC2's Complaint or in a judicial proceeding are absolutely privileged and the privilege is not lost by the alleged presence of malice; as a result, Counterclaimant's allegations that HC2 "falsely misrepresented" information to the Court (which it did not) are also insufficient to maintain a cause of action. *See Yukos Capital S.A.R.L. v. Feldman*, 2016 WL 4940200, at *4 (S.D.N.Y. Sep. 14, 2016) ("The law of New York for well over one hundred years has provided absolute immunity from liability for defamation" for written statements made by attorneys in connection with a court proceeding, when those statements are "pertinent to the questions involved."); *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 48 (S.D.N.Y. 2015) ("[S]tatements made in the course of legal proceedings are absolutely

17

privileged if pertinent to the litigation."); *Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007) (same), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015).

Finally, abuse of process requires "the deliberate premeditated infliction of economic injury without economic or social excuse or justification" and, "therefore, the expense arising from the defense of a lawsuit is an insufficient injury to sustain the cause of action." *Stroock & Stroock & Lavan v. Beltramini*, 157 A.D.2d 590, 591 (1990). Counterclaimant falls far short of these requirements.

Therefore, for the foregoing reasons, Count Four fails and should be dismissed.

## CONCLUSION

For all the foregoing reasons, Plaintiff-Counter Defendant HC2, Inc. respectfully requests that the Court dismiss Defendant's amended counterclaims in their entirety for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6), along with such other relief as this Court deems just and proper.

Dated: August 17, 2020

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys for Plaintiff-Counter Defendant
HC2, Inc.*

By:     *s/ Michael Nacchio*
        Michael Nacchio
        Valerie L. Weiss

43906285.1

18