**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------

HC2, INC.,

                      Plaintiff-Counter
                      Defendant,

    v.

ANDREW DELANEY,

                      Defendant-Counter
                      Claimant.

------------------------------------------------------

Civil Action No.: 20-cv-3178 (LJL)

**ORAL ARGUMENT REQUESTED**

---

**REPLY BRIEF IN SUPPORT OF PLAINTIFF-COUNTER DEFENDANT'S MOTION
TO DISMISS DEFENDANT COUNTER CLAIMANT'S AMENDED COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

                              OGLETREE, DEAKINS, NASH,
                              SMOAK & STEWART, P.C.
                              10 Madison Avenue, Suite 400
                              Morristown, New Jersey 07960
                              Tel: (973) 656-1600
                              Fax: (973) 656-1611
                              *Attorneys for Plaintiff-Counter Defendant*

On the Brief:
Michael Nacchio, Esq.
Valerie L. Weiss, Esq.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................... 2

   I.    THE NYLL §§740 AND 250 RETALIATION CLAIMS FAIL .................................. 2

   II.   THE BREACH OF CONFIDENTIAL RELATIONSHIP CLAIM FAILS ................... 5

   III.  THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS .. 7

   IV.  THE ABUSE OF PROCESS CLAIM FAILS ........................................................... 9

CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Brady v. John Goldman, Esq,*
   2016 WL 8201788 (S.D.N.Y. Dec. 5, 2016) .......................................................................8

*Gallop v. Cheney,*
   642 F.3d 364 (2d Cir. 2011) ...............................................................................................5

*Hallgren v. Bell Atlantic Corp.,*
   2000 WL 726496 (S.D.N.Y. May 30, 2000) .......................................................................7

*In re Kingate Mgmt. Ltd. Litig.,*
   746 F. App'x 40, 43 (2d Cir. 2018) .....................................................................................2

*Knighton v. Municipal Credit Union,*
   2009 WL 289668 (N.Y. Sup. Ct. Jan. 12, 2009) .................................................................4

*Martin v. Citibank, N.A.,*
   762 F.2d 212 (2d Cir. 1985) ...............................................................................................7

*O'Bradovich v. Village of Tuckahoe,*
   325 F. Supp. 2d 413 (S.D.N.Y. 2004) ...............................................................................10

*Reyes v. Energy Transp. Corp.,*
   1997 WL 256923 (S.D.N.Y. May 16, 1997) .......................................................................3

*Rodgers v. Lenox,*
   211 A.D.2d 248 (App. Div 1995) ........................................................................................4

*Taboola, Inc. v. Ezoic Inc.,*
   2020 WL 3965308 (S.D.N.Y. Feb. 21, 2020) .....................................................................5

*Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals,*
   812 F.Supp.2d 357, 363 n. 9 (S.D.N.Y.2011) ................................................................3, 5

*Williams v. U.S. Info. Sys., Inc.,*
   2013 WL 214318 (S.D.N.Y. Jan. 17, 2013) ...............................................................3, 4, 5

STATUTES

N.Y. Exec. Law § 29-a(4) ...........................................................................................................4

NYLL § 740.................................................................................................................................3

NYLL § 740(1)(c) .......................................................................................................................4

**OTHER AUTHORITIES**

"*Absolute Immunity from Civil Liability; Lessons for Litigation Lawyers*," 31
    Pepp. L. Rev. 915, 928 (2004) .......................................................................................... 9, 10

Executive Order 202.4 ................................................................................................................4

Executive Order 202.7 ................................................................................................................4

## PRELIMINARY STATEMENT

HC2 established in its opening brief that the amended counterclaims must be dismissed pursuant to Rule 12(b)(6) because they to do not contain sufficient factual allegations to state a plausible claim to relief. The opposition largely forgoes legal analysis in favor of a scattershot of arguments, ad hominem attacks, and attorney-say so. As a result, Counterclaimant essentially asks the Court to disregard established precedent and rules of pleading in the hope of distracting from his own liability in this action. None of his arguments hold up to scrutiny. In fact, many strain logic in obvious ways. For example, Counterclaimant argues that he stated a valid retaliation claim under Labor Law ("NYLL") § 740 by asserting that HC2 unlawfully terminated him, in part, for emails he sent *after* his alleged termination. And in his quest to find some law, rule, or regulation relating to public health that HC2 supposedly violated before his termination, Counterclaimant cites an Executive Order of Governor Cuomo that applies only to local governments and another order that was not issued until *after* his alleged termination.

