**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------- :

HC2, INC.,                                     :        Civil Action No.: 20-cv-3178 (LJL)

            Plaintiff,      :

                                           :        **ORAL ARGUMENT REQUESTED**

v.                                             :

ANDREW DELANEY,                                :

            Defendant.     :

                                           :

---------------------------------------------- :

---

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)

---

                                  **OGLETREE, DEAKINS, NASH,**
                                  **SMOAK & STEWART, P.C.**
                                  10 Madison Avenue, Suite 400
                                  Morristown, New Jersey 07960
                                  Tel: (973) 656-1600
                                  Fax: (973) 656-1611
                                  *Attorneys for Plaintiff*

On the Brief:
Michael Nacchio, Esq.
Valerie L. Weiss, Esq.

## <u>TABLE OF CONTENTS</u>

PAGE

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................. 6

    I.     PLAINTIFF'S "NERVE CENTER" IS CHICAGO, ILLINOIS .................................... 6

        A.  Legal Standard for Determining a Corporation's Principal Place of Business............... 6

        B.  HC2's Principal Place of Business is in Chicago, Illinois, Where Its
            "Nerve Center" Is Located................................................................................................ 8

        C.  Defendant's References to Other Court Complaints, State Filings, and "Additional
            Evidence" Do Not Negate Plaintiff's Competent Proof of Diversity Jurisdiction ........ 11

    II.    PLAINTIFF MEETS THE AMOUNT IN CONTROVERSY REQUIREMENT,
          AND THEREFORE JURISDICTION EXISTS PURSUANT TO
          28 U.S.C. §1332(a)(1)................................................................................................... 15

    III.   THE TECHNICAL OVERSIGHT OF LOCAL RULE 26.1 DOES NOT
          DIVEST THE COURT OF SUBJECT MATTER JURISDICTION ........................... 18

CONCLUSION...................................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

<span style="float:right">PAGE(S)</span>

CASES

*American Safety Table Co. v. Schreiber & Goldberg, Inc.*,
   320 F.Supp.603 (S.D.N.Y. 1970) ...........................................................14

*Arnold v. Perrin*,
   No. 02 CIV. 6006 (RCC), 2003 WL 1878421 (S.D.N.Y. Apr. 15, 2003) ........................14, 15

*BanxCorp v. Costco Wholesale* Corp.,
   978 F. Supp. 2d 280, 314 (S.D.N.Y. 2013)...........................................................17

*Bonar, Inc. v. Schottland*,
   631 F.Supp.990 (E.D. Pa. 1986) ...........................................................14

*Breen v. Pruter*,
   No. 14-CV-081-F, 2014 WL 11485243 (D. Wyo. Dec. 16, 2014), *aff'd*, 679 F.
   App'x 713 (10th Cir. 2017) ...........................................................14

*CBRE Inc. v. Pace Gallery LLC*,
   No. 1:17-CV-2452, 2018 WL 740994 (S.D.N.Y. Feb. 6, 2018) ...............................................6

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*,
   93 F.3d 1064 (2d Cir. 1996)...........................................................16

*Delvalle v. Airport Shoppes and Hotels Corp.*,
   No. 13-cv-8308, 2014 WL 4159989 (S.D.N.Y. Aug. 20, 2014)...........................................6, 9

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*,
   565 F.3d 56 (2d Cir. 2009)...........................................................6

*Eisenberg v. New England Motor Freight, Inc.*,
   564 F. Supp. 2d 224 (S.D.N.Y. 2008)...........................................................12

*Gasery v. Kalakuta Sunrise, LLC*,
   422 F. Supp. 3d 807 (S.D.N.Y. 2019).......................................................16, 17, 18

*Govias v. Tejada*,
   No. 10 Civ. 3397 (JSR), 2010 WL 3528869 (S.D.N.Y. Aug. 20, 2010) ...............................12

*Harris v. Black Clawson Co.*,
   961 F.2d 547 (5th Cir. 1992) ...........................................................14

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010)...........................................................1, 6, 7, 8, 10, 11, 12

*Holtz v. Rockefeller & Co.*,
  258 F.3d 62 (2d Cir. 2001)..............................................................................................18

*Kanowitz v. Broadridge Fin. Solutions, Inc.*,
  No. 13-cv-649, 2014 WL 1338370 (E.D.N.Y. Mar. 31, 2014)............................................6, 7

*Kheel v. Port of N.Y. Auth.*,
  457 F.2d 46 (2d Cir. 1972)..............................................................................................16

*Liranzo v. United States*,
  690 F.3d 78 (2d Cir. 2012)................................................................................................6

*Macklin v. Lexington Ins. Co.*,
  No. 20 CIV. 05372 (ER), 2020 WL 5796814 (S.D.N.Y. Sept. 29, 2020) ..............2, 11, 12, 13

*Matkal LLC v. VG Rush Corp.*,
  No. 18-CV-2833(SJF)(AKT), 2019 WL 1748601 (E.D.N.Y. Apr. 18, 2019)..................18, 19

*Overton v. Rainbo Baking Co. of Johnson City*,
  239 F. Supp. 800 (E.D. Tenn. 1964) ............................................................................13, 14

