# EXHIBIT A

Filed
D.C. Superior Court
10/27/2020 16:54PM
Clerk of the Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| **HIRECounsel DC, LLC**<br>1220 K Street, N.W., Suite 400<br>Washington, D.C. 20006<br><br>**Plaintiff,**<br><br>v.<br><br>**KILIAN CONNOLLY**<br>10 Brooks Court<br>Boston, MA 01950<br><br>**Defendant.** | Case No. _____ |

## COMPLAINT

Plaintiff HIRECounsel DC, LLC ("Plaintiff" or "the Company"), by undersigned counsel, files this Complaint against Defendant Kilian Connolly ("Defendant" or "Connolly").  This is an action for damages and for injunctive relief due to Connolly's violation of his post-employment contractual obligations in his Employment Agreement with the Company as well as for his violation of the District of Columbia Uniform Trade Secrets Act, DC Code §§ 36-401 et seq., by wrongfully misappropriating by improper means a confidential report prepared by the Company's Vice-President of Sales regarding on-going customer placements, price mark-ups, and revenue projections.

### I.    PARTIES

1. HIRECounsel DC, LLC is a District of Columbia limited liability corporation whose headquarters and principal place of business is located in Chicago, Illinois.

2. Defendant Connolly lives at 10 Brooks Court, Boston, Massachusetts; he is a citizen of Massachusetts.

1

## II.     JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under D.C. Code Ann. § 11-921. Personal jurisdiction and venue are proper under D.C. Code Ann. § 13-422, pursuant to the parties' express written consent in the January 26, 2015 Employment Agreement between the Company and Connolly. See attached Exhibit A, Employment Agreement, pp. 13-14 ("The parties consent to the exclusive jurisdiction of the Superior Court of the District of Columbia … for all purposes in connection with any legal proceeding resulting from any beach or anticipated breach of Section 4 or 5 by the Employee.").

## III.     FACTS COMMON TO ALL COUNTS IN THE COMPLAINT

4. The Company is a legal staffing and managed document review company. The Company provides law firms and corporate legal departments permanent and temporary legal placements of attorneys and paralegals as well as supplies personnel, technology, and staff to support managed document review for transactions and litigation matters.

5. Relevant to this case, the Company provides services to law firms and corporate legal departments in markets throughout the United States, including, but not limited to, Washington, DC, and Boston, Massachusetts, where it has offices.

## IV.     DEFENDANT KILIAN CONNOLLY'S EMPLOYMENT AGREEMENT

6. In January 26, 2015, the Company hired Connolly as a Managing Director of Client Relations. The parties entered into an Employment Agreement that provided, in pertinent part, that as a Managing Director of Client Relations, Connolly was responsible for:

> (i) marketing the services of the COMPANY to clients and potential clients in the Territory, which may include preparing proposals and pitching business; (ii) soliciting, obtaining business from and providing services to employer-clients in the Territory needing temporary paralegals, attorneys and legal support staff, including, but not limited to coders; (iii) developing and maintaining relationships with employer-clients in the Territory, which may include coordinating meetings

2

with clients and potential clients to explore potential new business and follow-up on existing business; (iv) fostering good relations with clients in the Territory; (v) supervising the COMPANY'S job posting process with respect to open assignments that are potentially commissionable to EMPLOYEE in accordance with Exhibit A; (vi) recruiting, soliciting and providing services to employer-clients in the Territory needing temporary paralegals, attorneys and legal support staff, including, but not limited to, coders; (vii) recruiting, soliciting, interviewing and referring job candidates to employer-clients in the Territory; (viii) effecting the placement of job candidates with employer-clients in the Territory, which may include handling details and arrangements with respect to leased project work space, coordination of information technology issues and acting as a liaison between recruiters and clients; and (ix) engaging in such other duties and responsibilities as are consistent with the foregoing or assigned by the President of the Managing Member of the COMPANY … or the Chief Operating Officer of the Managing Member of the Company … .

See attached Exhibit A, Employment Agreement, pp. 1-2.

