UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
HC2, Inc. d/b/a/ Hire Counsel,

               Plaintiff,

     -against-                                 1:20-cv-03178-LJL

Andrew Delaney,

               Defendant.
--------------------------------------------------------x


MEMORANDUM OF LAW IN SUPPORT OF ANDREW DELANEY'S MOTION TO
RECUSE U.S.D.J. LIMAN PURSUANT TO 28 U.S.C. § 455(b)(1) AND 28 U.S.C. § 455(a)

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND...................................................................................................... 2

PROCEDURAL BACKGROUND............................................................................................ 14

LEGAL STANDARDS ............................................................................................................ 16

ARGUMENT............................................................................................................................ 17

Point I:   Under 455(a), the District Court Judge Should be Recused for the Appearance of Impartiality………………………………………………………………………………… 17

Point II: Under 455(b)(1), Recusal Is Warranted for Judge Liman's Personal Bias or Prejudice Against Andrew Delaney…………………………………………………………….……… 18

A.      The Findings in the District Court's Order That the Allegations Against Delaney Were "Serious" and "Have to Be Accepted As True", Whereas All of His Allegations Against HC2 Were "Speculative", and That He  "Committed Serious Misconduct Against HC2 and Its Clients [Which Happens to be His Former Law Firm]" Evidence Personal Bias……………………….. 18

B.      Judge Liman's Antagonism Against Delaney Stemming from Lies About Him from Wilmer Hale, Holtmeier, and Gorelick Results in Actual Bias Against Delaney, Thereby Rendering a Fair Hearing Impossible…………………………………………………………………….... 19

C.      Judge Liman's Failure to Report a Continuing Crime in Private Practice in the *Tyco* Case Creates a Bias Against Persons Reporting a Client's Continuing Crime……………….....……. 19

D.      Judge Liman's Confirmation Responses Suggests He Would Excuse Himself in a Case Such As This………………………………………………………………………………….... 19

CONCLUSION......................................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326 (2d Cir. 1987)................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................................... 11, 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................................... 11

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)................................................................. 10-11

*Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)................................................................. 13

*Farkas v. Ellis*, 768 F. Supp. 476 (S.D.N.Y. 1991) ..................................................................... 17

*HC2, Inc. d/b/a Hire Counsel v. Godwin LLP*, Case 656617/2020 (S.D.N.Y. 2020)..................... 8

*Hoffenberg v. Hoffman & Pollok*, No. 00 CIV. 3151 (RWS), 2002 WL 31444994, at *2 (S.D.N.Y. October 31, 2002)........................................................................................................................... 17

*In re African-Am. Slave Descendants Litig.*, 307 F. Supp. 2d 977 (N.D. Ill. 2004)...................... 16

*In re Andrew John Delaney*, Case No. 1-20-44372 (E.D.N.Y. Br. filed December 23, 2020)............................................................................................................................... 5-6, 9-10

*In re International Business Machines Corp.*, 618 F.2d 923 (2d Cir.1980).................................. 17

*ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98 (2d Cir.2012)....................................... 18

*John Doe v. Toyota Motor Corp. et al.*, No. 05-2020-CA-024281 (Fla. 18th Cir. Ct. April 15, 2020)........................................................................................................................................ 3, 14

*Liteky v. United States*, 510 U.S. 540 (1994)........................................................................... 16-17

*Microsoft Corp. v. United States*, 530 U.S. 1301 (2000).............................................................. 17

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126 (2d Cir. 2007)........................................ 11

*Tagger v. Strauss Group Ltd.*, 951 F.3d 124 (2d Cir. 2020).......................................................... 1

*Tonra v. Kadmon Holdings*, 405 F. Supp. 3d 576 (S.D.N.Y. 2019)........................................ 10-11

*United States v. Bayless*, 201 F.3d 116 (2d Cir. 2000)............................................................... 4, 18

*United States v. Carlton*, 534 F.3d 97 (2d Cir. 2008)................................................................. 18

U*nited States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)............... 17

*Webb-Weber v. Cmty. Action for Human Servs., Inc.*, 23 N.Y.3d 448 (2014).......................... 10-11

*Yoonessi v. State Univ. of New York (Buffalo)*, 164 F.3d 620 (2d Cir. 1998)................................ 16


Statutes
28 U.S.C. § 455(a) ................................................................................................................. 17-18
28 U.S.C. § 455(b)(1) ............................................................................................................ 16-18
Fed. R. Civ. P. Rule 12(b)(6)....................................................................................................... 19
Fed. R. Civ. P. Rule 12(h)(3)....................................................................................................... 13


Other Authorities
"Akio Toyoda President, Member of the Board of Directors, Toyota Motor Corporation," www.economicclub.org website, March 15, 2019……………………………………….……… 8
"As The Revolving Door Turns: Robert Mueller Rejoins Wilmer Hale," www.abovethelaw.com website, October 1, 2019……………………………………………………………………… 2
"Biden Picks Lawyers Tasked With Undoing Trump Ethics Legacy (1)," Bloomberg, January 11, 2021……………………………………………………………………...…………….. 6
"Biden Hiring Risks Oversized Influence For Big DC Law Firm," Republic Report: Investigating How Money Corrupts Democracy, 2021……………………………………………………… 7
Construction and Infrastructure, www.wilmerhale.com website………………………………….. 2
"Cuomo Pension Inquiry on Financier Grows Nasty," The New York Times, December 7, 2010. 4
"Diversity Jurisdiction in the Second Circuit: The 'Tagger' Decision," New York Law Journal, August 19, 2020………………………………………………………………………….. 1
"E-Mails Show Tyco Lawyers Had Concerns About Books," The Wall Street Journal, December 27, 2002…………………………………………………………………………………… 20
"Guidance Without Protection: Restrictive Federal Court Ruling Limits Rights of New York Whistleblowers Who Report Unsafe COVID-19 Work Conditions," Outten & Golden Employment Law Blog, March 30, 2021………………………………………………….. 11
"Similarities and Differences between Flu and COVID-19," www.cdc.gov website, November 23, 2021……………………………………………………………………………………... 12
United States Judiciary Committee Questionnaire for Judicial Nominees (Lewis J. Liman)...... 7, 20
"WilmerHale taps Justice Department's FCPA chief for white collar group," Reuters May 1, 2021……………………………………………………………………………………..7

<u>INTRODUCTION</u>

1.      Andrew Delaney ("Delaney") respectfully moves for the recusal of the Hon. Lewis J. Liman (U.S.D.J.) in this case.