The opposition's arguments are no better when it comes to the other counterclaims. For example, in the claim for breach of confidential relationship, Counterclaimant blames HC2 for filing his resume on the public docket, but he is unable to identify anything confidential in that document and he also overlooks the fact that he passed up the opportunity to ask that his resume be sealed before HC2 filed it. In other claims, Counterclaimant openly tries to manufacture claims based upon litigation activity that the Court has already deemed privileged and cannot give rise to a claim.

Fatal deficiencies like these pervade both the opposition and the amended counterclaims. Now that Counterclaimant has failed to state a claim in his second attempt, the Court should dismiss his amended counterclaims with prejudice.

1

**ARGUMENT**

### I.     THE NYLL §§740 AND 215 RETALIATION CLAIMS FAIL

HC2's opening brief demonstrated that the amended counterclaims for retaliation were insufficient under both NYLL § 740 and NYLL § 215.  The opposition only addresses NYLL § 740, conceding through silence that the claim under NYLL § 215 should be dismissed.  *See In re Kingate Mgmt. Ltd. Litig.*, 746 F. App'x 40, 43 (2d Cir. 2018) (affirming holding that plaintiffs waived an argument by "failing to raise it in response to Defendants' motion to dismiss").

While the opposition addresses NYLL § 740, it does nothing to save that claim from dismissal.  It first attempts to contest HC2's showing that the amended counterclaim's allegations add nothing of substance to what the Court previously dismissed because Counterclaimant still has not made a plausible showing that HC2 violated a law, rule, or regulation.  (HC2 Br. at 4-6).  The opposition argues that this comparison is inappropriate because the Court supposedly did not "state 'insufficient allegations'" as the basis for dismissal.  (Opp. ¶ 20).  Not so.  The Court held that Counterclaimant "must allege facts that would violate a law, rule, or regulation," and explained that, "[i]n his brief, Delaney [did] not identify any law, rule, or regulation that the facts he pleads violates." Transcript of Hearing held July 17, 2020 ("Tr."), at 5:6-9, Dkt. No. 76.

Just as before, the thrust of this claim is that Counterclaimant was fired in retaliation for sending the March 17 email in which he reported that some of his co-workers were displaying flu-like symptoms and asked to either work remotely or be paid to stay at home.  (Counterclaim ¶¶ 22-23).  That email does not assert that HC2 did anything in violation of a law, rule, or regulation. Tr. at 4:20-22.  The opposition concedes as much but attempts to gloss over that deficiency by asserting that Counterclaimant "did not have the leisure to make additional reports" because he was supposedly terminated on the day of his email.  (Opp. ¶¶ 22-23).  According to the opposition,

it is enough that, after he was terminated, Counterclaimant "continued to complain" to the Corporate Client, Law Firm Customer, and HC2 "[f]rom March 17, 2020 – April 14, 2020." (*Id.*) That argument does not follow logically.   HC2 obviously could not have retaliated against Counterclaimant by firing him on March 17 for complaints he made after that date.

The opposition fares no better with regard to the ever-changing list of things Counterclaimant tries to say HC2 violated.  Although the amended counterclaim alleged that HC2 violated obligations in his December 28, 2016 employment agreement (Counterclaim ¶¶ 41-42), the opposition abandons those allegations, asserting that Counterclaimant did not actually "invoke" them, (Opp. ¶ 28), now that HC2 has shown that a purported violation of a private employment agreement does not give rise to liability under NYLL § 740.  (HC2 Br. at 10).  Instead, Counterclaimant argues that his employment agreement is relevant because it "cross-reference[d] the handbook and rules…which incorporat[e] … federal and state law applicable to all workers." (Opp. ¶ 28).  But a private company's "handbook," just like its employment agreements, cannot support a NYLL § 740 claim.  *See, e.g.*, *Reyes v. Energy Transp. Corp.*, 1997 WL 256923, at *4 (S.D.N.Y. May 16, 1997) (on the threat to public safety requirement).