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir.2004)..............................................................................................17

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*,
  754 F. Supp. 2d 616 (S.D.N.Y. 2010)..............................................................................17

*Scherer v. Equitable Life Assurance Soc'y of U.S.*,
  347 F.3d 394 (2d Cir. 2003)..............................................................................................16

*St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*,
  87 F. Supp. 3d 603 (S.D.N.Y. 2015)..........................................................................7, 8, 10

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir.1995)..................................................................................................18

*Transp. & Storage Sols. Inc. v. KLT Indus., Inc.*,
  No. CIV.A. 13-40137-TSH, 2014 WL 5320174 (D. Mass. Oct. 17, 2014)............................13

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*,
  324 F. Supp. 3d 366 (W.D.N.Y. 2018) ..............................................................................13

*Uniroyal, Inc. v. Heller*,
  65 F.R.D. 83 (S.D.N.Y. 1974) ..........................................................................................14

*Utopia Studios, Ltd. v. Earth Tech, Inc.*,
  607 F. Supp. 2d 443 (E.D.N.Y. 2009) ................................................................................8

*Wells Fargo Bank, Nat'l Ass'n v. CIT Bank, N.A.*,
   No. 15 CIV. 9861 (ER), 2017 WL 1184296 (S.D.N.Y. Mar. 29, 2017)................................17

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000)...........................................................................................18

**RULES**

Fed. R. Civ. P. 12(b)(1)...................................................................................................1

Local Civ. R. 26.1 .................................................................................................18, 19

**STATUTES**

28 U.S.C. § 1332...................................................................................................6, 15

28 U.S.C. § 1332(a)(1)....................................................................................................6

28 U.S.C. § 1332(c)(1)....................................................................................................6

## <u>PRELIMINARY STATEMENT</u>

This Court should deny Defendant Andrew Delaney's ("Defendant") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of diversity jurisdiction because complete diversity exists between Plaintiff HC2, Inc. ("Plaintiff" or "HC2") and Defendant.  Plaintiff's Complaint correctly alleged complete diversity between the parties and Plaintiff now presents "competent proof" establishing that diversity existed at the time that it commenced this action.

Under the Supreme Court's "nerve center" test set forth in *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010), Plaintiff's principal place of business when it commenced this action was Chicago, Illinois.  Chicago was where Plaintiff's executive managers decided policy and made key business decisions.  When Plaintiff commenced this action, Chicago was where the Plaintiff's "brain" was located.  Accordingly, Chicago was Plaintiff's headquarters when it commenced this action and it remains Plaintiff's headquarters to this day.

Because Circuits regularly find a corporate officer's sworn statement to be sufficient "competent proof" of their principal place of business, Plaintiff submits the Declarations of Chief Executive Officer Joan Davison, Vice President of Human Resources Patti Ayala, Controller Nancy Rausch, and Senior Director of Business Operations Nick Radoicic.  These executives explain why the Plaintiff's principal place of business is in Chicago, IL.  A sample of their competent proof is as follows:

- In March of 2017, the company hired a new CEO (Ms. Davison) who resided and worked in Illinois.  The new CEO's predecessor worked in New York;

- Soon afterwards, the new CEO gradually transitioned Plaintiff's headquarters and many of its executive roles from New York to Illinois;

- From late 2017 through mid-2019, the Plaintiff transferred the finance Department from New York to Chicago by hiring a new CFO and Controller in Illinois;

- In January 2018, the Plaintiff hired a Managing Director of Operations to work in Illinois;

- In early-to mid-2019, the Plaintiff transferred its human resources and marketing department from New York to Illinois;

- In late-2018 to mid-2019, HC2 renovated its office space in Chicago to accommodate these executives as part of the transition of its headquarters from New York to Chicago, Illinois; and

- From March 2017 through April 22, 2020 when Plaintiff filed this action, the Plaintiff's slate of departments that were directed from Chicago increased from zero (0) to seven (7) constituting a sixty four (64%) percent increase of the overall Company while New York dropped to eighteen (18%) percent.

Defendant's citation to a selection of Plaintiff's other state court filings and other evidence do not dilute the significance of Plaintiff's evidence.   In fact, recently, in 2020, Plaintiff commenced an action in the District of Columbia in which it attested to the fact that Chicago is its principal place of business.  General Counsel Stephanos Zannikos explains in his declaration that the state court actions alluded to by Defendant were filed during a period in which the Plaintiff was in the midst of transitioning from New York to Chicago.  Due to the transition and prior practices, he made a mistake in 2019 in good faith that New York remained the principal place of business in other cases.   His error and this motion are therefore very similar to a case in which a Court in this district denied a motion just like this one, in *Macklin v. Lexington Ins. Co.*, No. 20 CIV. 05372 (ER), 2020 WL 5796814, at *2–4 (S.D.N.Y. Sept. 29, 2020).  The plaintiff in *Macklin* was a New York citizen and submitted twenty-one state court complaints filed by the defendant, five of which mistakenly identified New York as the defendant's principal place of business.