7. The Employment Agreement defined the "Territory" as "Boston, MA and the general surrounding areas," but also stated: "In addition Employee may conduct targeted marketing in Washington, DC and New York City … ." See attached Exhibit A, Employment Agreement, p. 2.

8. Connolly was based in the Company's Boston office, but on several occasions in 2019, he was also directly responsible for customer engagements pertaining to managed document review projects in Washington, DC for which he received compensation.

9. Fundamental to Connolly's position as a Managing Director of Client Relations was his access to information that is confidential and constitute trade secrets of the Company. This included detailed confidential information regarding Company legal placements and prospects as well as the strengths and weaknesses of candidates for temporary and permanent legal placements at customers. This also included confidential information concerning customers and the Company's relationships with them; pricing and other terms of contractual agreements with these customers; and profitability concerning services to its customers.

3

10. In exchange for the valuable consideration set forth in the Employment Agreement, including but not limited to compensation and benefits, acquisition of, and enhancement of his professional skills and experience, as well as access to confidential and trade secret information of the Company, Connolly acknowledged and agreed to be bound by the terms of an Employment Agreement. See Exhibit A, Employment Agreement. Section 4 of the Employment Agreement entitled "Confidential and Trade Secrets" provides, in pertinent, as follows:

> (b) During and after EMPLOYEE'S employment with the COMPANY, the EMPLOYEE agrees that EMPLOYEE will not use, disclose, copy or retain or remove from the COMPANY'S premises any confidential or proprietary information or trade secrets, including but not limited to, lists and information pertaining to clients and client contacts, job applicants, referrals, and employees, and any other ideas, methods, procedures, techniques, written material, and other know-how, developed or used in connection with the COMPANY'S or any of its Affiliates' business belonging to the COMPANY or any of its Affiliates (collectively, "Confidential Information"), other than for use in connection with authorized work performed for the COMPANY or such Affiliates. Confidential Information shall also include, but not be limited to, … financial and other information of the COMPANY and its Affiliates, not generally available to others.

See Exhibit A, p. 4-5.

11. Section 5 of the Employment Agreement entitled "Non-Competition" provides, in pertinent part, as follows:

> (a) EMPLOYEE agrees that during the term of this Agreement and for a period of twelve (12) months following EMPLOYEE ceasing to be an employee of the COMPANY, EMPLOYEE will not, without the prior written consent of the COMPANY, either directly or indirectly, on EMPLOYEE'S own behalf or in the service or on behalf of others:
> ***
> (vii) directly or indirectly … be employed by … any Competing Business within seventy-five (75) miles of any office of the COMPANY or any of the COMPANY'S Affiliates, at which the EMPLOYEE is or was employed, performed services or engaged or assisted in the business or operations of the COMPANY or any of its Affiliates;
> ****

4

See Exhibit A, p. 6-7.  The term "Competing Business" is defined in Section 5(a)(i) of the Agreement as a "business which is either engaged permanent or temporary placement or the same or substantially the same business of the Company."  See Exhibit A, p. 6.

12.     Connolly also agreed, through Section 5(c) of the Employment Agreement, that "each of EMPLOYEE'S agreements set forth herein in the Agreement is reasonable and necessary to protect and preserve the business, interests, and properties of the COMPANY … ."  See Exhibit A, p. 8.

13.     On August 7, 2020, Connolly unexpectedly resigned his position as Managing Director of Client Relations effective that day.  See Exhibit B, Kilian Connolly's Resignation E-mail.  In his resignation e-mail, Connolly did not indicate he had taken a position with a new employer.

14.     Several weeks after his resignation, the Company in September 2020 learned that Connolly had joined Beacon Hill Staffing, LLC ("Beacon Hill") in its Boston office in its legal staffing specialty division as a Senior Account Executive.  Beacon Hill, through its legal specialty division, provides legal placement and managed document review services similar to the Company and is a competitor of the Company.