2.      Specifically, firstly, Judge Liman has an appearance of impartiality isssue and has undisclosed conflicts of interest as a former partner in the law firm of Wilmer, Cutler, Pickering, Hale & Dorr LLP ("Wilmer Hale"), which is controlling all of the litigation against Delaney, and also has undisclosed past and present relationships with that law firm and its partners Jay Holtmeier ("Holtmeier") and Jamie Gorelick ("Gorelick"), Democrat Party figures.   This has resulted in constant bias and rulings against Delaney without regard to the caselaw or applicable legal standards.   This case should never have been filed in this Court in the first place and has been dragging out unlawfully for 20 months *despite there being no jurisdiction*.   This is due to Judge Liman's neglect of his duty as an Article III officer.   In *Tagger v. Strauss Group Ltd.*, 951 F.3d 124 (2d Cir. 2020), the Second Circuit held that it is the court's obligation as much as the individual litigant's to police the boundaries of its authority.[1]

3.      Secondly, recusal is warranted due to Judge Liman's opinion that HC2's false allegations against Delaney "have to be accepted as true" and were "serious", whereas all of his truthful claims against HC2 were "speculative".   In fact, the law calls for just the opposite; *all of Delaney's allegations* had to be accepted by the judge as true, but were not, due to Judge Liman's bias and prejudice.   Specifically, Judge Liman concluded, without any hearings or trial, that Delaney "committed serious misconduct against HC2 and its clients," which, without naming it specifically, referred to his former law firm.

---

[1] "Diversity Jurisdiction in the Second Circuit: The 'Tagger' Decision," New York Law Journal, August 19, 2020 https://www.fordobrien.com/wp-content/uploads/sites/1402064/2021/03/Diversity-Jurisdiction-in-the-Second-Circuit-The-Tagger-Decision.pdf

4.      Accordingly, in the interests of manifest justice, Judge Liman should recuse himself from this proceeding and permit another Article III judge to preside over a fair and impartial adjudication on the merits.

## FACTUAL BACKGROUND

5.      Wilmer Hale is one of the most notorious "revolving door" law firms in the country whose partners and attorneys are in and out of the government and use their connections in office.[2] Wilmer Hale's website brags in multiple online practice descriptions about its "deep bench" of former government attorneys e.g., "We frequently represent clients in investigations, leveraging the knowledge of our *deep bench* of former Justice Department and high-level government officials."[3] (emphasis added)   Two such partners who sit on that law firm's 20-member management committee are Gorelick, a former Deputy Attorney General in the Clinton Administration who has worked on cases with Judge Liman, and Holtmeier, a former Assistant United States Attorney for the Southern District of New York who was Judge Liman's former senior and boss in the U.S. Attorney's Office.   I have been dealing with this law firm and Holtmeier and Gorelick since this case started and have found them to be highly unethical.

6.      This fraudulently brought case's real party in interest and chief strategist is Wilmer Hale, and more particularly its partners Holtmeier and Gorelick.   Judge Liman, who received his judicial commission on December 31, 2019, was a partner at Wilmer Hale from 1999-2003 and has past and current personal and professional relationships with Holtmeier and Gorelick that both create the appearance of impartiality issues and resulted in actual bias in this case.

---

[2] "As The Revolving Door Turns: Robert Mueller Rejoins Wilmer Hale" (October 1, 2019) https://abovethelaw.com/2019/10/as-the-revolving-door-turns-robert-mueller-rejoins-wilmer-hale/

[3] https://www.wilmerhale.com/en/solutions/construction-and-infrastructure

7.      Delaney is a former Thai language document reviewer who worked for Wilmer Hale through its job agency, HC2, Inc. ("HC2"), the nominal plaintiff in this case, during the periods September 30, 2019-January 5, 2020 and from February 17, 2020-March 31, 2020.  HC2 is only the nominee in this case for Wilmer Hale and "the Corporate Client" and does everything based on their instructions.  Wilmer Hale refused to deliver on the remediation, so that there was and is a continuing crime.  On March 31, 2020, HC2 illegally terminated Delaney at the instructions of Wilmer Hale and its former attorney Michael Posada, in violation of N.Y. Lab. Law § 740, the whistleblower statute, for making a valid employment and public health complaint against it at the height of the COVID-19 pandemic in March 2020 in New York City.  Posada now works as Associate Counsel in the Biden White House.

8.      On April 15, 2020, Delaney brought a "John Doe" lawsuit against Wilmer Hale client "the Corporate Client" in the Eighteenth Judicial Circuit Court in Brevard County, *John Doe v. Toyota Motor Corp. et al.*, No. 05-2020-CA-024281 (Fla. 18th Cir. Ct. April 15, 2020) (the "Florida John Doe Case").   Wilmer Hale has been paying for and giving the litigation instructions in the Florida John Doe Case as well as this case.  This includes appointing a locally influential lawyer, James H. Fallace, chair of the Fifth Appellate District Judicial Nominating Commission, to lobby the courts In Florida and try to quash the John Doe Case.  This was all paid for by Wilmer Hale.  At the end of the Florida sealing hearing on December 30, 2020, Fallace told the court that "Wilmer Hale" would be receiving copies of all the sealed documents, as it has in this case, even though as a non-party it had no right to the confidential transcripts and records in the Florida John Doe Case or this case.  Banking on its connections and usage of locally connected lawyers, Wilmer Hale only follows the rules when it suits its interests to do so.