The opposition's arguments about Governor Cuomo's COVID 19-related Executive Orders and various agency guidance are also flawed.  For example, Counterclaimant asserts for the first time that HC2 violated two executive orders relating to remote work and occupancy, E.O. 202.4 and E.O. 202.7.  The Court should reject those arguments out of hand because neither order is even mentioned in the amended counterclaims.  *See Williams v. U.S. Info. Sys., Inc.*, 2013 WL 214318, at *4 n.4 (S.D.N.Y. Jan. 17, 2013) (court may not consider new factual allegations made in motion to dismiss briefing); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812

F.Supp.2d 357, 363 n. 9 (S.D.N.Y.2011) (same).  In any event, an executive order is not a "duly enacted" law, rule, or regulation under NYLL § 740(1)(c).  *See* N.Y. Exec. Law § 29-a(4).

Furthermore, even if they were properly before the Court, neither one is germane.  E.O. 202.4 expressly states that it applies only to "local governments."  E.O. 202.7 was issued March 19, 2020—two days after Counterclaimant was allegedly terminated.

The opposition also makes no meaningful response to HC2's demonstration that the February 14, 2020 "guidance" from the NYCDOH and the March 2, 2020 "interim guidance" from the CDC lack force of law.  (HC2 Br. at 7-8).  Without any authority, and unable to distinguish HC2's settled authority that agency guidance lacks force of law, Counterclaimant declares that these pieces of guidance are "detailed and prescriptive" and "mandatory" under the New York executive orders.  But that is not what they say, and, as demonstrated, they lack force of law.

Finally, the two cases Counterclaimant cites as the sole caselaw support for his counterclaim are easily distinguished as each one involved alleged retaliation after the plaintiff reported violations of law to regulators.  *See Knighton v. Municipal Credit Union,* 2009 WL 289668 (N.Y. Sup. Ct. Jan. 12, 2009) (retaliation claim allowed to proceed where plaintiff was terminated after reporting a statutory violation to OSHA);[1] *Rodgers v. Lenox*, 211 A.D.2d 248, 249-50 (App. Div. 1995) (permitting whistleblower claim where paramedic alleged he was fired in retaliation for testifying to investigators from the State Department of Health about his belief that other paramedics had "violated various laws" in covering up a patient's death and based on uncontested facts showing violations of "numerous laws").  Counterclaimant has not alleged anything similar.

---

[1] Counterclaimant did not allege HC2 violated the OSHA "General Duty Clause." *See supra Williams.*

## II.      THE BREACH OF CONFIDENTIAL RELATIONSHIP CLAIM FAILS

HC2's opening briefed showed that Counterclaimant did not plausibly allege facts showing a confidential relationship or an actionable breach. The opposition largely rehashes the previously dismissed allegations about a "suspicious email" that Counterclaimant received on November 28, 2019, which he continues to couple with the speculative leap that HC2 must have disclosed his identity to third parties. *See* Tr. at 5:22-24.

"Courts have no obligation to entertain pure speculation and conjecture." *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011); *see Taboola, Inc. v. Ezoic Inc.*, 2020 WL 3965308, *6 (S.D.N.Y. Feb. 21, 2020) (same). That is, however, all Counterclaimant offers. Among other missing details, the amended counterclaim does not identify the third parties to whom such improper disclosures were allegedly made, any related dates, methods, or means by which HC2 "misused information" about Counterclaimant. Nor does it allege a plausible reason why HC2, which has consistently attempted to vigorously protect its and the Corporate Client's confidentiality on this matter, would do this.

The little additional information Counterclaimant offers amounts to attorney conjecture about the underlying matter that Counterclaimant worked on. Much of it, such as information in paragraphs 41-42 of the opposition, are not found in the amended counterclaim which Counterclaimant attempts to mask with empty promises about what he will "introduce" or "show at trial." Those assertions have no bearing on this motion, which is limited to allegations made in the amended counterclaim. *See Williams,* 2013 WL 214318 at *4, n.4; *Tomlins* 812 F.Supp.2d at 363 n. 9. Moreover, those assertions add nothing to support his speculation that HC2 shared information about him with anyone.

5

Counterclaimant's allegations about HC2's filing of his resume in this action are also insufficient. His chief complaint is that HC2 filed his resume on the public docket as an Exhibit 1 to the Declaration of Michael R. Heysion (Dkt. No. 44), which HC2 submitted in support of its motion for a preliminary injunction. Those allegations fail at the start based on Counterclaimant's inability to identify any confidential information in his resume.[2] Moreover, Counterclaimant's belated assertions of privacy are not supported by his past litigation conduct. In accordance with the Court's orders, the parties exchanged their supporting declarations prior to filing them so that each would have the opportunity to move to seal information in the other's submissions. *See* Order Dated May 20, 2020 (Dkt. No. 41) (directing the parties to "meet and confer regarding their respective submissions" and that "[s]hould either Party believe that any part of a filing should be made under seal even if the Court has not previously ordered that such part be sealed then that part should be redacted in the public filing" and "[t]he Party seeking confidentiality shall file a letter supporting such request in conformance with the rules of this Court"). Counterclaimant never moved to seal his resume, presumably because he recognized that there was no basis for doing so. Having not done so, Counterclaim cannot reasonably blame HC2 for not filing a motion to seal.