Plaintiff's competent proof demonstrates that complete diversity existed at the commencement of action. Defendant's motion should be denied.

2

## STATEMENT OF FACTS

On April 22, 2020, the date on which this suit commenced, HC2 was and still is a citizen of Illinois.  HC2 is a national legal staffing company that recruits and provides temporary legal staff such as attorneys, paralegals, and other legal professionals. *See* Declaration of Chief Executive Officer ("CEO") Joan Davison ("Davison Decl."), at ¶ 3. HC2 has office locations throughout the United States. *Id.* at ¶ 4.

With Plaintiff's hire of CEO Joan Davison on March 3, 2017, HC2 began to transition its corporate headquarters from New York to Chicago. *Id.* at 5. Ms. Davison also transitioned many of HC2's executive roles, including the Chief Financial Officer, Controller, Vice President of Human Resources, and Director of Marketing, from New York to Chicago, and she hired a new Senior Director of Operations in Chicago as part of HC2's overall business strategy. *Id.* at ¶ 5; *see also* Patti Ayala Declaration ("Ayala Decl."), at ¶¶ 3-4; Nancy Rausch Declaration ("Rausch Decl."), at ¶ 3; Nick Radoicic Declaration ("Radoicic Decl."), at ¶ 3.

In particular, as a result of the transition, on April 22, 2020, all human resources strategies, including policy development, analysis of organization effectiveness, performance management, compliance, and employee relations were developed and executed out of Chicago; this remains to this day. *See* Davison Decl., at ¶ 13; *see also* Ayala Decl., at ¶¶ 3-6.

On April 22, 2020, HC2 also administered its employee benefits activities in Chicago. *See* Davison Decl., at ¶ 13; Ayala Decl. at ¶ 5.  The corporate books and records of HC2 were then and are now also maintained either electronically or in hard copy form in the Chicago office.  *See* Davison Decl., at ¶ 20; Ayala Decl., at ¶ 20; Rausch Decl., at ¶ 5.  The Controller also managed all financial reporting, external audits, payables and receivables out of Chicago beginning in the third quarter of 2019 and through April 2020. *See* Rausch Decl., at ¶ 4.  As a result, Chicago was

the location where HC2's officers decided policy and made key decisions affecting HC2 when Plaintiff commenced this action.  *See* Davison Decl., at ¶¶ 5, 14, 16, 18, 19.

As part of the transition of HC2's headquarters from New York to Chicago, in mid-2018, HC2 moved its Chicago office to a larger space to accommodate the executive team and the growing employee base. *See* Davison Decl. at ¶ 11-12; *see also* Ayala Decl., at ¶ 7; Radoicic Decl., at ¶ 6. HC2's current Chicago office is the largest in terms of physical space and number of key employees in comparison to all of its office spaces across the nation. *See* Radoicic Decl., at ¶ 6.

Additionally, since April 22, 2020, HC2's functional and operational corporate departments operate out of Illinois or other States than New York. *See* Davison Decl., at ¶ 19. More specifically, the following departments operate out of Illinois: Office of the Chief Executive, Human Resources, Accounting, Finance, Operations, Marketing, and Specialized Project Attorney (SPA) Recruitment. *Id.* Two departments operate outside of Chicago and New York: Project Based Staffing Recruitment operates out of Pennsylvania and Project Management operates out of North Carolina. *Id.* Only two departments operate out of New York: Legal and Sales. *Id.*

With regard to management-related business, five out of the ten members of the Company's management team were based in Chicago on April 22, 2020, when this action was commenced: Chief Executive Officer, Controller, Vice President of Human Resources, Senior Director of Operations, and Director of Marketing.  *See* Davison Decl., at ¶ 14.  Three out of the remaining five were based outside of Chicago and New York: Senior Managing Director, National Fulfillment for Project Based Staffing, in Philadelphia; Director of Business Services, in Washington DC; and National Director of Managed Review Projects, in Raleigh, North Carolina *Id.* at ¶ 16.  Only two people on the management team were located in New York on April 22, 2020: the Vice President of Sales and General Counsel.  *Id.* ¶ 17.

Moreover, since even before April 22, 2020, Ms. Davison as CEO managed and conducted business out of the Chicago office.  *See* Davison Decl. at ¶ 18.  She interacted with HC2's executives in person in Chicago or via phone from her Chicago office with individuals from across the country.  *Id.*  For these and other reasons, the principal place of business of HC2 was located in Chicago, Illinois when Plaintiff commenced this action.