15.     Around the same time, the Company also learned that prior to his resignation, Connolly, on July 28, 2020, without permission from the Company, wrongfully forwarded from his work e-mail address to his personal e-mail a confidential internal report prepared by the Company's Vice-President of Sales regarding on-going placements, price mark-ups, and revenue projections by sales person.  This information was not available to the public, was created by the Vice President of Sales for internal use, only drawn from data in a password protected confidential database, was used by the Vice President of Sales to manage and direct her direct reports such as

5

Connolly, and displayed by her during a virtual meeting on July 28, 2020 with her direct reports like Connolly by only sharing her computer screen, and was marked "confidential and proprietary." Connolly misappropriated this highly confidential information by an improper means by taking a screen shot with a snipping tool and then forwarding that image to his personal e-mail account.

16. On September 23, 2020, counsel for the Company sent Connolly a cease and desist letter, which stated in part as follows:

> HIRECounsel was very surprised and concerned to learn recently that you are now employed as a Senior Account Executive with its competitor, Beacon Hill Staffing Group ("BHSG"), in its legal specialty division, providing the same legal staffing and document review services you provided as an employee of HIRECounsel within 75 miles of HIRECounsel's Boston office, where you formerly worked. As you know, BHSG, and, in particular, its legal specialty division, is (like HIRECounsel) a professional staffing company that provides permanent and temporary staffing services, including the placement of attorneys, paralegals, legal support staff, and document review services. As such, BHSG is in direct competition with HIRECounsel. Also, as a BHSG Senior Account Executive, you are based in Boston. Thus, there is no question that your employment with BHSG in Boston falls directly within the scope of businesses for whom, under the plain terms of your Agreement, you may not perform legal staffing and document review services during the twelve-month Restricted Period. In addition, the highly sensitive Confidential Information that you have acquired and been exposed to in connection with your employment with HIRECounsel, and that you are required by your Agreement not only to protect but also to refrain from using or disclosing, relates directly to the highly competitive markets in which both BHSG and HIRECounsel operate.
>
> Our surprise and concern have been heightened by our recent discovery that, shortly before you resigned from your employment with HIRECounsel, you sent some of the Company's most highly sensitive and confidential proprietary information from your Company account to your personal e-mail address. You had no legitimate business reason connected with your work to send that information to your personal e-mail address, and by doing so you violated Section 4(b) of the Agreement, in which you agreed that you would not "remove from the C[ompany's] premises any confidential or proprietary information or trade secrets"; and by failing to return that information to the Company upon the termination of your employment, you violated Agreement Section 4(c).

See Exhibit C, Murphy September 23, 2020 Letter to Connolly.

17. On September 29, 2020, the Company, through counsel, wrote Beacon Hill, forwarding a copy of the Company's Employment Agreement with Connolly and noting that Connolly's employment with Beacon Hill, and his misappropriation of the Company's confidential information, constituted violations of the terms of Connolly's Employment Agreement. See Exhibit D, Murphy September 29, 2020 Letter to Beacon Hill.

18. On October 9, 2020, Connolly, through counsel, responded to the cease and desist letter and refused to comply with his contractual obligations.

19. As of the filing of this Complaint, Connolly remains employed by Beacon Hill in its legal staffing specialty division in Boston and has retained the Company's confidential information.

**COUNT I – BREACH OF CONTRACT OF SECTION 5 OF THE AGREEMENT**

20. The allegations contained in Paragraphs 1 – 19 of the Complaint are incorporated herein by reference.

21. As outlined above, since leaving his position with the Company, Connolly has engaged in conduct that violates Section 5(a)(vii) of his Employment Agreement.

22. Connolly is employed by a competing business, Beacon Hill's legal staffing specialty division, within seventy-five (75) miles of his former Boston office of the Company and is directly competing against the Company in the same territory that he serviced for the Company.

23. Connolly's wrongful conduct and breach of his contractual obligations entitle the Company to compensatory damages, including but not limited to liquidated damages set forth in Section 5(e) of the Employment Agreement.