9.      The common thread at all levels is judicial lobbying.

10.     The Corporate Client, Wilmer Hale, and HC2 have a three-party joint litigation "Vendor Agreement" dated September 25, 2019.  (Document No. 45-6)  This agreement was signed by "Ron Machen" of Wilmer Hale, the former United States Attorney for the District of Columbia who lied about and threatened Delaney and his lawyers.  HC2 is not a large organization and is merely an agent for Wilmer Hale which is instructing it as to what to do.

11.     In order to forum shop for a friendly court, Wilmer Hale ordered HC2 to hire Kasowitz Benson Torres LLP ("Kasowitz"), "coincidentally" the lawyers for then-President Donald J. Trump, and to file an ex parte case in the United States District Court for the Southern District of New York (the "Southern District").  On April 22, 2020, HC2's ex parte motion was immediately assigned to Judge Liman, a former Wilmer Hale partner who also worked under Holtmeier in the U.S. Attorney's Office for the Southern District of New York.  Judge Liman is a former Wilmer Hale partner who worked on cases with and is closely associated with Holtmeier and Gorelick.[4]  In 2000, the caption of the case *United States v. Bayless,* 201 F.3d 116, 126 (2d Cir.2000), shows:  "Jay Holtmeier, Special Assistant United States Attorney, and Boyd M. Johnson III and Lewis J. Liman, Assistant United States Attorneys, on the brief."[5]  This was and continues to be pure judge-shopping.  Delaney included in his counterclaims, all of which were dismissed by Judge Liman, complaints about HC2's and Wilmer Hale's judge shopping.  In fact, Judge Liman held that this was not an abuse of process but "good lawyering".

12.     Neither Judge Liman nor HC2 or Wilmer Hale ever disclosed their relationships and conflicts of interest.  While insisting on always anonymously referring to the "Law Firm Customer" and "the Corporate Client", which defined terms were adopted by Judge Liman, at the

---

[4] https://www.nytimes.com/2010/12/08/nyregion/08rattner.html

[5] https://caselaw.findlaw.com/us-2nd-circuit/1177419.html

*public* hearings, HC2's lawyer Ronald R. Rossi ("Rossi") of Kasowitz continually and deliberately waved around the name "Wilmer Hale" in front of the judge.  Meanwhile, Wilmer Hale actively publicized and exposed the identity of the Florida John Doe which the Court expressly went at length in his opinion to try to justify.  This was biased and defeats the whole purpose of a John Doe filing.  But according to Judge Liman's biased opinions, even the names of the "the Law Firm Customer" and the "Corporate Client" could not be mentioned, but HC2 and Wilmer Hale were free to expose the John Doe, to defame him and destroy his reputation and employment prospects, and to harass him.  Although in his answer to Delaney's counterclaims HC2's unethical lawyer Michael Nacchio vaguely claimed that Delaney's complaints about harassment were "paranoid" and which Judge Liman claimed were "speculative", the invoices submitted by HC2 in the bankruptcy case show that HC2 paid a "subsidiary" of Kasowitz $5,000 to spy on and harass him.  Of course, as with their false jurisdictional claims, HC2 and its lawyers are never held accountable for their lies to the Court.

13.     Holtmeier has been in charge of the Delaney case ever since Delaney complained about his unlawful termination.  He is a categorical and unequivocal liar.  With no repercussions whatsoever, Wilmer Hale has been receiving all of the supposedly sealed and/or confidential documents in the Florida and New York cases.  When Delaney's Florida lawyer emailed Gorelick and the Wilmer Hale management committee twice to ask what its role in the cases was and what documents it had received, Gorelick and Holtmeier refused to answer.  This was unprofessional conduct since Delaney has a right to know what the law firm's status was in the cases, whether it was receiving confidential and protected documents - we now know they have been receiving everything all along -, and whether it was having ex parte communications with the courts. The invoices produced in Delaney's bankruptcy case in the United States Bankruptcy Court for the

Eastern District of New York (the "Eastern District") show lots of HC2 ex parte calls to the courts and chambers.  HC2's now-withdrawn bankruptcy filings also admitted that Wilmer Hale has been paying for the Florida litigation as long suspected.

14.     Despite requesting and complaining to the Court about Posada's March 17, 2020 email responding to Delaney's whistleblower complaint which was 100% blacked out and marked "Redacted." with no grounds, neither the Court ordered nor did Wilmer Hale voluntarily disclose the unredacted document.  This was *the key document* in Delaney's case because he knows that Posada made defamatory comments about him and ordered that HC2 fire him.  Allowing this complete redaction without any legal basis was biased and benefited Wilmer Hale while preventing Delaney from presenting his counterclaims.

15.     According to our information, after Delaney's illegal termination, Posada was terminated by Wilmer Hale.  Wilmer Hale was apparently not happy with Posada's handling of the Delaney employment termination issue.  Despite this, on December 9, 2020, when it needed a witness, Wilmer Hale flew Posada from Washington, DC to Florida to be a witness against Delaney, where he blatantly lied on the stand.  Right after that, Posada was rewarded with a job along with several other Wilmer Hale lawyers as an Associate Counsel in the new Biden White House.  That was on January 11, 2021, days after Posada testified falsely against Delaney.[6]  This Posada appointment to the White House Counsel's Office was quid pro quo for his efforts on behalf of Wilmer Hale and the Corporate Client and for his testimony against Delaney in Florida. The Biden White House is completely dominated by ex-Wilmer Hale lawyers including Dana Remus, Jonathan Cedarbaum, Maury Riggan, and Danielle Conley.  This is not simply Delaney's