The opposition's arguments that this case impaired Counterclaimant's ability to remain anonymous as the John Doe plaintiff in the Florida Action are also insufficient. HC2 is not a party to the Florida Action. In filing this action to protect its rights, HC2 had no obligation to sue Counterclaimant anonymously. Moreover, as shown in HC2's opening brief, Counterclaimant had no right to anonymity under the Florida rules that govern the Florida Action and had improperly

---

[2] Unable to identify any confidential information, Counterclaimant stops at the surface of HC2's designation of this benign document as confidential during an expedited document production. His assertions that HC2 violated the protective order by filing his resume, which came from HC2's files, do not hold up to the terms of the order. *See* Protective Order (Dkt. No. 22) ¶ 11 ("Nothing contained in this Protective Order, however, will affect or restrict the rights of any person with respect to its own documents or information produced in this action.").

sued under a pseudonym.  (HC2 Br. at 13-14)  The opposition responds with arguments about the "Eleventh Circuit's policy."  (Opp. ¶ 47).  But the Eleventh Circuit's purported policies have no bearing on the Florida Action, which took place in a Florida state court.

Finally, the opposition also does not meaningfully respond to HC2's showing that the amended complaint does not allege facts to plausibly show injury in fact as necessary to confer standing.  (HC2 Br. at 13).  The conclusory statement that Counterclaimant "has a right to privacy" does not qualify, particularly insofar as he has not established any such right with respect to the information at issue.  (Opp. ¶ 46).  The same is true of the argument that HC2's identification of Counterclaimant as the John Doe plaintiff, or the filing of his resume, may harm Counterclaimant's professional reputation.  While the underlying facts of this case may well affect Counterclaimant's reputation, there is no plausible basis to assert that the disclosures at issue did so.

## III.    THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS

The opposition only serves to confirm that like its predecessor, the amended IIED counterclaim's allegations are "conclusory and fail to allege extreme conduct."  Tr. 6:15-17;  *see Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985) (IIED requires conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society").  The opposition tries to pretend otherwise by doubling down on the same allegations without any meaningful factual support and without citation to any supporting legal authority.  Counterclaimant's inability to muster any case support is not surprising because IIED is "a highly disfavored tort under New York law" and such claims generally "do not survive dispositive motions."  *Hallgren v. Bell Atlantic Corp.,* 2000 WL 726496, at *3 (S.D.N.Y. May 30, 2000).

In any event, nothing in the opposition's list of alleged acts shows a plausible entitlement to relief under Second Circuit's high standard. In fact, the bulk of it consists of recast allegations from other claims that are no less deficient when viewed through an IIED lens:

- The first alleged act is HC2's purported disclosure of Counterclaimant's information to "the other side" of a document review matter. Those allegations are the product of open speculation that should not be credited. *See supra* at 5.

- The second alleged act is HC2's supposed "terminat[ion of] Delaney for making a public health and safety complaint about the conditions at is 360 Lexington Avenue" office. (Opp. ¶ 51). As shown above, Counterclaimant did not make a public health and safety complaint or sufficiently allege retaliation. *See supra* at Sect. I. Moreover, his allegations ignore that he was not singled out or treated differently than the other New York document reviewers. As COVID-19 was spreading across New York, HC2 suspended the entire review from its office in New York. (*See* Counterclaim ¶ 21).

- The fourth alleged act is HC2's filing of "Delaney's unsealed resume on the public docket in this case." As shown above, Counterclaimant has not identified anything confidential in that document and HC2's filing can hardly be considered extreme and outrageous when Counterclaimant chose not to file his own motion to seal. *See supra* at 6.