There is also no question that this action satisfies the amount in controversy requirement for diversity jurisdiction.  HC2 hired Defendant as a contract attorney, and on December 28, 2016, the parties entered into an employment contract (the "Employment Agreement"), which incorporated a Non-Disclosure Agreement (the "NDA"). *See* ECF No. 1 ("Compl."), at ¶ 18. The Employment Agreement required him to indemnify and hold HC2 harmless for any economic loss HC2 suffered because of his conduct pursuant to the Employment Agreement. *Id.*, at ¶ 44 ("[Defendant] shall indemnify [] HC2 [] from any and all claims, liabilities, judgments, settlements or costs and expenses (including reasonable attorney's fees) incurred by [HC2] associated with or resulting from any act or failure to act by [Defendant] in providing services to a client pursuant to this Agreement."). *Id.*

In the Complaint, HC2 alleged that Defendant – as a contract attorney with access to highly confidential client documents – was obligated to maintain confidentiality of a client's privileged information or communications. Compl. at ¶ 35. However, on April 15, 2020, Defendant failed to maintain the confidential information of HC2's client by publicly filing a complaint in a state court against it, and by doing so, disclosed the corporate client's confidential and privileged information he obtained through services he rendered despite his contractual and ethical obligations. *Id.* at ¶ 8; *see* Declaration of Stephanos Zannikos, Esq. ("Zannikos Decl."), at ¶¶ 5-6. HC2 has incurred fees and costs, and will continue to do so, as a direct result of Defendant's conduct, all of which

Defendant is obligated to pay. *See* Compl., at ¶ 45; *see also* Zannikos Decl., at ¶¶ 6-7. Damages as a result of the breach, including attorney's fees, amount to well in excess of $75,000. *See* Compl., at ¶ 15; *see also* Zannikos Decl., at ¶ 7.

## ARGUMENT

### I.   PLAINTIFF'S "NERVE CENTER" IS CHICAGO, ILLINOIS

#### A.   Legal Standard for Determining a Corporation's Principal Place of Business

Pursuant to 28 U.S.C. § 1332, the District Court has original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, and is between citizens of different states. 28 U.S.C. § 1332(a)(1); *see Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009). In determining the citizenship of a corporation for diversity jurisdiction purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation can have only one "principal place of business" for purposes of determining diversity jurisdiction under Section 1332(c)(1). *Hertz Corp.*, 559 U.S. at 81. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). "Once diversity jurisdiction is challenged, it must be supported by 'competent proof.'" *CBRE Inc. v. Pace Gallery LLC*, No. 1:17-CV-2452, 2018 WL 740994, at *1 (S.D.N.Y. Feb. 6, 2018) (quoting *Hertz Corp.*, 559 U.S. at 96-7)).

"[C]ourts in the Second Circuit regularly find a corporate officer's sworn statement to be sufficient proof of a corporation's principal place of business." *Delvalle v. Airport Shoppes and Hotels Corp.*, No. 13-cv-8308, 2014 WL 4159989, at *3 (S.D.N.Y. Aug. 20, 2014) (quoting

*Kanowitz v. Broadridge Fin. Solutions, Inc.*, No. 13-cv-649, 2014 WL 1338370, at *10 (E.D.N.Y. Mar. 31, 2014)).

Under the "nerve center" test articulated by the Supreme Court in *Hertz*, a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities. . . . the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Hertz Corp.*, 559 U.S. at 93. Subsequent to *Hertz*, courts have recognized that the test "focuses on where a corporation's 'high level' decisions are made, not where day-to-day activities are managed." *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015).

In adopting the "nerve center" test, the *Hertz* Court rejected what it called the "more general business activities test" that looked "not at a particular place within a State but incorrectly at the State itself, measuring the total amount of business activities that the corporation conducts there and determining whether they are significantly larger than in the next-ranking State." *Id.*, 559 U.S. at 79. Per the Court:

> A "nerve center" approach, which ordinarily equates that "center" with a corporation's headquarters, is simple to apply comparatively speaking. The metaphor of a corporate "brain," while not precise, suggests a single location. By contrast, a corporation's general business activities more often lack a single principal place where they take place. That is to say, the corporation may have several plants, many sales locations, and employees located in many different places. If so, it will not be as easy to determine which of these different business locales is the "principal" or most important "place."

*Id.*, 559 U.S. at 95.

### B.    HC2's Principal Place of Business is in Chicago, Illinois, Where Its "Nerve Center" Is Located.

As there is no dispute that HC2 is *not* incorporated in New York, to find citizenship in the State of New York, the Court must conduct an analysis as to where Plaintiff's "nerve center" is located for establishing Plaintiff's principal place of business. Plaintiff's principal place of business is in Chicago, Illinois, where its "nerve center" is located.

Plaintiff is a national corporation that has offices in many cities across America. *See* Davison Decl., at ¶ 4.  Since March 3, 2017, CEO Joan Davison has been the executive responsible for setting the direction of the company, its strategy, and its corporate policies, and she is located in Chicago. *Id.* at ¶ 5. At the time that Plaintiff filed this action, the vast majority of its executive management team responsible for corporate decisions and business strategy were all also located in Chicago.  *Id.* In addition to Ms. Davison, these individuals are Patti Ayala, Vice President of Human Resources; Nancy Rausch, Controller; Nick Radoicic, Director of Operations and Sharon Rizzo, Director of Marketing. *Id.* at ¶¶ 5, 7-9, 11; *see also* Ayala Decl., at ¶ 3; Rausch Decl., at ¶¶ 3, 7; Radoicic Decl., at ¶ 3.