**COUNT II – BREACH OF CONTRACT OF SECTION 4 OF THE AGREEMENT**

24. The allegations contained in Paragraphs 1 – 19 of the Complaint are incorporated herein by reference.

25. As outlined above, Connolly has engaged in conduct that violates Section 4(b) of his Employment Agreement.

26. On July 28, 2020, without permission from the Company, Connolly forwarded from his work e-mail address to his personal e-mail a confidential report prepared by the Company's Vice-President of Sales regarding on-going placements, price mark-ups, and revenue projections by sales person.

27. This information was not available to the public, was created by the Vice President of Sales for internal use only, drawn from data in a password protected confidential database, was used by the Vice President of Sales to manage and direct her direct reports such as Connolly, and displayed by her during a virtual meeting on July 28, 2020, by only sharing her computer screen, and was marked "confidential and proprietary." Connolly misappropriated this highly confidential information by an improper means by taking a screen shot with a snipping tool and then forwarding that image to his personal e-mail account.

28. Connolly's wrongful conduct and breach of his contractual obligations entitle the Company to compensatory damages, including but not limited to liquidated damages set forth in Section 5(e) of the Employment Agreement.

**COUNT III – VIOLATION OF THE DC UNIFORM TRADE SECRETS ACT**

29. The allegations contained in Paragraphs 1 – 19 of the Complaint are incorporated herein by reference.

30. As outlined above, Connolly has engaged in conduct that violates the District of Columbia Uniform Trade Secrets Act, DC Code §§ 36-401 et seq.

31. On July 28, 2020, without permission from the Company, Connolly improperly forwarded from his work e-mail address to his personal e-mail a confidential report prepared by the Company's Vice-President of Sales regarding on-going placements, price mark-ups, and revenue projections by sales person.

32. This confidential information constitutes a trade secret. The confidential information derives independent economic value because it is not generally known and not readily ascertainable by proper means by another person who can gain economic value from its disclosure or use.

33. The confidential report was created by the Vice President of Sales for internal use only drawn from data in a password protected confidential database, was used by the Vice President of Sales to manage and direct her direct reports such as Connolly, displayed by her during a virtual meeting on July 28, 2020 by only sharing her computer screen, and was marked "confidential and proprietary."

34. Despite the Company's undertaking reasonable efforts to protect the secrecy of this confidential information, Connolly wrongfully misappropriated this trade secret by an improper means by taking a screen shot with a snipping tool and then forwarding that image to his personal e-mail account for his use unrelated to his employment with the Company.

35. Connolly had no right to purloin and retain this confidential information, and it was expressly in violation of the terms of his Employment Agreement.

36. The Company has been damaged by Connolly's wrongful misappropriation of its trade secrets and is entitled to compensatory damages under D.C. Code § 36-405(a).

37. Connolly's acts have been willful and malicious such that exemplary damages are warranted under D.C. Code § 36-403(b).

**WHEREFORE,** Plaintiff prays for relief as follows:

(1) Enter a judgment against Defendant in favor of Plaintiff;

(2) Enter injunctive relief the Court deems appropriate;

(3) Award Plaintiff compensatory damages in an amount to be proven at trial, together with pre- and post-judgement interest;

(4) Award Plaintiff liquidated damages pursuant to Section 5(e) of the Employment Agreement;

(5) Award Plaintiff exemplary damages pursuant to D.C. Code § 36-403(b) in an amount to be proven at trial;

(6) Award Plaintiff its attorneys' fees and litigation costs pursuant to Section 19 of the Employment Agreement and D.C. Code § 36-404(3); and

(7) Award Plaintiff such other relief as the Court deems just and appropriate.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*/s/ Michael J. Murphy*
Michael J. Murphy, D.C. Bar No. 421287
1909 K Street, N.W., Suite 1000
Washington, D. C. 20006
Tel: (202) 887-0855
Fax: (202) 887-0866
Email: michael.murphy@ogletree.com
*Counsel for Plaintiff*

Dated: October 27, 2020

44739479.1