---

[6]

https://news.bloomberglaw.com/business-and-practice/biden-picks-lawyers-tasked-with-undoing-trumps-ethics-legacy

opinion.   "Republic Report: Investigating How Money Corrupts Democracy" wrote: "Biden Hiring Risks Oversized Influence For Big DC Law Firm."[7]  Interestingly, the same White House Counsel's Office is responsible for nominating and promoting federal judges.  Federal judges are nominated by the president of the United States and confirmed by the Senate.  In connection with his confirmation hearings, Judge Liman discussed the role of the Office of the White House Counsel in his own nomination process.  In answer to Question 26 about the "Selection Process," Judge Liman wrote:  "On April 12, 2017, I was interviewed by the Office of the White House Counsel.  On November 21, 2017, I was informed by the Office of the White House Counsel that I should complete forms for a FBI Security Check.  On November 29, 2017, I informed the Whte House Counsel's Office that I completed my SF-86 and I communicated with the White House Counsel's Office on November 30, 2017."[8]   In other words, Posada, Wilmer Hale's witness against Delaney, is playing a role in appointments to Courts of Appeals and the Supreme Court. This is the "circle" of the Wilmer Hale-White House Counsel's Office connection and is very disturbing to Delaney as a litigant in this case especially given Wilmer Hale's secrecy and refusal to answer questions about its involvement.   Right after "the Corporate Client" reported to the United States Securities and Exchange Commission its Foreign Corrupt Practices Act ("FCPA") violations in March 2021, Wilmer Hale hired the United States Department of Justice FCPA chief overseeing the case against it.[9]

16.    After Posada, in April-May 2020 Holtmeier then surfaced as the *only* witness against Delaney in his Manhattan Supreme Court case against HC2 even though, once again,

---

[7] https://www.republicreport.org/2021/biden-hiring-risks-oversized-influence-for-big-dc-law-firm/

[8] https://www.judiciary.senate.gov/imo/media/doc/Liman%20SJQ.pdf

[9] "WilmerHale taps Justice Department's FCPA chief for white collar group," Reuters May 1, 2021 https://www.reuters.com/legal/government/wilmerhale-taps-justice-departments-fcpa-chief-white-collar-group-2021-05-28/

Wilmer Hale was not a party there either.  This is because HC2 is just Wilmer Hale's agent.  Delaney's limited appearance lawyer told the state court judge that Holtmeier was a liar.  It is noteworthy that Holtmeier has never met Delaney and presents only hearsay and lies about him through others such as HC2, Posada, and Michael R. Heyison.

17.     Holtmeier's motivation in all of this was to win the client away from Debevoise & Plimpton LLP.  He was willing to say or do anything to win and retain this multi-million dollar account and to renege on the remediation.  On March 15, 2019, Wilmer Hale sponsored a speech by Florida defendant Akio Toyoda at the Economic Club of Washington, DC.[10]

18.     Worst of all, Holtmeier and Kasowitz cooked up the scheme to manufacture jurisdiction and to fraudulently file this case in the District Court.  They and HC2 lied that HC2's principal place of business was Illinois, when 26 out of 26 sworn secretary of state filings - including Illinois and New York - show its principal place of business is New York, as well as every federal and state litigation HC2 is a party to except for this case, including the *HC2, Inc. d/b/a Hire Counsel v. Godwin LLP* case filed in November 2020 six months after this case, and all web sources.  To cover its tracks, right after Delaney's motion to dismiss was filed on December 28, 2020, HC2 quickly withdrew the *Godwin case* on January 11, 2021.  Despite the perjurious filings by HC2 general counsel Stephanos Zannikos ("Zannikos") and HC2's lawyers in this case, there is no evidence that HC2 at the time of filing this case on April 22, 2020 or at any time ever had its principal place of business other than at 360 Lexington Avenue in New York.  Additionally, HC2 and its lawyers lied that the amount in controversy is over $75,000 (exclusive of legal fees).  At the April 29, 2020 hearing, when Judge Liman asked Kasowitz's Rossi about the amount Delaney was paid, since under either of the two theories breach of contract or faithless servant the

---

[10] https://www.economicclub.org/events/akio-toyoda

most HC2 could expect to recover if it won is return of what it paid him, he knowingly falsely informed Judge Liman that Delaney was paid "in the low six figures".  Of course, as the payor, HC2 and its lawyer knew how much it paid him.  When Delaney tried to explain that the amount was actually $66,000, Judge Liman cut him off and refused to allow him to speak, even though the hearing was held via a Zoom call during the pandemic and his lawyer was not sitting with him.  HC2's proof of claim in the bankruptcy case, now withdrawn by it since it was yet another bogus filing, clearly shows the amount to be $66,000, confirming Delaney and contradicting the lying Rossi.  Of course, HC2's and Rossi's lies to the Court completely worked and enabled the case to go forward for 20 months were conveniently "swept under the rug" when HC2 fired Kasowitz.  Judge Liman did not allow Delaney to depose anyone from HC2 or any other person.  He also did nothing about Wilmer Hale's agent's fraud on the court and tried to prevent there from being an issue to appeal by not ruling on jurisdiction and trying to deny Delaney's right to appeal.

19.     There is clearly an appearance of impartiality issue due to the Wilmer Hale-Holtmeier-Gorelick connection.  They always use local attorneys such as Kasowitz and Fallace who have connections to the judge on the case.

20.     But the grounds for recusal are not limited to Judge Liman's ties to Wilmer Hale, Holtmeier, and registered lobbyist Gorelick.  Judge Liman has also shown actual bias and prejudice throughout this case.  The main examples of this are:

A.     The judge's 1) allowing Wilmer Hale to obtain all of the documents, including confidential and protected documents, in this case and 2) not ordering the critical Posada email to be produced in unredacted form. The Posada email is the only document that was produced that was merely marked "Redacted", not "Attorney-Client Privileged and Confidential."  Of course, that is because it is not privileged and there was no basis for the redaction.  To this date, the

unredacted Posada email has never been ordered produced at the same time that Judge Liman has ruled that discovery is complete in this case.