If anything, the other alleged acts are even farther away from meeting the Second Circuit's standard. For example, Counterclaimant's third alleged act—HC2's filing of this lawsuit to purportedly ruin his professional reputation—is inconsistent with the facts of this case, which reflect HC2's genuine pursuit of legal claims to protect its legal rights. In addition, that allegation relates to protected litigation activity that cannot support a claim. *See* Tr. at 7:11-14 (holding that HC2's "request for the TRO in this case" was "absolutely privileged"); *Brady v. John Goldman,*

*Esq*, 2016 WL 8201788, at *8 (S.D.N.Y. Dec. 5, 2016) ("Cases relying on statements made in the context of adversarial litigation have been summarily dismissed under [the IIED] standard.") (citing *Kaye v. Trump*, 58 A.D.3d 579, 579 (1st Dep't 2009) (statements in adversarial litigation "cannot provide a foundation for the claim")).   While the opposition asserts otherwise, Counterclaimant was tellingly unable to cite any supporting legal authority.  (Opp. ¶ 52).

The fifth alleged act—that HC2 supposedly "harass[ed] Delaney and interfer[ed] with his right to peace and quiet"—is based on the allegation that HC2 supposedly had someone call the front desk of Counterclaimant's hotel in Nebraska to ask if he was there and then hang up. (Counterclaim ¶ 58). Even putting aside the clear speculation that any such call was made by HC2, a phone call like that is hardly extreme and outrageous conduct.

The same is true of the sixth act—Counterclaimant's speculation that HC2 placed him on an industry "Do Not Reuse" list because other agencies have not contacted him for work.  (Opp. ¶ 54; Counterclaim ¶ 59). Notwithstanding the fact that it is pure speculation that an industry "Do Not Reuse" list even exists, it is not surprising given the facts of the case—which include Counterclaimant disclosing confidential information obtained from HC2's Law Firm Customer and then suing the Corporate Client—that other agencies have not contacted him.

## IV.    THE ABUSE OF PROCESS CLAIM FAILS

The opposition fails to supply any legal authority to overcome the fact that HC2's statements in the Complaint, and in connection with its motions for a temporary restraining order of preliminary injunction, are privileged and cannot support his claim for abuse of process. *See, e.g.*, Tr. at 7:13; Anenson, T., "*Absolute Immunity from Civil Liability; Lessons for Litigation Lawyers*," 31 Pepp. L. Rev. 915, 928 (2004) (collecting cases). Nevertheless, Counterclaimant argues that the "abuse of process was the . . . filing [of this action] when [HC2] knew Delaney was

not" in New York, and "suing him in New York when there was a pending case in Florida . . . to obtain findings of fact that Delaney breached confidentiality and stole trade secrets." (Opp. ¶ 57).[3]

Moreover, "the gist of the tort is," not the filing of an action, but "the improper use of process after it is issued by an unlawful interference with one's person or property." *Id.*; *see also O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 434 (S.D.N.Y. 2004) ("[T]he mere issuing of process cannot give rise to an abuse of process claim, since the unlawful pursuit of a collateral objective must occur after the process is issued."). Counterclaimant has not plausibly alleged that HC2 unlawfully used process to pursue a collateral objective.

He speculatively assumes that HC2 is working in concert with the defendants in the Florida case to obtain a finding that Counterclaimant stole trade secrets. (Opp. ¶¶ 56-59). HC2 is not a party to the Florida Action, but understands that no defendant in that action has asserted *any* counterclaims in that action (for misappropriation of trade secrets or otherwise). In any event, events in that action are no basis to assert that HC2 has abused process in this action.

Nor is the fact that news outlets over which HC2 has no control have reported on the Florida Action or this case. And the argument that HC2 sent a letter to Counterclaimant's counsel, or its speculation that HC2 had people call the front desk of Counterclaimant's hotel, do not plausibly show an abuse of process or an effort to pursue an inappropriate collateral objective.

## CONCLUSION

For all the foregoing reasons, HC2 respectfully requests that the Court dismiss Counterclaimant's amended counterclaims with prejudice.

---

[3] The opposition's argument that HC2 should have filed suit in Florida does not stand up to scrutiny. Counterclaimant worked for HC2 in New York, he is a New York resident, he is a member of the New York bar, and this Court has jurisdiction over the matter. HC2 had no obligation to bring suit in Florida because he sued someone else there.

Dated:  September 8, 2020

Respectfully  submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys for Plaintiff-Counter Defendant
HC2, Inc.*

By:     <u>*s/ Michael Nacchio*</u>
        Michael Nacchio
        Valerie L. Weiss