Chicago is also the location where the executive managers decide policy and make key business decisions.  *See generally* Davison Decl.  In other words, the "brain" of Plaintiff is located in Chicago, a fact weighing heavily in favor of a determination that Chicago is Plaintiff's principal place of business. *See Hertz Corp.*, 559 U.S. at 95; *St. Paul Fire & Marine Ins. Co.*, 87 F. Supp. 3d at 605 (finding principal place of business was the location where nearly all of the high-level officers work, make significant corporate decisions, and set corporate policy, not where day-to-day activities are managed); *see also Utopia Studios, Ltd. v. Earth Tech, Inc.*, 607 F. Supp. 2d 443, 446 (E.D.N.Y. 2009) (finding principal place of business where the headquarters housed the CEO, CFO, Human Resources, and Marketing departments).

8

Ms. Davison joined HC2 as CEO on March 3, 2017, and HC2 then began the transfer of its executive management from New York to Chicago. *See* Davison Decl., at ¶ 5. First, HC2 moved its Finance Department from New York to Chicago and hired a new Chief Financial Officer ("CFO"), Charles Nelson, on October 23, 2017 to work out of the Chicago office. *Id*. at ¶ 6. Mr. Nelson's predecessor worked out of the New York Office. *Id.*

Through 2018 and 2019, the transition of executive management from New York to Chicago continued. *See* Davison Decl., at ¶ 7. For instance, HC2 hired Controller Nancy Rausch on January 8, 2019, to work from the Chicago office. *Id.*; *see also* Rausch Decl., at ¶¶ 3, 7. Her predecessor worked out of the New York Office and separated from HC2 on July 20, 2018. *See* Davison Decl., at ¶ 7. Then, HC2 hired a Managing Director of Operations in the Chicago office, and moved the heads of the Human Resources and the Marketing Departments from New York to Chicago. *Id.* ¶¶ 8-9. To accommodate these executives as part of the transition of its headquarters from New York to Chicago, HC2 also renovated its office space in Chicago. *Id.*; *see also* Ayala Decl., at ¶ 7; Radoicic Decl., at ¶ 6. Evidence that HC2 relocated its executive management to Chicago following its hiring of a new CEO is compelling, competent evidence that Chicago was Plaintiff's principal place of business when this action was commenced. *See Delvalle*, 2014 WL 4159989, at *2 (holding that a company met its burden of showing by a preponderance of the evidence that its principal place of business was located in Connecticut, demonstrating that it relocated its headquarters from New York prior to the filing of the lawsuit).

Furthermore, Plaintiff's head of Human Resources is located in Chicago, and Plaintiff's human resources policies are set in Chicago. *See* Davison Decl., at ¶ 11; Ayala Decl., at ¶¶ 3-6. Corporate books and records are maintained in Chicago. *See* Davison Decl., at ¶ 20; Rausch Decl.,

at ¶ 5. The accounting group and corporate finance group operate and are located in Chicago.  *See* Davison Decl., at ¶ 20.

The facts of *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 606–07 (S.D.N.Y. 2015), are particularly instructive. In *St. Paul Fire & Marine Ins. Co.*, the court found the principal place of business was in Connecticut where the "bulk of the direction, control, and coordination" existed where nine out of fifteen officers worked primarily or entirely in the Connecticut office, and only three members worked in the New York office. *Id.* It further relied on the fact that the CFO who was responsible for the accounting and finance functions within the company worked out of Connecticut. *Id.* at 606. Even though the CEO sat in New York, the court reasoned that in this particular instance, the CEO's involvement in the affairs of the subsidiary at issue was quite limited; however, that is not the case here. Chief Executive Davison lives and works in Illinois and she is actively involved in the affairs of Plaintiff and all key decision-making. *Id.* at 606-07; *see also* Davison Decl., at ¶¶ 5, 13, 18. The court further reasoned that "[w]hile the nerve center test is not simply a numbers game, it does focus on where the "center" of direction, control, and coordination is located, . . . and there is no indication that the small group of officers located in New York . . .  exercises decision-making authority remotely comparable to that exercised in Connecticut." *St. Paul Fire & Marine Ins. Co.*, 87 F. Supp. 3d at 607.

Plaintiff of course does business in New York and has an office and employees in New York, including its General Counsel.  *See* Davison Decl., at ¶¶ 17, 19. However, Defendant cannot defeat diversity jurisdiction because Plaintiff conducts business in New York. The *Hertz* Court expressly rejected this standard. *Hertz* discarded the "general business activities test" that "[measured] the total amount of business activities that the corporation conducts [in a particular State to determine] whether they are significantly larger than in the next-ranking State." *Hertz*, 559

U.S. at 79.  As stated, *Hertz* adopted the "nerve center" test. Defendant's motion fails to mention the "nerve center" test at all.

As set forth in the Declarations submitted herewith, Chicago, Illinois, is the place where Plaintiff's "officers directed, controlled, and coordinated [Plaintiff's] activities" on April 22, 2020 – it was then and remains "the actual center of direction, control, and coordination." *Hertz*, 559 U.S. at 92-93. Accordingly, the parties were citizens of different states under Section 1332 at the time of filing, and this Court has subject matter jurisdiction.