B.      Judge Liman's refusal to allow Delaney to depose any of HC2's witnesses.   On August 28, 2020, despite the Case Management Plan which he signed, Judge Liman only allowed HC2 to depose Delaney, but denied Delaney the right to depose any witnesses from HC2.   In contrast, the Eastern District ordered HC2 to produce the same three witnesses - Joan Davison ("Davison"), Brian Hartstein ("Hartstein"), and Zannikos - to be deposed by Delaney in the Adversary Case there.   The difference was night and day.   Immediately after the Eastern District order, HC2 was so afraid of having them deposed due to their perjury and lying about jurisdiction in the Southern District, that HC2's lawyer emailed Delaney the day before and stated they would not appear for the scheduled depositions and would instead withdraw their proof of claim with prejudice and exit the bankruptcy case.   See Exhibit A herewith.   HC2 further paid $25,000 as a settlement to the trustee to run away from the case and their illegal actions in it.   But Judge Liman's refusal to allow Delaney to depose anyone and instead ordering that all discovery was completed decidedly put the thumb on the scales against Delaney, as well as blocking his questioning them as to the jurisdictional fraud.   There is no question that HC2 would have settled this case and been subject to sanctions independent of any motion from Delaney had Judge Liman allowed Delaney's depositions, since Davison, Harstein, and Zannikos had committed perjury and engaged in a fraud on the court.

C.      In his order dismissing Delaney's nine claims dated July 17, 2020 (Dkt. No. 17), Judge Liman refused to follow the *Erie* doctrine and the New York precedent *Webb-Weber v. Cmty. Action for Human Servs., Inc.*, 23 N.Y.3d 448 (2014), as to Delaney's N.Y. Lab. Law § 740 claim, disregarding the District Court's own precedent in *Tonra v. Kadmon Holdings*, 405 F. Supp.

3d 576 (S.D.N.Y. 2019) (Koeltl, J.)(dismissed in part on other grounds), and the Second Circuit's opinion in *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126 (2d Cir. 2007). The District Court Judge allowed Delaney to amend the counterclaims but required that at the pleading stage he must cite the "laws, rules, and regulations" violated by HC2 contrary to *Webb-Weber*.

       D.      Judge Liman's biased decision dismissing Delaney's counterclaims dated December 18, 2020. The decision went against the law including basic jurisprudence such as *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and the Second Circuit's precedent in the *Reddington* case. The Court did not have a single word in the entire opinion in Delaney's favor. To Judge Liman, it is as if every single word of Delaney's counterclaims had to have no merit. Contrary to the standard for the non-moving party in a motion to dismiss under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal*, Judge Liman also always held that HC2's allegations against Delaney were "serious" but that Delaney's allegations against HC2 were "speculative".

       Outten & Golden LLP, a top New York law firm, criticized Judge Liman's opinion as to Delaney's counterclaims. It called it an "overly restrictive and unfortunate ruling" that is a "narrow reading" of N.Y. Lab. Law § 740 that "could have a chilling effect on workers who have legitimate COVID-related concerns about returning to the workplace while the virus remains a threat to their health."[11]

       In a marquee example of not accepting Delaney's facts as true, Judge Liman wrote: "Moreover, neither Delaney's March 17, 2020 email nor the complaint itself alleges conduct by HC2 that, if true, would contradict CDC Guidance. In particular, the complaint did not allege that employees were coming into work with acute respiratory illnesses or that those employees who

---

[11] "Guidance Without Protection: Restrictive Federal Court Ruling Limits Rights of New York Whistleblowers Who Report Unsafe COVID-19 Work Conditions," Outten & Golden Employment Law Blog (March 30, 2021) ("Outten").
https://www.outtengolden.com/blog/2021/03/guidance-without-protection-restrictive-federal-court-ruling-limits-rights-new-york

were sick and coughing or sneezing were failing to cover their noses and mouths with a tissue." Thus, according to Judge Liman, Delaney's report was not valid because he used the words "flu-like symptoms" and not "acute respiratory illnesses" and when he complained about workers coughing and sneezing that Delaney did not state that they "failed to cover their noses and mouths with a tissue."   This is manipulative semanticism calculated to dismiss all of Delaney's counterclaims.  As for the words "flu-like symptoms", this was the nomenclature used in all of the public health notices around New York at the time in relation to COVID-19.  It wasn't a phrase invented by Delaney.   See, for example, the CDC's webpage "Similarities and Differences between Flu and COVID-19."[12]   Moreover, this linguistic distinction was not even raised by HC2. It is hard to imagine that the New York Legislature contemplated these kinds of semantics when it passed Section 740. The district court concluded: "Thus, even if Delaney's employment was terminated because of his complaint that HC2 was allowing employees with flu-like symptoms to come to work and that HC2 had not offered a work-from-home option, that complaint did not trigger rights for Delaney under Section 740 based on a violation of the CDC Guidance or make his subsequent termination illegal."  But Judge Liman's reading that "the CDC Guidance did not require employers to offer work-from-home" is irrelevant *because that is not what Delaney argued*. Delaney did not argue that the CDC mandated remote work.  Delaney argued that HC2 violated the CDC's Guidance because it did not promote six-feet social distancing in the workplace and other CDC health and safety measures.   Those were the sections of the CDC Guidance the amended counterclaims quoted.

E.      Judge Liman's sitting on Delaney's IFP petition to appeal the dismissal of his amended counterclaims for six months and then denying it claiming that there was "no final order". Of course, as anyone knows, a denial of counterclaims is a final order and appealable de novo as

---

[12] https://www.cdc.gov/flu/symptoms/flu-vs-covid19.htm

of right.  Since Delaney filed for Chapter 7, he of course qualified for IFP status.  But Judge Liman did not want the appeal of the counterclaims against Wilmer Hale's agent HC2 to go forward and so denied certification of his IFP request for the appeal.   This showed Judge Liman's petty and extreme prejudice against Delaney.  Delaney paid the $500 fee and filed the appeal to preserve his rights.  At his next interlocutory appeal, Delaney did not even bother to request an IFP fee waiver from Judge Liman due to his bias but instead filed an order to show cause directly in the Second Circuit.  This is an example of the unfairness to a litigant of having a biased judge hearing a case.