### C. Defendant's References to Other Court Complaints, State Filings, and "Additional Evidence" Do Not Negate Plaintiff's Competent Proof of Diversity Jurisdiction

Defendant accuses Plaintiff of "manufacturing jurisdiction" by virtue of the fact that Plaintiff asserted in other, unrelated cases prior to the filing of the instant complaint that its principal place of business was New York, and that HC2 has listed New York on certain state registrations. However, Plaintiff's evidence explains that much of these filings were inadvertent or mistakes and not updated because Plaintiff was in the ongoing process of transferring its headquarters from New York to Chicago and had a prior practice of routinely filing in New York. *See* Zannikos Decl., at ¶¶ 8-14.  Moreover, some were for purposes of convenience as the company's General Counsel was located in New York.  Plaintiff's evidence competently establishes that certainly by the time this action was commenced Chicago was in fact Plaintiff's headquarters.

This motion is very much like that which Judge Ramos **denied** in *Macklin v. Lexington Ins. Co.*, No. 20 CIV. 05372 (ER), 2020 WL 5796814, at *2–4 (S.D.N.Y. Sept. 29, 2020), where the plaintiff, a New York citizen, submitted 21 state court complaints filed by the defendant with five of them affirmatively identifying New York as the defendant's principal place of business and 16 identifying New York as the place of venue.

In *Macklin*, the plaintiff submitted that seven of the ten senior-most executives resided in New York or maintained New York phone numbers and that Report of Examination of Lexington issued by the Delaware Department of Insurance Commissioner indicated the defendant's home office was New York. *Macklin*, 2020 WL 5796814, at *3. While the *Macklin* Court found that plaintiff raised a question of fact regarding the true location of the defendant's principal place of business, the Court rejected the plaintiff's arguments once the defendant submitted "competent proof" that its principal place of business was Massachusetts. *Id.* This "competent proof" was in the form of declarations from a corporate executive indicating that its principal place of business was Massachusetts. *Id.* The defendant also submitted additional declarations from two attorneys indicating that they were mistaken in identifying New York as the defendant's principal place of business. *Id.* As a result, the court found that defendant's evidence rebutted Plaintiff's challenges and provided "competent proof that [the defendant's] true principal place of business is Massachusetts and [that the] Court may exercise diversity jurisdiction. *Id.* (quoting *Hertz*, 559 U.S. 96–7) (citing *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 229 (S.D.N.Y. 2008) (holding that a corporate representative's declaration as to the principal place of business is enough to meet the competent proof standard); *Govias v. Tejada*, No. 10 Civ. 3397 (JSR), 2010 WL 3528867, at *2 (S.D.N.Y. Aug. 20, 2010) (holding that a company's partnership agreement, stating the principal place of business, can serve as competent proof of the partnership's principal place of business)).

This case is very much like *Macklin*. Plaintiff's "competent proof" from its CEO and executive management team establishes that Plaintiff transferred its principal place of business from New York to Chicago. The state court filings that Plaintiff relies upon here are good faith

mistakes because Plaintiff's transfer of its principal place of business to Chicago was in flux when those cases were filed.

Notably, all of the state court filings that Defendant relies upon were before April 22, 2020, the date on which Plaintiff commenced this action. In a more recent case, however, Plaintiff indicated that its principal place of business was in fact Chicago, Illinois. *See* Declaration of Michael Nacchio, Esq. ("Nacchio Decl."), Exhibit A. Furthermore, General Counsel Stephanos Zannikos explains in his declaration that he was mistaken in his belief in 2019 that New York remained the principal place of business when Plaintiff filed those court pleadings because the transfer of the headquarters to Chicago was "in flux" and ongoing and that he filed them as a matter of routine due to past practices. *See* Zannikos Decl., at ¶ 11. As did the defendant in *Macklin*, Plaintiff's evidence dispels the issues of fact raised by Defendant and leaves no doubt that Plaintiff's principal place of business was firmly set in Chicago on April 22, 2020.

Furthermore, both CEO Davison and General Counsel Zannikos explain that the Company will be reviewing its corporate registration to correct any mistaken filings. *See* Davison Decl., at ¶ 21; Zannikos Decl., at ¶ 13. However, Plaintiff's outdated state corporation registrations do not provide the weight Defendant suggests. "Some courts have declined to give much weight to representations made in annual reports or other documents filed with a secretary of state that indicate the location of a corporate headquarters for purposes of subject matter jurisdiction." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 376–78 (W.D.N.Y. 2018) (citing *Transp. & Storage Sols. Inc. v. KLT Indus., Inc.*, No. CIV.A. 13-40137-TSH, 2014 WL 5320174, at *3 (D. Mass. Oct. 17, 2014); *Overton v. Rainbo Baking Co. of Johnson City*, 239 F. Supp. 800, 801 (E.D. Tenn. 1964) (holding that the court was "not bound" by the principal place of business listed in a "verified report," purportedly filed with the Tennessee