F.      Judge Liman's withdrawal of Delaney's motion to dismiss for lack of subject matter jurisdiction (which is effectively not in dispute), refusal to rule on jurisdiction and to dismiss the case, and continuing to enter orders against Delaney.  As Delaney pointed out in numerous status letters, the Court has the power and the duty under Fed. R. Civ. P. Rule 12(h)(3) to dismiss the case sua sponte when it knows - as it does in this case - that there is no jurisdiction.  A federal district judge has the duty to constantly police the jurisdiction issue independent of any application from the parties.   And sua sponte dismissal is mandatory when a court discovers that it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.");  see also *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").  After Delaney filed the motion to dismiss, instead of ruling on it and dismissing the case, the Court ordered yet another round of mediation which the last time went nowhere after only minutes with Judge Fox on August 12, 2020.  This mediation order had no prospect of going anywhere but delayed a ruling on jurisdiction.  On the other hand, Judge Liman swiftly ordered the termination of Delaney from the case after HC2 made a motion against him the next day after

receiving arguments from the parties.  It appears that Judge Liman does not want to rule that there is no jurisdiction which would adversely affect his former law firm Wilmer Hale's interests in the case and wants to continue to retain jurisdiction over the case and Delaney despite there not being any, while at the same time denying Delaney's right and ability to appeal.

## PROCEDURAL BACKGROUND

21.     On April 15, 2020, Delaney filed the Florida John Doe Case in the Eighteenth Judicial Circuit Court of Florida in Brevard County, *John Doe v. Toyota Motor Corp. et al.*, No. 05-2020-CA-024281 (Fla. 18th Cir. Ct. April 24, 2020).

22.     On April 22, 2020, HC2 filed the complaint in this case. (Dkt. No. 1)

23.     On May 7, 2020, Judge Liman ordered the Case Management Plan.  The Plan stated:  "Depositions of fact witness for the remainder of the case shall be completed by 9/14/2020."  (Dkt. No. 24)  However, Judge Liman did not allow Delaney to depose anyone. (Dkt. No. 90)

24.     On July 17, 2020, Judge Liman granted the motion to dismiss Delaney's counterclaims with the right to amend them.  (Dkt. No. 72)

25.     On August 28, 2020, Judge Liman held a hearing on a discovery dispute and ordered that only HC2 could depose Delaney but Delaney could not depose any witnesses. Clearly, from this, it is apparent that Judge Liman had already made up his mind to dismiss all of Delaney's amended counterclaims four months later.  Otherwise, he should have allowed Delaney to depose HC2's management.  Delaney suspects that Judge Liman actually made up his mind earlier on July 17, 2020 before the amended counterclaims were even filed because he stated in dismissing but allowing for the refiling of Delaney's original counterclaims that he was doing so

only because "this Circuit disfavors" dismissing claims so early in the litigation.  The implication was that he would wait and dismiss them later in the case.  He did not dismiss Delaney's amended counterclaims until five months later.  It was and is Delaney's view that the judge was not fair and balanced in his review of his counterclaims and that he was intent on not allowing any of them to survive HC2's motions to dismiss.

26.     On December 18, 2020, Judge Liman granted HC2's motion to dismiss all of Delaney's amended counterclaims. (Dkt. No. 99)

27.     On December 28, 2020, Delaney filed a motion to dismiss for lack of jurisdiction. (Dkt. No. 100)

28.     At a January 5, 2021 hearing, Judge Liman deemed the jurisdictional allegations "serious".  But instead of ruling on them he ordered that this case is referred for mediation to the Court-annexed Mediation Program.  (Dkt. No. 105)

29.     On January 13, 2021, Delaney filed a motion for leave to proceed in forma pauperis on appeal.  (Dkt.  No. 116).  Delaney also filed a notice of appeal of the denial of his amended counterclaims.  (Dkt. No. 117)

30.     On February 22, 2021, the Court sua sponte withdrew Delaney's motion to dismiss for lack of jurisdiction. (Dkt. No. 126)  Delaney could see that coming from a mile away.  Judge Liman continues to issue orders in this case.  However, this case was fraudulently filed when there was no subject-matter jurisdiction and all of the Court's orders in this case are void.

31.     Only on July 29, 2021 - *six months after his request* - Judge Liman denied Delaney's IFP request for his appeal.  (Dkt. No. 134)

32.     On November 9, 2021, Judge Liman granted a motion filed *by the other side*, HC2, terminating Delaney from the case and replacing him with the Chapter 7 Trustee. (Dkt. No. 144) HC2 had no standing to make this motion.  Anyway, since the Court has no jurisdiction, it is void.

33.     On November 15, 2021, Delaney filed the Notice of Discharge of Robert Rotman, Esq. As Attorney.  (Dkt. No. 150)

34.     On November 24, 2021, Delaney filed a Notice of Interlocutory Appeal.  (Dkt. No. 154).

LEGAL STANDARDS

35.     Judges should recuse themselves if they harbor "deep-seated favoritism or antagonism as would make fair judgment impossible." *Yoonessi v. State Univ. of New York (Buffalo)*, 164 F.3d 620 (2d Cir. 1998) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Section 455(b)(1)

36.     Section 455(b)(1) provides, in relevant part, that a judge shall disqualify herself "[w]here [s]he has a personal bias or prejudice concerning a party . . ." 28 U.S.C. § 455(b)(1). "Section 455(b) is concerned with whether the court harbors an actual personal bias or prejudice against one party or in favor of another party, as opposed to the appearance of impartiality." *In re African-Am. Slave Descendants Litig.*, 307 F. Supp. 2d 977, 987 (N.D. Ill. 2004) (citing *Liteky*, 510 U.S. at 547–48 (1994)).   "[T]he substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned."  *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987).  A judge should be recused under § 455(b)(1) when her "judicial predispositions . . . go beyond what is normal and acceptable."  *Liteky*, 510 U.S. at 55

37.    "The Supreme Court has held 'the alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from [her] participation in the case.'" *In re International Business Machines Corp*., 618 F.2d 923, 928 (2d Cir.1980) (quoting *United States v. Grinnell Corp*., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); see also *Hoffenberg v. Hoffman & Pollok*, No. 00 CIV. 3151 (RWS), 2002 WL 31444994, at *2 (S.D.N.Y. Oct. 31, 2002) (citing *Litkey*, 510 U.S. at 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("[t]he bias and/or prejudice asserted under both provisions must stem from extrajudicial sources, i.e., outside the judicial proceeding at hand.").