Secretary of State, in determining subject matter jurisdiction); *see also Breen v. Pruter*, No. 14-CV-081-F, 2014 WL 11485243, at *2 (D. Wyo. Dec. 16, 2014) ("The mere existence of a document listing its business address is insufficient to establish its principal place of business."), *aff'd*, 679 F. App'x 713 (10th Cir. 2017); *Bonar, Inc. v. Schottland*, 631 F.Supp.990, 994 (E.D. Pa. 1986) (noting that the existence of "corporate documents" listing a Delaware business mailing address did not establish that Delaware was the defendant's principal place of business); *American Safety Table Co. v. Schreiber & Goldberg, Inc.*, 320 F.Supp.603, 604 (S.D.N.Y. 1970) (stating that the defendant's principal place of business was not in New York, even though the defendant maintained a "telephone listing and mailing address at the office of an independent distributor" in that State)). Even SEC filings, which list a company's principal place of business in a particular State, are not dispositive. *Id.* (citing *Harris v. Black Clawson Co.*, 961 F.2d 547, 550 (5th Cir. 1992) ("[I]t has been held that statements made to the Securities and Exchange Commission are likewise not binding.") (citing *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 87 (S.D.N.Y. 1974) (noting that the designation of New York City as "the site of its principal executive offices on certain forms required to be filed with the Securities and Exchange Commission" was "not dispositive"))).

Many of Plaintiff's cited registrations do not even hold out New York as a "principal place of business" – an incorrect assumption made by Defendant.  *See* Defendant's Motion to Dismiss ("Mov. Br."), at ¶ 16.  Instead, many provide New York as the "Entity Mailing Address" (*Id.*, at ¶ 18, citing California registration), or "business address" (*Id.*, at ¶ 19-20).  Plaintiff's evidence greatly outweighs the weight of Defendant's cited registrations as a matter of law.

Moreover, Defendant's "additional evidence" in the form of website listings is not a "determinative factor" under the "nerve center" analysis, since the "dispositive inquiry under the nerve center test focuses on the actual location from which a corporation's officers direct, control

14

and coordinate the corporate activities." *Arnold v. Perrin*, No. 02 CIV. 6006 (RCC), 2003 WL 1878421, at *2 (S.D.N.Y. Apr. 15, 2003). In support of his argument, Defendant points to Facebook, Bloomberg, LinkedIn, and Kansas City Open Government website pages that show HC2's business address is New York. Merely listing a New York address has no bearing on the nerve center analysis. *See* Mov. Br., at ¶ 10; Exhibits Z-FF. Furthermore, while Crunchbase's website lists HC2's "Headquarters Regions" as "Greater New York Area" and SignalHire's website lists "Headquarters Location" as 360 Lexington Avenue, New York, New York 10017, this jurisdiction has found that website listings, even those listing a headquarters, are not determinative; instead, the inquiry is whether the "nerve center" is in fact where corporate business decisions are made. *See Arnold*, 2003 WL 1878421, at *2 (finding that although the company's website listed New York as its headquarters and the company issued press releases out of its New York office, "under the nerve center analysis, these factors are not determinative" and the corporation's principal place of business was Connecticut because corporate decisions were made in Connecticut). As described above, Chicago is in fact the nerve center because it is where corporate business decisions are made.[1]

## II.   PLAINTIFF MEETS THE AMOUNT IN CONTROVERSY REQUIREMENT, AND THEREFORE JURISDICTION EXISTS PURSUANT TO 28 U.S.C. § 1332(a)(1).

Plaintiff's allegations in the Complaint satisfy the $75,000 threshold for a diversity suit, and therefore this Court should not dismiss Plaintiff's Complaint. "A party invoking the

---

[1] Even if the Court found any question lingered as to Plaintiff's citizenship, Defendant clearly testified that he resided in Florida on the day this action was commenced in response to a question that asked if he was a permanent resident of the State of New York on April 22, 2020. *See* Nacchio Decl., Exhibit B (Relevant Excerpts from the Remote Deposition of Andrew Delaney, dated September 9, 2020), at 264:1-25. He deliberately did not say he was New York resident on that date despite giving a New York address on the date of his deposition. *See id.*, at 6:1-4. Defendant cannot have jurisdiction both ways. Based on Defendant's testimony, there would still be diversity between the parties.

jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 817–18 (S.D.N.Y. 2019) (quoting *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)). However, the burden is not onerous, as there is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* To overcome this rebuttable presumption, the defendant must show "to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Scherer*, 347 F.3d at 397. In other words, "the legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Gasery*, 422 F. Supp. 3d at 817–18 (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070–71 (2d Cir. 1996)). Furthermore, the Second Circuit assesses the amount in controversy from the plaintiff's viewpoint rule. *See Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) ("Generally . . . the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.").

Defendant erroneously focuses solely on disgorgement of the amount paid to him prior to the filing of the lawsuit, as if such compensation is determinative of all damages. *See* Mov. Br., at ¶ 36. However, disgorgement of Defendant's earnings is only one aspect of the damages calculation. Plaintiff seeks both indemnification, including reasonable attorney's fees, and lost profits due to a loss of good will, resulting from Defendant's conduct pursuant to his Employment Agreement. *See* ECF No. 1, Complaint, at ¶¶ 44, 50, and Prayer for Relief; *see also* Zannikos Decl., at ¶¶ 4-7. Both the indemnification and the lost profits Plaintiff may seek from Defendant could be enormous.