Section 455(a)

38.    Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) is concerned with whether there would be an appearance of impartiality if a given judge presided over a case. *Liteky*, 510 U.S. at 547–48.

39.    What matters under § 455(a) "is not the reality of bias or prejudice but its appearance." *Id*. Thus, "the inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000). "Section 455(a) does not contain the term 'personal' found in section 455(b)(1) and the Second Circuit has therefore ruled that it is not an absolute requirement that the disqualifying bias spring from an extrajudicial source, although the source of bias remains a relevant consideration." *Farkas v. Ellis*, 768 F. Supp. 476, 480 (S.D.N.Y. 1991) (citing *United States v. Coven*, 662 F.2d 162, 168 (2d Cir. 1981)).

<u>ARGUMENT</u>

Point I:   Under 455(a), the District Court Judge Should be Recused for the Appearance of Impartiality

40.    Under § 455(a), "recusal is not limited to cases of actual bias; rather, the statute requires that a judge recuse himself whenever an objective, informed observer could reasonably question the judge's impartiality, regardless of whether he is actually partial or biased." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir.2000);  see also *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107–08 (2d Cir.2012) ("The question, as we have put it, is whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" (quoting *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir.2008)).  Here, for all the same reasons set forth in Point II, *infra*, the District Court should recuse because even if the Court's statement that "Delaney committed very serious misconduct against HC2 and its clients" i.e. the judge's former law firm Wilmer Hale does not show an actual or personal bias, an informed observer could reasonably question the judge's impartiality solely based on the District Court's accepting as true and asserting HC2's allegations about the judge's former law firm.

Point II: Under 455(b)(1), Recusal Is Warranted for Judge Liman's Personal Bias or Prejudice Against Andrew Delaney

41.    Section 455(b)(1) provides, in relevant part, that a judge shall disqualify herself "[w]here [s]he has a personal bias or prejudice concerning a party . . ."  28 U.S.C. § 455(b)(1).

A.    The Findings in the District Court's Order That the Allegations Against Delaney Were "Serious" and "Have to Be Accepted As True", Whereas All of His Allegations Against HC2 Were "Speculative", and That He  "Committed Serious Misconduct Against HC2 and Its Clients [Which Happens to be His Former Law Firm]" Evidence Personal Bias

i)       Under Fed. R. Civ. P. Rule 12(b)(6) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the District Court was bound to accept Delaney's plausible allegations as true.  However, due to his bias and prejudice against Delaney, Judge Liman did the opposite and said that he had to accept all of HC2's allegations against Delaney as true.  Judge Liman wrote:  "However, *if the allegations of the complaint are assumed to be true, and at this stage they must be, Delaney committed very serious misconduct against HC2 and its clients*."   (emphasis added)  This is the opposite of the law; Delaney was the non-moving party in HC2's motion to dismiss.  Judge Liman then stated "that is an expense of its (sic) own doing" i.e., going further to blame Delaney for what HC2 did. *Id*.  Therefore, Judge Liman concluded that Delaney ``committed very serious misconduct against HC2 and its clients [Judge Liman's former law firm Wilmer Hale]" but that all of Delaney's counterclaims against HC2 were "speculative".  This is biased.  Judge Liman brought Wilmer Hale ("and its clients") into his finding against Delaney.

B.       Judge Liman's Antagonism Against Delaney Stemming from Lies About Him from Wilmer Hale, Holtmeier, and Gorelick Results in Actual Bias Against Delaney, Thereby Rendering a Fair Hearing Impossible

i)       Judge Liman's antagonism against Delaney is based on lies from Wilmer Hale and HC2 and Delaney's opposition to their fraud on the court and other illegal activities in this case. This renders a fair hearing in this case impossible.

C.       Judge Liman's Failure to Report a Continuing Crime in Private Practice in the *Tyco* Case Creates a Bias Against Persons Reporting a Company's Continuing Crime

i)       In his opinion dismissing his amended counterclaims, Judge Liman accused Delaney of "serious misconduct against HC2 and its clients" which was  accepted contrary to the opposite presumption required in a motion to dismiss and without any hearings or trial to be true. Where, as is the case here, HC2's clients are involved in a continuing crime, Delaney has the legal obligation to report them to the authorities.  Since Judge Liman did not do so in the *Tyco*

*International Ltd.* case, he could not rule impartially on the continuing crimes aspect of this case.[13] This is an independent ground for his recusal.

D.      Judge Liman's Confirmation Responses Suggests He Would Excuse Himself in a Case Such As This

i)      In Judge Liman's Senate Questionnaire, he answered under Question "24. Potential Conflicts of Interest":  "a… I will evaluate any *real or potential conflict*, or relationship that could give rise to the appearance of a conflict, on a case-by-case basis and determine appropriate action with the advice of parties and their counsel, *including recusal where necessary*."[14]   (emphasis added)   As a party, it is my opinion that there are both questions about the appearance of Judge Liman's impartiality and that he has shown actual bias and prejudice in favor of his former law firm and its agent HC2 and against Delaney, and should recuse himself from this case.


<u>CONCLUSION</u>

Based on the foregoing, the District Court should grant Delaney's motion to recuse U.S.D.J. Liman and the matter should be re-assigned to another Article III judicial officer for a full and fair adjudication of the case.