It is undisputed in the Second Circuit that attorney's fees are included in the $75,000 calculation when they "are recoverable as a matter of right pursuant to statute or contract." *Gasery*, 422 F. Supp. 3d at 818. Defendant's employment agreement clearly states that it must indemnify Plaintiff from all expenses as a result of the breach of contract, including all attorney's fees. *See* ECF No. 1, Compl., ¶¶ 44-45. Therefore, if successful on the merits, Plaintiff will be entitled to attorney's fees pursuant to the contract and it is clear that the $75,000 amount in controversy is met. *See also BanxCorp v. Costco Wholesale* Corp., 978 F. Supp. 2d 280, 314 (S.D.N.Y. 2013) (finding that the plaintiff's claim for attorney's fees put it over the amount in controversy threshold, since the fees "almost surely would total in the tens of thousands of dollars at least"). Indeed, at the time of this filing, Plaintiff's fees and expenses have already amounted to over $75,000, and the parties have yet to even reach the merits of the case. *See Wells Fargo Bank, Nat'l Ass'n v. CIT Bank, N.A.*, No. 15 CIV. 9861 (ER), 2017 WL 1184296, at *5 (S.D.N.Y. Mar. 29, 2017) ("[G]iven the sophistication of the parties and their counsel, the nature of the dispute, and the value of the assets underlying this case, it is not a stretch for the Court to conclude that the indemnification claim is likely worth more than the statutory minimum."); *see also* Zannikos Decl., at ¶ 7.

Furthermore, courts in this circuit have recognized a company's "'loss of reputation, good will, and business opportunities" from a breach of contract can constitute irreparable harm." *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir.2004)). "Typically, cases where courts have found irreparable harm from a loss of goodwill or business relationships have involved situations where the dispute between the parties leaves one party unable to provide its product to its customers." *Id.* at 621. The Second Circuit has held, "where we have found irreparable harm, the very viability of the plaintiffs business or substantial losses of sales beyond those of the

terminated product have been threatened." *Id.* (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir.1995)). Here, from the face of the Complaint, it is clear that Plaintiff is alleging that it suffered an irreparable harm due to his release of confidential and proprietary information of HC2's client, and such harm negatively impacts customer relationships. *See* Complaint, at pp. 14-15 ("Prayer for Relief"); *see also* Zannikos Decl., at ¶¶ 4-7.

As a result, Plaintiff has demonstrated by "competent proof" that there is a "reasonable probability that the claim is in excess of the statutory jurisdictional amount," and therefore, the Court should deny Defendant's Motion to Dismiss. *Gasery*, 422 F. Supp. 3d 807 at 818.

### III. THE TECHNICAL OVERSIGHT OF LOCAL RULE 26.1 DOES NOT DIVEST THE COURT OF SUBJECT MATTER JURISDICTION.

Defendant also seeks dismissal on the ground that Plaintiff did not adhere to Local Rule 26.1. *See* Mov. Br., at ¶5. However, this minor and inconsequential omission does not affect the Court's jurisdiction and provides no basis for dismissal. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Wight v. BankAmerica Corp.*, 219 F.3d 79, 85-86 (2d Cir. 2000) ("[I]t is the business of the district court to determine whether fairness demands that noncompliance ["with the Local Rules (which are not statutes)"] be excused.").

Furthermore, counsel believes this Motion is the first time Defendant has indicated any issue with Local Rule 26.1 compliance, which requires that a party furnish to the other party the information contemplated by this rule "*within seven (7) days after a demand…*" *See* Local Civ. R. 26.1. Defendant never requested the information from Plaintiff. In any case, to eliminate any concern, Plaintiff has furnished a statement pursuant to Local Rule 26.1 to Defendant as of the time of this filing. *See Matkal LLC v. VG Rush Corp.*, No. 18-CV-2833(SJF)(AKT), 2019 WL 1748601, at *5 (E.D.N.Y. Apr. 18, 2019) (noting the court accepted defendant's remedy of

pleading deficiency where defendant subsequently submitted evidence regarding the citizenship of both of plaintiff's members pursuant to Local Civil Rule 26.1).

## **<u>CONCLUSION</u>**

Plaintiff has satisfied its burden for subject matter jurisdiction in this Court under 28 U.S.C. § 1332.  Plaintiff's principal place of business is where its "nerve center" is located.  Because Plaintiff directs, controls, and coordinates its multi-state activities from Chicago, Illinois, as fully shown above, its principal place of business is in Illinois.  As a result, Plaintiff is an Illinois citizen so that complete diversity exists in this case. Furthermore, Plaintiff has established a reasonable probability that the claims are in excess of the statutory jurisdictional amount. Therefore, Defendant's Motion must be denied.

Dated:  January 11, 2021

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys for Plaintiff HC2, Inc.*

By:      *s/ Michael Nacchio*
Michael Nacchio
Valerie L. Weiss

45583263.1

19