Dated: December 20, 2021

                                Respectfully submitted,
                                /s/Andrew Delaney
                                Pro Se
                                330-340 Baychester Avenue
                                Bronx, New York 10475
                                orchrd@hotmail.com

---

[13] "E-Mails Show Tyco Lawyers Had Concerns About Books," The Wall Street Journal, December 27, 2002.  Note that Judge Liman was working at Wilmer Hale at that time.
https://www.wsj.com/ad/article/SB1040935851588183673.html

[14] https://www.judiciary.senate.gov/imo/media/doc/Liman%20SJQ.pdf

Exhibit A

From: **Douglas Goldstein** <dgoldstein@selawfirm.com>
Date: Mon, 19 Jul 2021 at 12:11
Subject: Tomorrow's depositions (In re Andrew John Delaney, 20-44372-JMM)
To: Christopher Beres <christopherberes8@gmail.com>


Dear Mr. Beres:

I assume that you received my letter of today, a copy of which is attached.  While you have time to cancel the stenographer and associated services for tomorrow and avoid incurring unnecessary expenses, I wanted you to know that HC2's personnel will not attend the depositions that you scheduled for tomorrow.


===========================================================
Douglas A. Goldstein, Esquire
SPECTOR & EHRENWORTH, P.C.
30 Columbia Turnpike--Suite 202
Florham Park, New Jersey 07932-2261
Direct Dial: 973 845.6526
[ 973 593.4800 x117 / 973 593.4848 (FAX) ]
e-mail: dgoldstein@selawfirm.com
www.selawfirm.com

To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that nothing contained in this communication (including any attachments) is intended to be used, nor may it be used, for the purpose of: (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending any transaction. We include this statement in outbound e-mails because even inadvertent violations may be penalized.

The information contained in this transmission may contain copyrighted, privileged, confidential or other legally protected information. If you are not the intended recipient (even if it was sent to your e-mail address), you may not use, review, copy, disseminate, or retransmit this communication. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message (and its attachments). To reply to our e-mail administrator directly, please send an e-mail to: dehrenworth@selawfirm.com. Spector & Ehrenworth, P.C.'s website is: www.selawfirm.com.

----- Original Message -----
**From:** DAG

**To:** Jil Mazer-Marino <JMM_hearings@nyeb.uscourts.gov>
**Sent:** 7/19/2021 10:18AM
**Subject:** Attached letter (In re Andrew John Delaney, 20-44372-JMM)


Dear Hon. Mazer-Marino:


I attach for Your Honor's consideration a letter being filed today regarding the pending claim litigation in this matter.


If Your Honor wishes to conduct a conference today on this matter, I will be available for a call.


Thank you for your attention to this matter.


Respectfully submitted,


============================================================
Douglas A. Goldstein, Esquire
SPECTOR & EHRENWORTH, P.C.
30 Columbia Turnpike--Suite 202
Florham Park, New Jersey 07932-2261
Direct Dial: 973 845.6526
[ 973 593.4800 x117 / 973 593.4848 (FAX) ]
e-mail: dgoldstein@selawfirm.com
www.selawfirm.com

To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that nothing contained in this communication (including any attachments) is intended to be used, nor may it be used, for the purpose of: (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending any transaction. We include this statement in outbound e-mails because even inadvertent violations may be penalized.

The information contained in this transmission may contain copyrighted, privileged, confidential or other legally protected information. If you are not the intended recipient (even if it was sent to your e-mail address), you may not use, review, copy, disseminate, or retransmit this communication. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message (and its attachments). To reply to our e-mail administrator directly, please send an e-mail to: dehrenworth@selawfirm.com. Spector & Ehrenworth, P.C.'s website is: www.selawfirm.com.

 **Gmail**

**Andrew Delaney <anwdly@gmail.com>**

---

## Fwd: FW: Stipulation of withdrawals of Rule 9011 motions (Delaney; HC2 v. Delaney)
1 message

---

**Christopher Beres** <christopherberes8@gmail.com>
To: Andrew D <anwdly@gmail.com>

Fri, Aug 6, 2021 at 4:18 PM

---

---------- Forwarded message ---------
From: **Douglas Goldstein** <dgoldstein@selawfirm.com>
Date: Fri, 6 Aug 2021 at 16:45
Subject: FW: Stipulation of withdrawals of Rule 9011 motions (Delaney; HC2 v. Delaney)
To: Stephanos Zannikos <SZannikos@hirecounsel.com>
Cc: Christopher Beres <christopherberes8@gmail.com>

Hi Stephanos:  Earlier today, Beres and I exchanged the following e-mails.  At around 3 p.m., I telephoned Beres, he said that he e-mailed the stip to me 20 minutes prior, and so I asked him to fax the stip to me, suspecting that perhaps his e-mails are not reaching me.  ==Sometime later, I received an e-mail from Delaney with Beres's signed stip, which leads me to suspect that they are together in Florida.==

Doug

----- Original Message -----
**From:** DAG
**To:** Christopher Beres <christopherberes8@gmail.com>
**Sent:** 8/06/2021 2:00PM
**Subject:** Stipulation of withdrawals of Rule 9011 motions (Delaney; HC2 v. Delaney)

Dear Mr. Beres:  I do not have any record of receiving the signed stipulation back from you, nor do I wish or intend to ignore it.  If you would re-send the signed stip to me within the next hour, I will submit it to the court right away.

Thank you.

Doug

Attached file: Stip of Withdrawal.001.pdf
----- Original Message -----
**From:** Christopher Beres <christopherberes8@gmail.com>
**To:** Douglas Goldstein <dgoldstein@selawfirm.com>
**Sent:** 8/06/2021 1:28PM
**Subject:**

Mr. Goldstein:  We agreed to mutually discontinue our respective sanctions motions five days ago.  Three days ago, I emailed you the signed stipulation you drafted.  The hearing is on August 10 and you did not send me your signed counterpart nor have you filed it with the court.
This is very disturbing.
**If I do not receive the signed counterpart from you by email and you do not file the signed stipulation by 3 o'clock EST today**, I will write a letter to the court with the attached emails and stipulation.

---